WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
950 Page Mill Road
Palo Alto, California 94304
Telephone:     (650) 858-6000
Facsimile:     (650) 858-6100

OMAR A. KHAN (*pro hac vice*)
Omar.Khan@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:     (212) 230-8800
Facsimile:     (212) 230 8888

JOSEPH TAYLOR GOOCH (SBN 294282)
Taylor.Gooch@wilmerhale.com
JOSHUA D. FURMAN (SBN 312641)
Josh.Furman@wilmerhale.com
1 Front Street, Suite 3500
San Francisco, California 94111
Telephone:     (628) 235-1000
Facsimile:     (628) 235-1001

*Attorneys for Defendant*
IONpath, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, A DELAWARE CORPORATION; AND FLUIDIGM CANADA INC., A FOREIGN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., A DELAWARE CORPORATION,<br><br>Defendant. | Case No. 3:19-cv-05639-WHA<br><br>**IONPATH, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:     January 23, 2020<br>Time:    8:00 AM<br>Before:  Judge William Alsup<br>Courtroom:  12 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 23, 2020, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Judge Alsup, Defendant IONpath, Inc. ("IONpath") will, and hereby does, bring this Partial Motion to Dismiss Plaintiffs' First Amended Complaint.

By and through this motion, IONpath seeks the dismissal of Counts One, Three, Four, Six, Seven, Nine, and Ten of Plaintiffs' First Amended Complaint, and denial of Plaintiff's prayer for relief of enhanced damages pursuant to 35 U.S.C. § 284, under Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and such further evidence and argument as may be submitted prior to or at the hearing before this Court.

| | | |
|---|---|---|
| 1 | Dated:  November 25, 2019 | Respectfully submitted, |
| 2 | | **WILMER CUTLER PICKERING** |
| 3 | | **HALE AND DORR LLP** |
| 4 | By: | */s/ Sonal N. Mehta* |
| | | SONAL N. MEHTA (SBN 222086) |
| 5 | | Sonal.Mehta@wilmerhale.com |
| 6 | | 950 Page Mill Road |
| | | Palo Alto, California 94304 |
| 7 | | Telephone:    (650) 858-6000 |
| | | Facsimile:     (650) 858-6100 |
| 8 | | |
| 9 | | OMAR A. KHAN (*pro hac vice*) |
| | | Omar.Khan@wilmerhale.com |
| 10 | | 7 World Trade Center |
| | | 250 Greenwich Street |
| 11 | | New York, New York 10007 |
| | | Telephone:    (212) 230-8800 |
| 12 | | Facsimile:     (212) 230 8888 |
| 13 | | |
| | | JOSEPH TAYLOR GOOCH (SBN 294282) |
| 14 | | Taylor.Gooch@wilmerhale.com |
| | | JOSHUA D. FURMAN (SBN 312641) |
| 15 | | Josh.Furman@wilmerhale.com |
| | | 1 Front Street, Suite 3500 |
| 16 | | San Francisco, California 94111 |
| | | Telephone:    (628) 235-1000 |
| 17 | | Facsimile:     (628) 235-1001 |
| 18 | | |
| | | *Attorneys for Defendant* |
| 19 | | IONpath, Inc. |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

III. Legal Standard .................................................................................................................. 4

    A. Legal Standard For A Motion To Dismiss Under Rule 12(b)(6) .......................... 4

IV. ARGUMENT ..................................................................................................................... 5

    A. Fluidigm's Claim For Intentional Interference With Contractual Relations Should Be Dismissed ............................................................................................ 5

    B. Fluidigm's Claims For Indirect Infringement Should Be Dismissed ................... 7

        (i) Fluidigm Fails To Plead Knowledge Of The '386 And '698 Patents ........ 7

        (ii) Fluidigm's Inducement Claims Fail Because They Have Not Pleaded Knowledge of Infringement or a Specific Intent To Infringe All Three Patents-In-Suit ................................................................ 9

        (iii) Fluidigm Has Not Adequately Pleaded A Critical Element Of Its Contributory Infringement Claims ............................................................ 11

    C. Fluidigm Has Not Stated a Claim for Willfulness .............................................. 12

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................................... 7

*AlterG, Inc. v. Boost Treadmills LLC*,
 388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................................. 6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................................... 5, 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
 681 F.3d 1323 (Fed.Cir. 2012) ......................................................................................... 9, 11

*Calsoft Labs, Inc. & PVR Tech., Inc. v. Venkata Panchumarthi & Truinfo Tech. Inc.*,
 No. 19-CV-04398-NC, 2019 WL 5811300 (N.D. Cal. Nov. 7, 2019) ................................... 6

*CAP Co. v. McAfee, Inc.*,
 No. 14-CV-05068-JD, 2015 WL 3945875 (N.D. Cal. June 26, 2015) ................................ 10

*Commil USA, LLC v. Cisco Sys., Inc.*,
 135 S. Ct. 1920 (2015) ..................................................................................................... 8, 11

*Conservation Force v. Salazar*,
 646 F.3d 1240 (9th Cir. 2011) ............................................................................................... 5

*Corephotonics, Ltd. v. Apple, Inc.*,
 No. 17-CV-06457-LHK, 2018 WL 4772340 (N.D. Cal. Oct. 1, 2018) ................................. 9

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) ........................................................................................... 10

*Finjan, Inc. v. Juniper Networks, Inc.*,
 No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ......................... 8, 9, 12

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011) ............................................................................................................. 10

*Grecia v. VUDU, Inc.*,
 No. C-14-0775-EMC, 2015 WL 538486 (N.D. Cal. Feb. 9, 2015) ....................................... 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ....................................................................................................... 12

*Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*,
   No. 17-cv-06880-BLF, 2018 WL 3537166 (N.D. Cal. July 23, 2018) .................................. 11

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................................................. 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................... 11

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) ..................................................................................................... 6, 7

*RealPage, Inc. v. Yardi Sys., Inc.*,
   852 F. Supp. 2d 1215 (C.D. Cal. 2012) .............................................................................. 6, 7

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ............................................................................................. 9

*Straight Path IP Grp., Inc. v. Apple Inc.*,
   No. C 16-03582 WHA, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017) .................................. 12

*Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015) ............................................................................................... 9

*Uniloc USA, Inc. v. Apple Inc.*,
   No. C 18-00359 WHA, 2018 WL 2047553 (N.D. Cal. May 2, 2018) ............................. 10, 12

*Unwired Planet, LLC v. Apple Inc.*,
   No. 13-CV-04134-VC, 2017 WL 1175379 (N.D. Cal. Feb. 14, 2017) ................................... 8

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ........................................................................................... 12

**MEMORANDUM AND POINTS OF AUTHORITY**

I.  INTRODUCTION

Plaintiffs Fluidigm Corp. and Fluidigm Canada Inc. ("Fluidigm") filed this lawsuit just weeks before the commercial launch of IONpath, Inc.'s ("IONpath") MIBIscope. The MIBIscope is a revolutionary scientific instrument for imaging and quantifying cell types and sub-cellular components (such as proteins) in biological tissue. MIBIscope's advances allow for a greater understanding of cancer progression, autoimmune diseases, and other disorders, with resolution and speed that far exceeds existing techniques—including Fluidigm's. While Fluidigm's pleading is heavy on unfounded innuendo and insinuations about IONpath, its executives, and its technology, many of Fluidigm's allegations are fundamentally lacking in cognizable legal theories or supporting facts on which it could state even a plausible—let alone ultimately prevailing—claim.

*First*, IONpath moves to dismiss Fluidigm's claim for intentional interference with contract because Fluidigm has not alleged any actual breach or disruption of a valid contract.

*Second*, IONpath moves to dismiss Fluidigm's claims for indirect infringement for failure to adequately plead essential elements of induced and contributory infringement. For two of the three patents-in-suit, Fluidigm fails to allege knowledge of the patents-in-suit themselves and instead purports to plead knowledge (a required element of its claims) based on IONpath's citation to *different* (related) patents in its own patent application years before the patents-in-suit were even applied for. For all three of the patents-in-suit, Fluidigm does not plead any facts that would support an allegation of knowledge of *infringement* (which requires more than just knowledge of the patents themselves). This failure alone requires dismissal of Fluidigm's indirect infringement claims. Fluidigm's indirect infringement claims also fail because Fluidigm does not adequately plead that IONpath had the requisite intent to induce or contribute to infringement. Fluidigm has also failed to plead facts supporting the lack of substantial non-infringing use required for contributory infringement.

*Third*, IONpath moves to dismiss Fluidigm's prayer for enhanced damages based on IONpath's alleged willfulness. For the same reasons discussed above, Fluidigm has failed to

1 establish knowledge for two of the patents in suit and has failed to allege egregious conduct for
2 all three patents.
3     For these reasons, Fluidigm's First, Third, Fourth, Sixth, Seventh, Ninth, and Tenth
4 Counts, and prayer for enhanced damages should be dismissed.

## II.  FACTUAL BACKGROUND

IONpath's MIBIscope is a revolutionary scientific instrument that can image biological cells and their sub-structures by detecting and quantifying the proteins and other molecules contained therein.  IONpath's founders—three Stanford University professors and a post-doctoral student—invented the technology while at Stanford.  The key to their invention is the use of Secondary Ion Mass Spectroscopy (SIMS)—where a charged primary ion beam knocks loose (known in the field as "sputtering") ions from the sample's surface.  These sputtered ions are in turn captured, identified, and quantified by mass spectrometry.  The image below, from left to right, shows how a tissue sample is prepared: an ion beam is scanned across a slide to sputter off secondary ions, and then those ions are detected using a mass spectrometer.  (ECF No. 13 at ¶ 80.)  By combining the locations of the ion beam with the output of the spectrometer, an image of the tissue is created where certain colors correspond to individual proteins or other molecules.



(ECF No. 13 at ¶ 80.)

When cells, or their subcellular molecules, are tagged with metal atoms, the MIBIscope can create a detailed map of the location and composition of those metal tags.  That map provides an understanding not only of the cells' physical contours, but also their chemical contents.  The application of ion beam technology provided a quantum improvement over

existing technologies—allowing, for example, multiple scans of the same region at different resolutions, whereas vaporization with a laser would destroy the entire sample. The groundbreaking advancements were highlighted in a peer-reviewed 2014 Nature Medicine publication that demonstrated how SIMS could be used to map antibodies in breast cancer cells,[1] and subsequent research has appeared in academic journals and symposia continually since then.

Following the successful proof-of-concept application of SIMS to biological sample analysis in their university research lab, the founders formed IONpath and licensed the proprietary, patented technology from Stanford to develop their academic ideas into a commercial product and disseminate this enabling technology to the broader scientific community. IONpath has continued to innovate and has several pending patent applications.

Fluidigm is a publicly traded company with over 500 worldwide employees and doing business in over 35 countries. Fluidigm Corp. and Fluidigm Canada Inc. hold patents on a fundamentally different technology from IONpath, including the patents-in-suit: U.S. Patent No. 10,180,386 ("'386 patent"), U.S. Patent No. 10,072,104 ("'104 patent"), and U.S. Patent No. 10,436,698 ("'698 patent"). These patents describe the use of both flow cytometry—which analyzes cells suspended in a liquid—and a heat source such as a plasma or a laser to vaporize the sample. For example, the '698 patent refers to "introducing particles sequentially and analyzing the particles" using an "elemental flow cytometer." (ECF No. 13, Ex. C at 2:58–59, 61.) That is to say, a flow cytometer analyzes individual, complete cells suspended in a liquid carrier by heating them to create an atomized vapor, and then interrogating the vapor. The '698 patent's Figure 2, reproduced below, shows an example of such a device, referred to here as a "mass-spectrometer based flow cytometer" that includes "a cell or particle injector 171." As illustrated, the cells (as black dots) flow upward through the device, are heated to vaporization in "device 104," and then the vapor is analyzed in the "spectrometer 106":

---

[1] Angelo, M., Bendall, S., Finck, R. et al., *Multiplexed ion beam imaging of human breast tumors*, 20 NATURE MED 436 (2014), https://www.nature.com/articles/nm.3488 (submitted for publication May 13, 2013).



(ECF No. 13, Ex. C at 7:62–8:3, 8:11, Fig 2 (annotations added).)

Moreover, one of Fluidigm's more recent products uses micron-scale laser pulses to heat tissue samples to create such an atomized vapor for analysis. These thermodynamic, heat-based techniques are fundamentally distinct from the SIMS-based approach used in the MIBIscope, which uses an ion beam in a vacuum to physically (i.e., rather than by heating) dislodge and ionize particles. The absence of these thermal, vaporization-based approaches is exactly what enables the MIBI technology and the MIBIscope platform to achieve superior imaging resolution and throughput over Fluidigm's platform.

### III.  Legal Standard

#### A.  Legal Standard For A Motion To Dismiss Under Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation omitted). The Court must accept as true all well-pled factual allegations but should not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The factual allegations taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134–35 (9th Cir. 2014). A plaintiff must plead more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## IV.   ARGUMENT

### A.   Fluidigm's Claim For Intentional Interference With Contractual Relations Should Be Dismissed

Fluidigm's first cause of action is for intentional interference with contractual relations. Fluidigm brought this claim on the basis that IONpath has encouraged unnamed customers to use Fluidigm's consumables in IONpath machines, in alleged violation of Fluidigm contracts requiring Fluidigm customers to use Fluidigm consumables only with Fluidigm machines. (ECF No. 13 at ¶¶ 90–96.) Fluidigm's intentional interference claim fails to allege facts that would plausibly support any actual breach of any contract with any specific customer. And even to get there, we must set aside the potential legal and commercial problems with the validity, enforceability, and effect of contracts that purport to link the use of Fluidigm machines to the use of Fluidigm consumables.

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.

Supp. 3d 1133, 1149 (N.D. Cal. 2019) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).  As an alternative to pleading "actual or inevitable breach of contract," a plaintiff may allege that the performance of a contract was made "more costly or more burdensome." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1129.

*AlterG* is instructive.  There, the Court dismissed a claim for intentional interference with contract where the plaintiff provided the conclusory allegation that "contracts existed between AlterG . . . and AlterG vendors, suppliers, and customers" and that "Defendants have . . . interfered with contracts between AlterG and its vendors, suppliers, and customers." *AlterG, Inc.*, 388 F. Supp. 3d at 1150 (ellipses in original).  Because, as here, the plaintiff in *AlterG* did not actually identify any of the vendors, suppliers, or customers, and did not provide any details about the contracts and contractual provisions with which defendants allegedly interfered, the Court held that the plaintiff had failed to state a claim for intentional interference with contractual relations.  *Id*.  Likewise, in *RealPage* the Court dismissed a claim for intentional interference with contractual relations because, even though the Plaintiff had "successfully allege[d]" the existence of a contract, the Plaintiff had not alleged an "actual breach or actual disruption." *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1231 (C.D. Cal. 2012).  Instead, as here, the plaintiff's allegations in *RealPage* only suggested that a "breach or disruption *could* occur should [defendant] continue with its alleged threats." *Id*. (emphasis in original).  *See also*, *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-CV-04398-NC, 2019 WL 5811300, at *4–5 (N.D. Cal. Nov. 7, 2019) (dismissing claim for intentional interference with contractual relations in part because the plaintiff failed to allege the relevant contracting parties); *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003) (dismissing interference with contract claim because plaintiff merely made "conclusory allegations that valid 'contracts' exist between itself and an unspecified third party" and provided no "facts surrounding the type or nature of the 'contracts' [defendants'] conduct allegedly interfered with").

Here, Fluidigm has failed to sufficiently plead either actual breach of contract or a disruption of a contractual relationship.  As in both *AlterG* and *RealPage*, Fluidigm does not

1  allege any actual breach or disruption.  In fact, as in *AlterG*, Fluidigm does not even state who
2  the customers in question might be.  Instead, Fluidigm alleges only that "IONpath continued to
3  encourage Fluidigm's customers to breach the Ts&Cs by promoting the use of Fluidigm's
4  antibodies" and that IONpath "encourage[ed] unauthorized use of Fluidigm's Maxpar antibodies
5  and related reagents in manners that breach the Ts&Cs . . . ."  (ECF No. 13 at ¶¶ 93, 95.)  But
6  these statements are neither an allegation of an ***actual*** or ***imminent*** breach, nor are they an
7  allegation that a ***specific contract*** became "more costly or more burdensome."  *Pac. Gas & Elec.*
8  *Co.*, 50 Cal. 3d at 1129.  IONpath's alleged encouragement of Fluidigm's customers to breach
9  (even if taken as true at the pleading stage) is merely an allegation that a "breach or disruption
10  ***could*** occur."  *RealPage, Inc.*, 852 F. Supp. 2d at 1231 (emphasis in original).  The possibility of
11  breach is merely speculative, and so too is the claim for intentional interference.  *See also*
12  *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above
13  the ***speculative*** level" (emphasis added)).  It should be dismissed.

14          **B.**      **Fluidigm's Claims For Indirect Infringement Should Be Dismissed**

15        Fluidigm's indirect infringement claims—both induced and contributory—fail to state
16  plausible claims for relief and should be dismissed.  Fluidigm (1) fails to show knowledge of the
17  '386 and '698 patent, (2) fails to plead any facts showing knowledge and specific intent of
18  infringement for all of the patents in suit, and (3) fails to provide any factual basis for the lack of
19  substantial non-infringing use required for its contributory infringement claim for all three
20  patents.

21          (i)      **Fluidigm Fails To Plead Knowledge Of The '386 And '698 Patents**

22  "Indirect infringement, whether induced or contributory, 'requires knowledge of the
23  patent in suit and knowledge of patent infringement.'"  *Unwired Planet, LLC v. Apple Inc.*, No.
24  13-CV-04134-VC, 2017 WL 1175379, at *1 (N.D. Cal. Feb. 14, 2017) (quoting *Commil USA,*
25  *LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).  Such knowledge can be established
26  either as actual knowledge or willful blindness.  *Id.*
27        However, Fluidigm's sole factual basis for IONpath's alleged knowledge of the '386 and
28  '698 patents are roundabout citations made to the patent office during the prosecution of

1  IONpath's own patents, to a ***different*** patent, ***prior to*** the filing date (let alone issuance) of the
2  applications for the '386 and '698 patents.  Specifically, Fluidigm alleges that the IONpath
3  founders cited to a family member of the '386 and '698 patents during prosecution of one of
4  IONpath's own patents in a "2013 list of references." (ECF No. 13 at ¶¶ 36, 50.)  But Fluidigm's
5  allegations fail to plausibly allege the requisite knowledge for two independent reasons.

6        First and foremost, Fluidigm's allegations of knowledge based on IONpath's citations to
7  family members of the '386 and '698 patents-in-suit are insufficient to allege knowledge of ***the***
8  ***actual patents-in-suit***.  In *Finjan, Inc. v. Juniper Networks, Inc.*, this Court rejected the argument
9  that knowledge of a patent portfolio imputed actual knowledge of each patent contained there.
10 No. C 17-05659 WHA, 2018 WL 905909, at *5 (N.D. Cal. Feb. 14, 2018) ("Finjan alleges no
11 facts showing Juniper's pre-suit knowledge of the actual *patents-in-suit*, let alone any knowing
12 infringement thereof.  This alone requires dismissal of Finjan's induced infringement claims.")
13 (italics in original).  For the same reason, a citation to a family member is not a citation to the
14 patent itself, and thus cannot plausibly establish knowledge ***of that patent***.

15       Second, even if Fluidigm could somehow plausibly allege knowledge of two patents-in-
16 suit simply based on knowledge of another patent in the same family (it cannot), the specific
17 factual averments here render any allegation of knowledge implausible.  Fluidigm alleges that
18 IONpath cited to a parent patent of the '386 and '698 patents in 2013.  (ECF No. 13 at ¶¶ 36, 50.)
19 The applications for the '386 and '698 patents were not filed until 2018.  (ECF No. 13 Exs. A,
20 C.)  The patents were not allowed, with their final claim scope, until 2018 and 2019.  (ECF No.
21 13 ¶¶ 29, 37, 43.)  It is not plausible for Fluidigm to rely on a 2013 citation to unasserted patents
22 to establish knowledge of a patent ***application*** that would not exist for years to come, let alone
23 the issued patent itself.  *See Corephotonics, Ltd. v. Apple Inc.*, No. 17-CV-06457-LHK, 2018
24 WL 4772340, at *8 (N.D. Cal. Oct. 1, 2018) (regarding willfulness, "it has been well-established
25 both before and after the *Halo* decision that knowledge of a pending patent application does not
26 confer knowledge of an existing patent").

27       That one patent cannot confer knowledge of another (even if it is related) is a
28 straightforward consequence of the fundamental principle that each patent has its own scope.  In

this case, the cited family member of course has different claims and thus a different scope than the '386 and '698 patents. Thus even accepting at face value the implausible allegation that IONpath somehow had knowledge of the '386 and '698 patents because it knew of a related patent that issued years earlier, the allegation of knowledge of infringing activity with respect to the cited patent could not and would not plausibly plead knowledge of infringement of the patents-in-suit. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.").

      (ii)    **Fluidigm's Inducement Claims Fail Because They Have Not Pleaded Knowledge of Infringement or a Specific Intent To Infringe All Three Patents-In-Suit**

"At the motion to dismiss stage, . . . a claim of inducement 'must contain facts plausibly showing that [the defendant] specifically intended [the direct infringer] to infringe [the patent-in-suit] and knew that the [direct infringer's] acts constituted infringement." *Grecia v. VUDU, Inc.*, No. C-14-0775-EMC, 2015 WL 538486, at *7 (N.D. Cal. Feb. 9, 2015) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)) (brackets in original). *See also Finjan*, 2018 WL 905909, at *4–5. Courts have made clear that "intent" *to infringe* requires more than a description of the "infringing mode" in product documentation. *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015). That is, there must be "more than just intent to cause the acts that produce direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (applying the *Grokster* copyright standard to patents). But with respect to all three patents-in-suit, Fluidigm fails to allege any facts in support of specific intent, *and* fails to allege any facts in support of knowledge of infringement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

There is, of course, no dispute that IONpath encouraged its customers to purchase the MIBIscope. But Fluidigm fails to allege any facts that support an inference of *specific intent* on behalf of IONpath that its customers *infringe* the patents-in-suit. Rather, Fluidigm merely

1  alleges that product documentation describes an "infringing mode"—precisely as was found
2  insufficient in *Takeda*. *Takeda*, 785 F.3d at 631 (inducement requires that "instructions teach an
3  infringing use of the device such that we are willing to infer from those instructions an
4  *affirmative intent* to infringe the patent") (emphasis added).  For example, Fluidigm identifies a
5  "MIBIscope" brochure, which Fluidigm states "describes how it may be used."  Fluidigm also
6  points to the IONpath website, which by their own description provides "*general* instructions
7  and explanations for the use of the MIBIscope . . . ."  (ECF No. 13 at ¶ 141 (emphasis added).)
8  Thus, the documents that Fluidigm points to establish, at best, only that IONpath described what
9  is accused as the infringing mode.  There are simply no allegations in Fluidigm's complaint
10 (beyond mere legal conclusions) in support of specific intent to encourage infringement for any
11 of the patents in suit, nor of knowledge of the alleged infringement.  *See, e.g.*, *CAP Co. v.*
12 *McAfee, Inc.*, No. 14-CV-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015)
13 (dismissing induced infringement where the "complaint does not plead facts that give rise to a
14 plausible inference that defendants knew that any acts they purportedly induced constituted
15 patent infringement").
16      A similar situation arose in *Uniloc v. Apple*. There, this Court rejected inducement claims
17 where the complaint alleged that Apple "'intentionally instructs its customers to infringe through
18 training videos, demonstrations, brochures, and installation and user guides.' . . . [and] lists five
19 generic Apple websites as examples with no explanation as to what specific site content
20 allegedly induces infringement, or how."  *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA,
21 2018 WL 2047553, at *4 (N.D. Cal. May 2, 2018).  Likewise here, Fluidigm has pointed to one
22 MIBIscope brochure which, by Fluidigm's own description, describes "how it may be used," and
23 IONpath websites which they admit are "generic."  These claims fail to identify where or how
24 *infringement* was induced in any specific manner, nor known, and thus do not support
25 allegations of induced infringement.  They should be dismissed for the same reasons as those in
26 *Uniloc*.
27
28

        (iii)    **Fluidigm Has Not Adequately Pleaded A Critical Element Of Its Contributory Infringement Claims**

Stating a claim for contributory infringement requires plaintiff to, "among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Bill of Lading*, 681 F.3d at 1337 (referencing 35 U.S.C. § 271(c)). Moreover, plaintiff must plead facts showing that the product was "especially made or especially adapted" for infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Applying these standards, Fluidigm comes up short in multiple independent respects.

First and fatally, as described above, Fluidigm has not established a plausible inference of knowledge of the '386 and '698 patents, and thus cannot have shown that IONpath ***knew*** of those patents, let alone knew of the alleged infringement. *See Commil*, 135 S. Ct. at 1926 ("contributory infringement requires knowledge of the patent in suit ***and*** knowledge of patent infringement") (emphasis added).

Second, Fluidigm fails to plead ***facts*** in support of a lack of substantial non-infringing use. Instead, Fluidigm merely provides the conclusory statement that: "On information and belief, the MIBIscope is a 'purpose-built' machine that does not serve any non-infringing use, but is designed to practice the method of at least Claim 1 of the '386 patent." (ECF No. 13 at ¶ 121; *see also* ¶¶ 149, 177 (parroting identical conclusory language for the other two patents-in-suit).) But legal conclusions fail under Rule 12(b)(6). *See, e.g.*, *Hitachi Kokusai Elec. Inc. v. ASM Int'l, N.V.*, No. 17-cv-06880-BLF, 2018 WL 3537166, at *5 (N.D. Cal. July 23, 2018) (dismissing contributory infringement allegations because a "conclusory allegation does not support an inference that the accused products have 'no substantial non-infringing uses'"). As this Court stated in *Uniloc v. Apple*, a "merely formulaic recitation of Section 271(c) [is] not entitled to a presumption of truth." 2018 WL 2047553, at *5. Accordingly, Fluidigm's allegations of contributory infringement for all three patents-in-suit should be dismissed.

### C. Fluidigm Has Not Stated a Claim for Willfulness

Fluidigm's plea for enhanced damages under § 284 falls short for the same reasons as those stated above for indirect infringement. (ECF No. 13 at p. 60.)

As a threshold matter, "*[k]nowledge* of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *Finjan*, 2018 WL 905909, at *3 (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (emphasis added)). As described above, Fluidigm's complaint fails to substantiate a plausible inference of knowledge for the '386 and '698 patents. Further, *Halo* established that enhanced damages require "egregious" behavior, such that it could be characterized as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). A sufficient pleading "should allege **more than a one-sentence prayer for willfulness relief** . . . ." *Straight Path IP Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (emphasis added). But this is essentially all that Fluidigm has done. Fluidigm's complaint includes a single sentence prayer for relief, (ECF No. 13 at p. 60), and includes the conclusory statement that direct infringement of the '386 and '698 patents was "committed willfully." (ECF No. 13 at ¶¶ 106, 162.) No such allegations are made regarding the '104 patent. And, more importantly, Fluidigm has not pointed to any conduct as to any of the three asserted patents that can be characterized as "egregious" or "characteristic of a pirate."

### V. CONCLUSION

In view of the foregoing, Fluidigm's claims of intentional interference with a contractual relationship (Count 1), indirect infringement (Counts 3, 6, and 9), and contributory infringement (Counts 4, 7, and 10) fail to meet the standards of Rule 12(b)(6). In addition, Fluidigm's prayer for enhanced damages under § 284 should be dismissed. *Twombly* and its progeny demand that facts be alleged in support of each element of a cause of action, which Fluidigm has failed to do. IONpath respectfully requests that these claims be dismissed.

| | |
|---|---|
| Dated: November 25, 2019 | Respectfully submitted,<br><br>**WILMER CUTLER PICKERING<br>HALE AND DORR LLP**<br><br>By:  */s/ Sonal N. Mehta*<br>SONAL N. MEHTA (SBN 222086)<br>Sonal.Mehta@wilmerhale.com<br>950 Page Mill Road<br>Palo Alto, California 94304<br>Telephone:     (650) 858-6000<br>Facsimile:      (650) 858-6100<br><br>OMAR A. KHAN (*pro hac vice*)<br>Omar.Khan@wilmerhale.com<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone:     (212) 230-8800<br>Facsimile:      (212) 230 8888<br><br>JOSEPH TAYLOR GOOCH (SBN 294282)<br>Taylor.Gooch@wilmerhale.com<br>JOSHUA D. FURMAN (SBN 312641)<br>Josh.Furman@wilmerhale.com<br>1 Front Street, Suite 3500<br>San Francisco, California 94111<br>Telephone:     (628) 235-1000<br>Facsimile:      (628) 235-1001<br><br>*Attorneys for Defendant*<br>IONpath, Inc. |