K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO 63102
Telephone: (314) 259-2000
daroodman@bclplaw.com

Daniel P. Crane (appearance *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone: (602) 364-7000
dan.crane@bclplaw.com

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc.*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA INC., a foreign corporation,

Plaintiffs,

v.

IONPATH, INC., a Delaware corporation,

Defendant.

Case No. 3:19-cv-05639-WHA

**FLUIDIGM CORPORATION AND FLUIDIGM CANADA, INC.'S OPPOSITION TO MOTION TO DISMISS**

Date: January 23, 2020
Time: 8:00 AM
Courtroom: 12
Judge: Hon. William Alsup

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ..... 1

INTRODUCTION AND FACTUAL BACKGROUND ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. IONpath's Intentional Interference with Fluidigm's Contractual Relations ..... 3

II. Indirect Infringement ..... 5

A. Fluidigm Sufficiently Alleged IONpath's Knowledge of the Patents-In-Suit. ..... 5

B. Fluidigm Sufficiently Alleged IONpath's Intent to Induce Infringement. ..... 7

C. The MIBIscope is a Purpose-Built System Designed Solely to Implement Fluidigm's Patented Methodologies. ..... 8

III. IONpath's Actions Demonstrate Willful Infringement. ..... 10

LEAVE TO AMEND ..... 11

CONCLUSION ..... 12

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005)........................................ 4

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)........................................ 2

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
No. 15-CV-05469-EDL, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)........................................ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................ 2

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990)........................................ 11

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010)........................................ 3, 4, 5

*Craigslist, Inc. v. Naturemarket, Inc.*,
Case No. CV 08 5065 PJH, DE 23........................................ 4

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
479 F.3d 1099 (9th Cir. 2007)........................................ 3, 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................ 10

*Implicit L.L.C. v. F5 Networks, Inc.*,
No. 14-CV-02856-SI, 2015 WL 2194627 (N.D. Cal. May 6, 2015)........................................ 9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)........................................ 11

*MGIC Indem. Corp. v. Weisman*,
803 F.2d 500 (9th Cir. 1986)........................................ 3

*Mir v. Little Co. of Mary Hosp.*,
844 F.2d 646 (9th Cir. 1988)........................................ 3

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990)........................................ 11

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)........................................ 8

*Nanosys, Inc. v. QD Vision, Inc.*,
No. 16-CV-01957-YGR, 2016 WL 4943006 (N.D. Cal. Sept. 16, 2016)....................... 6, 7, 10

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001)........................................................................................ 11

*PB Farradyne, Inc. v. Peterson*,
No. C 05-03447 SI, 2006 WL 132182 (N.D. Cal. Jan. 17, 2006)......................................... 11

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal.4th 26, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998)........................................................ 3

*Software Research, Inc. v. Dynatrace LLC*,
316 F. Supp. 3d 1112 (N.D. Cal. 2018) ...................................................................... 9

*Straight Path IP Grp., Inc. v. Apple Inc.*,
No. C 16-03582 WHA, 2017 WL 3967864 (N.D. Cal. Sept. 9, 2017)................................. 10

*Swingless Golf Club Corp. v. Taylor*,
No. C 08-05574 WHA, 2009 WL 2031768 (N.D. Cal. July 7, 2009) ..................................... 4

*Symantec Corp. v. Veeam Software Corp.*,
No. C 12-00700 SI, 2012 WL 1965832 (N.D. Cal. May 31, 2012)......................................... 6

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)........................................................................................ 3

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)...................................................................................... 8

**Rules**

Fed. R. Civ. P. 15 ........................................................................................................ 11

Fed. R. Civ. P. 15(a)...................................................................................................... 11

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

## STATEMENT OF ISSUES

Whether this Court should deny IONpath's motion to dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6), as to Fluidigm's claim for intentional interference with contractual relations (Count I); Fluidigm's claims for indirect/inducement infringement (Counts III, VI, IX); Fluidigm's claims for contributory infringement (Counts IV, VII, X); and, Fluidigm's request for relief for IONpath's willful infringement.

## INTRODUCTION AND FACTUAL BACKGROUND

Fluidigm Corporation and Fluidigm Canada Inc. (collectively "Fluidigm") filed this action against IONpath, Inc. ("IONpath") asserting claims for direct and indirect infringement, and intentional interference with Fluidigm's contractual relationship with its customers. In the year prior to filing suit, Fluidigm sent IONpath numerous notices regarding, among other things, IONpath's interference with Fluidigm's contractual relations with its customers. Fluidigm's communications also formally notified IONpath of Fluidigm's asserted '104 Patent, which IONpath acknowledged receiving.[1]

Fluidigm's efforts to dissuade IONpath from continuing its unlawful conduct went unheeded. Instead, IONpath elected to double down on its conduct. After receiving notice of its misconduct, including the '104 Patent, IONpath: (1) continued to directly solicit Fluidigm's customers; (2) published and promoted its infringing technology; (3) encouraged Fluidigm's customers to breach their contractual obligations to Fluidigm by, in part, using Fluidigm's reagents with IONpath's instruments; and (4) advertised and marketed its products to Fluidigm's customers with the intent of inducing the customers to infringe upon Fluidigm's patents. At least one such instance was memorialized in a publication, *Cell*, in September 2018, confirming that a Fluidigm customer breached its contractual obligations by using Fluidigm's antibodies and reagents with an IONpath instrument. DE 13 at ¶¶ 72-73.

Fluidigm filed its original Complaint on September 6, 2019 and filed the FAC on October 11, 2019. DE 1 and 13. Notably, IONpath does not seek dismissal of Fluidigm's claims for

[1] Defined terms not otherwise defined in this Opposition shall have the meaning assigned to them in the First Amended Complaint ("FAC") filed at Docket Entry 13.

direct infringement against IONpath. Instead, IONpath challenges the intentional interference with Fluidigm's contract claim (Count I), the indirect/inducement infringement claims (Counts III, VI, IX), the contributory infringement claims (Counts IV, VII, X), as well as Fluidigm's request for relief for IONpath's willful infringement of Fluidigm's Patents.

IONpath's challenges the intentional interference with contractual relations claim by arguing that Fluidigm was required to name specific customers with whom IONpath tortiously interfered. No such specificity is required. Moreover, Fluidigm has sufficiently pled all elements of intentional interference. IONpath next challenges Fluidigm's indirect infringement claims by asserting that it was unaware of Fluidigm's Patents. Yet, there is no dispute that IONpath received notice of the '104 Patent a year prior to Fluidigm filing suit, was specifically aware of the patent family from which the '386 Patent and '698 Patent issued, and received further notice of these patents upon receipt of the original and amended complaints. Finally, IONpath's remaining attacks upon the contributory infringement claims and Fluidigm's request for relief from IONpath's willful infringement are made with a blind-eye towards Fluidigm's well-plead factual allegations. IONpath has in the past sold, and continues to this day to sell, its infringing products with knowledge of Fluidigm's patent rights and continues to instruct others on how to use its products in an infringing manner. In fact, since its receipt of the FAC, IONpath intentionally and officially announced the commercial launch of its infringing MIBIscope system and participated at a conference further promoting and instructing others on how to use the technology in an infringing manner.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when its factual allegations create the reasonable inference that defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) (applying *Iqbal* and *Twombly* to claims for patent infringement).

**ARGUMENT**

**I. IONpath's Intentional Interference with Fluidigm's Contractual Relations**

A party successfully asserts a claim for intentional interference with contract if the party alleges: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998)); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1059-60 (N.D. Cal. 2010) (finding plaintiff sufficiently alleged intentional interference with contractual relations). Fluidigm's FAC sufficiently alleges each of the five requisite elements.

*First*, Fluidigm and its customers are contractually bound by, in part, agreed upon Sales and License Terms and Conditions ("Ts&Cs"). DE 13 at ¶ 69. Pursuant to the Ts&Cs, except when prohibited by law or as authorized by Fluidigm in writing, Fluidigm's customers agreed to not "use any Fluidigm consumable or reagents with any non-Fluidigm instrument, device or system." *Id.* at ¶ 70 (quoting Ts&Cs at § 3.2).

*Second*, Fluidigm provided IONpath with notice of the Ts&Cs it had with its customers no later than February 7, 2018. *Id.* at ¶¶ 68-69.

*Third*, with full knowledge of Fluidigm's Ts&Cs, IONpath's founders submitted a paper to the *Cell* journal in April 2018, which expressly advocated the use of Fluidigm's consumables and reagents with IONpath's infringing system, in direct violation of Fluidigm's Ts&Cs. *Id.* at ¶ 72. The *Cell* paper is authored by individuals at Stanford University and Caltech.[2] Fluidigm specifically alleged: "Not only did the [*Cell*] paper admit that IONpath knew that it and its

---

[2] It is proper for a court to "take judicial notice of matters of public record outside the pleadings" for purposes of a ruling on a motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Courts may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint" at the motion to dismiss phase of a lawsuit. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court may take judicial notice of the *Cell* paper, which is attached as Exhibit 2 to the Declaration of K. Lee Marshall, as it was incorporated by reference in the FAC.

founders breached the Ts&Cs but also encouraged Fluidigm's customers to similarly breach their Ts&Cs by using Fluidigm antibodies and related reagents with non-Fluidigm systems." *Id.* at ¶ 73. At the same time, IONpath published a brochure on its website describing the use of its MIBIscope system with Fluidigm's consumables and reagents. *Id.* at ¶¶ 80-81. And IONpath continued directly contacting Fluidigm's customers encouraging them to breach the Ts&Cs in complete disregard of Fluidigm's warnings. *See id.* at ¶¶ 68, 87.

*Fourth*, a year after being put on notice of the Ts&Cs, IONpath was still intentionally interfering with Fluidigm's customers and, as of August 2019, IONpath "sold at least six" of its infringing MIBIscope systems ("MIBIscope") to such institutions. *See id.* at ¶¶ 87, 88. Importantly, Fluidigm's conjugated antibodies and related reagents were the only such products commercially available during this time frame for specific use with multiplex mass cytometry instruments (Fluidigm's Helios/Hyperion and IONpath's MIBIscope). Finally, Fluidigm's FAC specifically alleges that IONpath's founders, who are affiliated with Stanford University, breached the Ts&Cs. *Id.* at ¶ 73.

*Finally*, IONpath's tortious actions have harmed Fluidigm by causing Fluidigm's customers to breach the Ts&Cs and, further, resulting in Fluidigm's customers engaging in "untested" use of Fluidigm's consumables and reagents. *Id.* ¶ 95. Moreover, IONpath's conduct resulted in Fluidigm losing business opportunities. *Id.* ¶ 96.

The law does not require, as IONpath contends, that a plaintiff disclose in a complaint the actual names of its customers. *See e.g.*, *Craigslist, Inc.*, 694 F. Supp. 2d at 1060; *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005); *Swingless Golf Club Corp. v. Taylor*, No. C 08-05574 WHA, 2009 WL 2031768 (N.D. Cal. July 7, 2009) (finding complaint adequately alleged intentional interference with contract even though plaintiff did not name customers interfered with by defendant). Review of the operative complaint in *Craigslist, Inc.*, shows that the plaintiff only identified the third-parties as Craigslist's "users." *Craigslist, Inc. v. Naturemarket, Inc.*, Case No. CV 08 5065 PJH, DE 23 at ¶¶ 194-96. The court found Craigslist's pleading sufficient in referring to the third-parties as users. *See* 694 F. Supp. 2d 1039 at 1060.

Just as in *Craigslist, Inc.*, Fluidigm alleges here that IONpath is interfering with Fluidigm's contracts with its customers, which Fluidigm further defines as "leading academic, governmental, and private institutions worldwide." DE 13 at ¶ 2. Moreover, Fluidigm specifically alleges with which contract and contractual provision IONpath is interfering, as well as how IONpath is causing the interference – by recommending that its own MIBIscope customers use Fluidigm's consumables and reagents with IONpath's MIBIscope in violation of Fluidigm's Ts&Cs. IONpath's cited authority, on the other hand, demonstrates that allegations of tortious interference with unspecified contracts or contract provisions are of concern, as in *AlterG* or *AccuImage*, which is inapplicable here. Motion at 5-6. Here, there is no omission or mystery as to what types of institutions are reagent customers of Fluidigm and MIBIscope customers of IONpath, and no doubt regarding the specific contract, the Ts&Cs, and provisions, with which IONpath is intentionally interfering. Further, Fluidigm specifically alleged that IONpath's founders, who are affiliated with a university, breached the Ts&Cs. DE 13 at ¶ 73.

Fluidigm's alleged damages are also sufficiently pled. The Ninth Circuit in *CRST Van Expedited, Inc.* determined the plaintiff adequately pled intentional interference where the plaintiff alleged damages "in the form of . . . lost training costs, and recruiting and advertising costs." 479 F.3d at 1105. Similarly, in *Craigslist, Inc.*, the court found sufficient that the plaintiff alleged the breached Terms of Use Agreement resulted in monetary and other damages. 694 F. Supp. 2d at 1060. Fluidigm has alleged damages here including, for example, lost business opportunities (at least six instruments that Fluidigm was aware of by August 2019)[3] and that its customers, based upon IONpath's urging to breach the Ts&Cs, have engaged in untested uses of Fluidigm's products.

## II. Indirect Infringement

### A. Fluidigm Sufficiently Alleged IONpath's Knowledge of the Patents-In-Suit.

IONpath does not dispute that it had knowledge of the '104 Patent. Instead, IONpath asserts that Fluidigm failed to assert IONpath's knowledge of the '386 Patent (issued by the

[3] Query whether IONpath would have been able to sell the MIBIscope to these six customers had Fluidigm's antibodies and related reagents not been commercially available to use with them, particularly since IONpath's MIBItags were not yet available.

Patent Office on January 15, 2019) and the ’698 Patent (issued by the Patent Office on October 8, 2019, just prior to filing the FAC).

Nor does IONpath dispute that it is and was knowledgeable about the patent family from which the ’386 and ’698 Patents issued. Motion at 8-9. And IONpath studiously ignores the fact that two of its founders acted in the capacity of Fluidigm consultants beginning in 2014, with one consulting until the end of 2016 and the other into 2018. DE 13 at ¶¶ 51, 58, 61, and 66. IONpath also does not dispute that the original complaint, filed September 6, 2019, and the FAC, filed October 11, 2019, provided IONpath with express notice of the ’386 and ’698 Patents. Yet, IONpath continues to intentionally market its infringing MIBIscope and related technology. Indeed, IONpath concedes that there “is, of course, no dispute that IONpath encouraged its customers to purchase MIBIscope.” Motion at 9.

Setting aside IONpath’s concession of its prior knowledge of the ’104 Patent, a plaintiff can assert a claim for post-suit infringement with the defendant’s knowledge of the patents-in-suit coming from the complaint itself. *Symantec Corp. v. Veeam Software Corp.*, No. C 12-00700 SI, 2012 WL 1965832, at *4 (N.D. Cal. May 31, 2012) (denying a motion to dismiss indirect infringement claims); *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957-YGR, 2016 WL 4943006, at *5 (N.D. Cal. Sept. 16, 2016) (finding that a defendant has knowledge of patents-in-suit as of the date of the complaint). IONpath nevertheless seeks the Court’s blanket dismissal of Fluidigm’s indirect infringement claims – even the ’104 Patent that IONpath admits it knew about pre-suit. At a minimum, the Court should deny the Motion as it pertains to post-suit infringing activity as to the ’386 and ’698 Patents, and as to the ’104 Patent entirely.[4]

Fluidigm’s FAC identifies specific brochures on IONpath’s website and details exactly how those brochures induce infringing activity. *See e.g.*, DE 13 at ¶¶ 74-84. Tellingly, IONpath does not contend that it removed the brochure from its website after it was served with Fluidigm’s complaint in September 2019. And, Fluidigm included these same allegations in its FAC as IONpath chose to leave on its website the same brochure that instructed customers to infringe

4 If it deems it necessary, the Court could also grant Fluidigm leave to amend to allege IONpath’s post-suit infringing conduct with greater specificity as further described below.

Fluidigm's patents. Taking these allegations as true, IONpath knew of Fluidigm's patent rights and, yet, continued to advertise its systems and instruct users to implement and infringe upon Fluidigm's patented methodology. This is not a case about vague and conclusory conduct that might induce infringement; IONpath has deliberately, intentionally, and admittedly designed and marketed (through publications, brochures, and direct contact) its MIBIscope and related technologies, such as the MIBItags, with full knowledge of Fluidigm's patent portfolio. And as described below, the MIBIscope has but one purpose -- to perform the methods claimed in Fluidigm's asserted patents.

**B. Fluidigm Sufficiently Alleged IONpath's Intent to Induce Infringement.**

An assertion of induced infringement requires, in part, that the party allege "a specific intent to encourage another's infringement of the patent," or that the defendant "willfully blinded itself to the infringing nature" of the activity it encouraged others to undertake. *Nanosys, Inc.*, 2016 WL 4943006, at *4. The supporting allegations must be specifically tailored towards the patents-in-suit. *Id.* (finding sufficient allegations that a defendant's published video instruct its customers to use the product in an infringing manner). These requirements are met here.

As set forth in the FAC, the '386 Patent includes, among others, a method claim for analyzing cells by mass spectrometry where the sample is tagged with antibodies, the method then calls for "vaporizing, atomizing, and ionizing multiple elemental tags" from the sample cells, and then "detecting, using mass spectrometry, the elemental composition of" of the sample by sequentially detecting the transient signal of the first and second cells through a time-of-flight analysis. DE 13 at ¶ 32. The '104 Patent includes, among others, a method claim for the analysis of an analyte in which the reagent, tagged with "a linear or branched polymer having multiple metal-binding pendant groups," specifically binds with the analyte, and the analyte can be analyzed without acidification of the sample by atomic spectroscopy. *Id.* at ¶ 40. The final patent-in-suit, the '698 Patent, includes, among others, a system claim for systems that incorporate a device to "vaporize, atomize, and ionize multiple elemental tags" from the sample with a second device "to detect, by mass spectrometry, lanthanides and/or noble metals" after the

sample has been "vaporized, atomized, and ionized" and then this can be analyzed using a time-of-flight method. *Id.* at ¶ 46.

As alleged in the FAC, IONpath encouraged customers and prospective customers to use the MIBIscope technology to implement the infringing methodology of: "taking biopsies and staining them with a mixture of antibodies labeled with elemental isotopes" and "raster-scanning the tissues with an ion beam resulting in the generation of secondary elemental ions," which are analyzed using "time-of-flight mass spectrometry." *Id.* at ¶¶ 78, 80, 101. IONpath's Motion admits that it uses an ion beam to separate ions from a sample and then these ions "are in turn captured, identified, and quantified by mass spectrometry," practicing Fluidigm's patented methodology. Having been on notice regarding Fluidigm's '104 Patent since September 2018 and, having been founded by, in part, two Fluidigm consultants, IONpath knew (or, at worst, was willfully blind) that its products and instructions to prospective customers on the advertised methodology infringed Fluidigm's Patents. It is not plausible that IONpath's entire marketing scheme and product development is unintentional. IONpath's instructions to customers to implement the methods claimed in the '386 Patent and the '104 Patent are intentional. Indeed, Fluidigm specifically alleged that "IONpath knew and/or was willfully blind to the fact that it was inducing others, including customers . . . to infringe one or more claims of the ['386/'104] Patent by practicing, either themselves or in conjunction with the IONpath, one or more method claims of the ['386/'104] Patent, through sales of the MIBIscope." *Id.* at ¶¶ 113,140.

### C. The MIBIscope is a Purpose-Built System Designed Solely to Implement Fluidigm's Patented Methodologies.

Aside from IONpath's knowledge of the Patents, IONpath challenges whether Fluidigm sufficiently alleged that IONpath's technologies lack a substantial non-infringing use. "A substantial noninfringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009)). The Federal Circuit in *Nalco Co.* found that an allegation that additives, "which are specifically formulated to be used with" the product at issue, and have "no substantial non-

infringing uses" sufficient to satisfy the pleading requirement of no substantial non-infringing for contributory infringement. *Id.* (finding that any dispute of these allegations is a factual dispute "not suitable for resolution on a motion to dismiss."). Likewise, courts in this district have found contributory infringement sufficiently plead where the plaintiff alleged the product was "especially made or especially adapted for use in infringement" and that the instructions on the defendant's website indicated the normal and intended use of the product was infringing. *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1136 (N.D. Cal. 2018) (denying motion to dismiss for post-filing conduct).

Here, Fluidigm alleges, and IONpath's own publications demonstrate, that the MIBIscope is a "purpose-built instrument" designed to implement the infringing methodologies. DE 13 at ¶ 101. Specifically, IONpath's infringing MIBIscope's sole purpose is to use "secondary-ion mass spectrometry (SIMS), . . . to image antibodies tagged with monoisotopic metal reporters" in the circumstance where "high-fidelity multiplexed imaging data is needed." *Id.* at ¶¶ 75-76. The FAC makes clear that the metal-tagged antibodies, such as Fluidigm's Maxpar antibodies and IONpath's MIBItags, are "developed specifically for use with . . . mass cytometry technology." *See id.* at ¶ 26, 112.

The singular purpose of IONpath's infringing technologies, as alleged in the FAC, is confirmed by IONpath's 2018 article and brochure, which both state that IONpath's MIBIscope's purpose for which it is built is to take a sample, stained by elemental isotopes, ionize and then analyze through time-of-flight mass spectrometry. *Id.* at ¶¶ 102, 103. Moreover, Fluidigm alleges that, besides the purpose for which IONpath's MIBIscope and MIBItags are built, the MIBIscope, and MIBItags do "not serve any non-infringing use . . . ." *See e.g.*, *id.* at ¶¶ 121, 124, 149, 177, 180.

IONpath's own connotation of its "purpose-built" system is not accidental. The plain language of its description demonstrates that the MIBIscope is designed for a specific purpose. *See Implicit L.L.C. v. F5 Networks, Inc.*, No. 14-CV-02856-SI, 2015 WL 2194627, at *2 (N.D. Cal. May 6, 2015) (discussing "purpose-built" software designed to handle data in one format and requiring new code to handle anything other than the intended data format). IONpath's argument

that Fluidigm failed to allege the lack of a substantial non-infringing use falls short as IONpath itself advertised, described, and built the MIBIscope for the sole purpose of implementing methodologies that infringe Fluidigm's Patents.

**III. IONpath's Actions Demonstrate Willful Infringement.**

A determination of the plausibility of a willfulness claim should be made based upon the "totality of the allegations." *Nanosys, Inc.*, 2016 WL 4943006, at *7. As this Court has acknowledged, the standard for pleading "willfulness" is no longer as rigid as it used to be prior to *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931–32 (2016). Although the Motion quotes this Court's decision in *Straight Path IP Group, Inc.*, the quote is taken out of context. "[A] patent infringement plaintiff 'does not have to prove willfulness at the pleading stage,' although they 'should allege more than a one-sentence prayer for willfulness relief' under Section 284." *Straight Path IP Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017). In *Straight Path*, Apple's motion for judgment on the pleadings was denied with respect to the willful infringement claim because, in part, Straight Path had alleged Apple "was aware of the four asserted patents and their infringement . . . and that Apple nonetheless continued to sell the accused products and induce infringement by its customers after that date." *Id.*

IONpath's knowledge of the Patents is addressed above. More importantly, as alleged in the FAC, and even after Fluidigm provided notice to IONpath of at least the '104 Patent[5] in September 2018, "IONpath contacted at least one of Fluidigm's customers [in February 2019] . . . in an effort to demonstrate IONpath's MIBIscope and reagents and to sell the infringing technology." DE 13 at ¶¶ 86, 87. Moreover, Fluidigm's FAC alleges that, by August 2019, "IONpath has sold at least six, possibly more, of its infringing MIBIscopes . . . ." *Id.* at ¶ 88. And, although post-dating the FAC, IONpath announced its official commercial launch of the MIBIscope on November 5, 2019.

[5] IONpath asserts that Fluidigm did not allege willfulness with respect to the '104 Patent. Motion at 12. That assertion is incorrect. *See* DE 13 at ¶ G.

As in *Straight Path*, IONpath's argument is premature and may not be resolved on the pleadings. Fluidigm's allegations make clear that IONpath knew of the Patents (and their families) and continues, even to this day, to willfully market, sell, and promote its infringing products.

**LEAVE TO AMEND**

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires" and the purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) for the proposition that leave to amend should be granted "with extreme liberality."). Moreover, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130; *PB Farradyne, Inc. v. Peterson*, No. C 05-03447 SI, 2006 WL 132182, at *2 (N.D. Cal. Jan. 17, 2006) (granting leave to amend set forth as alternative relief to plaintiff's opposition to the motion to dismiss); *see also Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

To the extent the Court believes any of Fluidigm's claims are not adequately pled in the FAC, Fluidigm requests the Court grant leave to file a second amended complaint. Discovery is just beginning and the Court has not entered a scheduling order, so allowing Fluidigm leave to amend would not prejudice IONpath or be the result of undue delay or for dilatory motives. As discussed above, since filing the FAC, Fluidigm has learned that IONpath has continued to promote and sell its infringing MIBIscope system, MIBItags, and related technology. IONpath announced on November 5, 2019, as can be verified by IONpath's website, the official commercial launch of the MIBIscope and admitted that it would, and in fact did, showcase the MIBIscope at the "Society for Immunotherapy of Cancer (SITC) Annual Meeting in Maryland from November 6-10." *See* Declaration of K. Lee Marshall at ¶¶ 2 and 3 and Exhibits 1 and 2

attached thereto. These publicly available facts demonstrate IONpath's continued and willful direct and indirect infringement of Fluidigm's Patents.

**CONCLUSION**

Fluidigm respectfully requests the Court deny the Motion to Dismiss.

Dated: December 18, 2019

K. Lee Marshall
BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ *K. Lee Marshall*
K. Lee Marshall

*Attorneys for Fluidigm Corporation and Fluidigm Canada Inc.*