UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FLUIDIGM CORPORATION and
FLUIDIGM CANADA INC.,

    Plaintiffs,

  v.

IONPATH, INC.,

    Defendant.

No. C 19-05639 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this patent infringement suit, defendant moves to dismiss claims for intentional interference with contractual relations, induced infringement, contributory infringement, and enhanced damages for willfulness. Because the patent owner fails to plead essential elements of each, the motion is **GRANTED**.

## STATEMENT

Fluidigm Corporation and Fluidigm Canada Inc. ("patent owners") market mass cytometry methods and systems for analyzing the structures and biomarkers of cells. Their methods involve labelling a sample, usually a cell or tissue suspension, with metal tags attached to antibodies in a process called "staining." Different antibodies bind to different cell targets,

1    and different metal tags attach to different antibodies. Following staining and washing, to

2    remove unbound antibodies, only antibody-metal tags bound to present targets remain.

3        To analyze the samples, the metal tags are released and ionized. A mass spectrometer

4    measures the mass-to-charge ratio of the ions and, using the different weights of different

5    metals, identifies the various metal tags released from the sample. And because the various

6    metal tags bound to antibodies which in-turn bound to varying targets, identifying the metal tags

7    identifies the targets present in the sample. Patent owners market mass cytometry methods,

8    devices, and market antibody-metal tags (Dkt. No. 13 at ¶¶ 22–26).

9        Patent owners assert three patents: U.S. Patent No. 10,180,386 (" '386 patent"); No.

10   10,072,104 (" '104 patent"); and No. 10,436,698 (" '698 patent") (Dkt. No. 13). The '386

11   patent claims a method "for analyzing cells by mass spectrometry where the sample is tagged

12   with antibodies, the method then calls for vaporizing, atomizing, and ionizing multiple

13   elemental tags from the sample cells, and then detecting, using mass spectrometry, the

14   elemental composition of . . . the sample by sequentially detecting the transient signal of the

15   first and second cells through a time-of-flight analysis" (Dkt. No. 37 at 7) (quotations omitted).

16   The '698 patent claims systems that "incorporate a device to vaporize, atomize, and ionize

17   multiple elemental tags from the sample with a second device to detect, by mass spectrometry,

18   lanthanides and/or noble metals after the sample has been vaporized, atomized, and ionized and

19   then this can be analyzed using a time-of-flight method" (*id.* at 7–8) (quotations omitted). The

20   '104 patent claims a method "for the analysis of an analyte in which the reagent, tagged with a

21   linear or branched polymer having multiple metal-binding pendant groups, specifically binds

22   with the analyte, and the analyte can be analyzed without acidification of the sample by atomic

23   spectroscopy" (*id.* at 7) (quotations omitted).

24       Defendant competes in the same market, and is apparently after patent owners' customers.

25   They complain that defendant allegedly infringes the three patents both directly and, via

26   customers' use of infringing machines, indirectly. Moreover, they allege their proprietary

27   antibody-metal tags are, by their sales terms, *only for use* with patent owners' proprietary

28   analysis methods. Because defendant knows this, yet continues to market its devices, patent

owners contend defendant is plainly encouraging improper use of the antibody-metal tags, *i.e.* intentional interference with contractual relations (Dkt. No. 13 at ¶¶ 26, 68–70, 85–89).

## ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court must take all of the factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Ibid.*

1. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.**

To state a claim for intentional interference with contractual relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages." *PG&E v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990).

Jumping past the first three elements, the complaint fails to plausibly plead actual breach or damages. The California Supreme Court has explained that plaintiffs may allege "actual or inevitable breach of contract" *or* that "plaintiff's performance is made more costly or more burdensome" by defendant's acts. *Id.* at 592. But under *Twombly* and *Iqbal*, *some facts* must be alleged to raise the inference of breach and harm above speculation. *Twombly*, 550 U.S. at 555. The complaint first alleges defendant "has harmed Fluidigm by encouraging unauthorized use" of material (Dkt. No. 13 at ¶ 95). This mixes up the elements of the claim. Encouragement is an "act[] designed to induce breach" — it is not the "actual or inevitable" breach or disruption. *See PG&E*, 791 P.2d at 589–90.

3

Focusing on the breach that patent owner seeks to allege — the use of "any Fluidigm consumables or reagents with any non-Fluidigm instrument, device or system" — the complaint fails to allege facts showing patent owners' *customers* have actually, or will inevitably, misuse plaintiffs' products (*id.* at ¶ 92). To start, the allegations that Stanford Professors Sean Bendall and Michael Angelo breached the antibody-metal tag sales terms are insufficient because the complaint never alleges they were patent owners' *customers*. As the marketer of the products covered by the alleged sales terms, patent owner would certainly have access to such records. Indeed, the complaint alleges only that Drs. Bendall and Angelo once had "confidentiality obligations" to patent owner, but never alleges that they were bound by the alleged sales terms (*id.* at ¶ 71).

Moreover, patent owner never alleges any other customers who have or will breach the sales terms. Patent owner cites the undersigned's *Swingless Golf Club Corp. v. Taylor*, to argue it need not specify which customers have breached (Dkt. No. 37 at 4) (citing No. C 08-05574 WHA, 2009 WL 2031768 (N.D. Cal. July 7, 2009)). But permitting a plaintiff to allege a category of contracts, as patent owner admittedly does here, does not entitle a plaintiff to get by without alleging a plausible basis to conclude that *some* customers have breached. As above, patent owner only alleges defendant "promot[ed]" and "encourage[d]" breach (Dkt. No. 13 at ¶¶ 93, 95). Encouragement is defendant's act, not the contracting party's breach.

Nor does the complaint allege patent owners' contract performance is now more costly. *See PG&E*, 791 P.2d at 592. This leads to the failure to allege the final element of the tort: resulting harm. The complaint just alleges defendant's conduct is "a substantial factor in causing Fluidigm's loss of business opportunities" (*id.* at ¶ 96). Absent well-pled factual allegations leading plausibly to the *conclusion* of actual or suspected lost opportunity, this is speculation undeserving of presumption of truth. Thus, patent owners' complaint does not allege sufficient facts creating a plausible inference that defendant caused breach and resulting harm.

4

2.     **INDIRECT INFRINGEMENT.**

Aside from simple "direct infringement," Title 35 of the United States Code provides for two forms of indirect infringement. Section 271(b) provides "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Section 271(c) provides "[w]hoever offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

A.     **KNOWLEDGE.**

Both contributory and induced infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA v. Cisco Systems*, 575 U.S. ___, 135 S. Ct. 1920, 1926 (2015).

The complaint alleges defendant's knowledge of the '386 and '698 patents via defendant's 2011 citation to an old relative of the two, U.S. Patent No. 7,479,630 (Dkt. No. 13 at ¶¶ 36, 50). But the applications leading to the '386 and '698 patents were filed in 2018, and the patents issued in 2019. Defendant could not have divined the *eventual* issuance of the two patents *eight-years later*. As the Federal Circuit has explained:

> A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application had been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Thus, the complaint does not permit a plausible inference that defendant even knew of the '386 and '698 patents prior to the original complaint (Dkt. No. 37 at 6).

Additionally, patent owner noted several times at the hearing, and the complaint alleges, that defendant was on notice of infringement via the September 2018 letter informing defendant of the '104 patent's issuance (Dkt. No. 13 at ¶ 86). The complaint does not allege a claim chart

5

or other description of infringement was included in the letter. Bare allegations of knowledge of a patent do not support an inference of knowledge of alleged infringement.

### B. INDUCED INFRINGEMENT: SPECIFIC INTENT.

Induced infringement requires a "showing that [defendant] specifically intended [its] customers to infringe" the asserted patents. *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). Specific intent means an "intent to encourage infringement. The question is not just whether [product] instructions describe the infringing mode, but whether the instructions teach an infringing use of the device such that [a court may] infer from those instructions an affirmative intent to infringe the patent." *Takeda Pharms. v. West-Ward Pharm.*, 785 F.3d 625, 631 (Fed. Cir. 2015) (quotation and citation omitted).

To start, the complaint fails to plausibly allege pre-complaint knowledge of the '386 and '698 patents and cannot plausibly allege a specific intent to induce infringement before this suit. Yet it also fails to plausibly allege specific intent to infringe *any* of the three asserted patents, even once defendant learned of them. Patent owners' argument in their opposition brief boils down to defendant's papers and brochures describe infringement, thus specific intent to infringe (Dkt. No. 37 at 8).

The complaint does point to specific information, for example: "[defendant's] 2018 Article *describes* . . . taking tissue biopsies and staining them with a mixture of antibodies labeled with elemental isotopes [and for] raster-scanning the tissues with an ion beam resulting in the generation of secondary elemental ions, which the authors proceeded to analyze doing time-of-flight mass spectrometry" (Dkt. No. 13 at ¶¶ 78, 101) (emphasis added). And the complaint alleges one of defendant's brochures advertises an infringing mode (*id.* at ¶ 80). But "[m]erely describing an infringing mode is not the same as recommending, encouraging, or promoting." *Ibid.* (quotation and citation omitted). Indeed, the Supreme Court emphasized in both *Twombly* and *Iqbal* that allegations of conduct "merely *consistent* with" liability are not enough. 550 U.S. at 556–57; 556 U.S. at 678 (emphasis added). Regardless, the complaints' allegations against the article and brochure — broad descriptions of the field in which patent owner practices, without allegations showing the article and brochure encouraged the practice

of each claim limitation — are too generic to plausibly conclude defendant's "affirmative intent" to *induce others* to infringe. *Takeda*, 785 F.3d at 631.

Moreover, patent owners' argument in their brief betrays differences between the claimed methods and defendant's conduct which preclude specific intent. They tie several elements to defendant's conduct, such as "tagging" and "staining" samples with antibodies and metals and employing "time-of-flight mass spectrometry." But they wholly fail to explain how defendants induce "vaporizing, atomizing, and ionizing multiple elemental tags," and do not explain what element is satisfied when defendants "raster-scan[] the tissues with an ion beam resulting in the generation of secondary elemental ions" (Dkt. No. 37 at 7–8). In patent owners' description, defendant appears to induce something *other* than infringement or appears ignorant of infringement. Neither scenario describes an affirmative intent to infringe.

And to close, the complaint's allegations that defendant "knew and/or was willfully blind to the fact that it was inducing others, including customers . . . to infringe . . ." is a legal conclusion to be drawn *after* alleging supporting facts and is ignored. *Twombly*, 550 U.S. at 555. The complaint again fails to plead facts plausibly supporting the claim for relief.

### C. CONTRIBUTORY INFRINGEMENT: SUBSTANTIAL NON-INFRINGING USES.

Contributory infringement requires a product to have no substantially non-infringing uses. "Where [a] product is equally capable of, and interchangeably capable of both infringing and substantially non-infringing uses, a claim for contributory infringement does not lie." *In re Bill of Lading Transmission*, 681 F.3d at 1338.

The complaint fails to plausibly allege defendant's products have no substantial non-infringement uses. Patent owners appeal to *Nalco Co. v. Chem-Mod, LLC*, to say that alleging products are specifically designed for use in a patented method is sufficient to plead no substantial non-infringing use (Dkt. No. 37 at 8–9) (citing 883 F.3d 1337, 1357 (Fed. Cir. 2018)). This may be true, but the complaint does not so allege.

To start, the complaint's repeated assertions that "[o]n information and belief, the MIBIscope is a 'purpose-built' machine that does not serve any non-infringing uses, but is

designed to practice [plaintiffs' patents]" are conclusory and not entitled to the presumption of truth (Dkt. No. 13 at ¶¶ 121, 124, 149, 177, 180).

Nor are the complaint's repeated, and bare, assertions that defendant's products are "purpose-built" for infringement any more plausible, because it does not explain the "purpose" (Dkt. Nos. 37 at 9–10, 13 at ¶ 101, 102, 104, 111, 119, 121, 149, 157, 177). The complaint pulls this language from an article by defendant, which is alleged to say in full: "[w]e have since constructed a purpose-built instrument that utilizes high brightness primary ion sources, novel ion extraction optics, and time-of-flight mass spectrometry (TOF) to increase channel multiplexing and decrease acquisition times 50-fold" (Dkt. No. 13 at 30, 32, 54). *How* this language shows defendant's product *cannot but infringe* is unclear and never explained. Without such explanation, the conclusion of no non-infringing uses is implausible.

### 3. ENHANCED DAMAGES FOR WILLFULNESS.

There is no precise rule or formula for awarding damages for willfulness in a patent infringement suit, but a district court's discretion to do so is not to be exercised in "a typical infringement case." Rather, such enhanced damages are "generally reserved for egregious cases of culpable behavior" involving conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Halo Elecs. v. Pulse Elecs.*, 579 U.S. ___, 136 S. Ct. 1923, 1931–32 (2016). And, both parties point to the undersigned's prior "observation that a patent infringement plaintiff does not have to prove willfulness at the pleading stage, although they should allege more than a one-sentence prayer for willfulness relief . . ." *See Straight Path IP Group v. Apple Inc.*, No. C 16-03582 WHA, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (quotation omitted).

"But culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. Courts in this district continually find knowledge a requirement for pre-suit enhanced damages. *See, e.g.*, *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018); *NetFuel, Inc. v. Cisco Systems Inc.*, No. C 18-02352 EJD, 2018 WL410737, at *2–3 (N.D. Cal. Sept. 18, 2018); *Word to Info, Inc. v. Google Inc.*, 140 F. Supp. 3d 986, 989–90 (N. D. Cal.

8

2015). As above, the complaint fails to plausibly plead knowledge of the '386 and '698 patents before the filing of this suit. Thus, it cannot plausibly allege willful infringement for those patents before the complaint. Similarly, the complaint does not allege knowledge of the '104 patent before the September 2018 letter, thus it cannot plausibly allege willful infringement any earlier.

Though the complaint plausibly alleges pre-suit knowledge of the '104 patent, the claim for enhanced damages hangs entirely on that knowledge. The complaint does not plausibly allege any egregious conduct, nor does it plausibly allege knowledge *of infringement*. Patent owners did allegedly notify defendant of the '104 patent. But, notably, the complaint never alleges that the letter accused defendant of infringement, much less detailed *how* defendants allegedly infringed (*see* Dkt. No. 13 at ¶ 86–87). As above, the mere assertion that defendant's website describes infringement does not imply defendant's knowledge of infringement. And defendant's marketing of products, without more, does not give rise to the reasonable inference of egregious conduct. Allegations "merely *consistent* with" liability are not enough. *Ashcroft*, 556 U.S. at 678 (emphasis added). Finally, allegations of post-filing conduct raised in the opposition brief are not part of the complaint and are not considered.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the claims for intentional interference with contractual relations, contributory infringement, induced infringement, and enhanced damages is **GRANTED**. Should evidence of egregious conduct come to light, post-filing for the '386 and '698 patents and after September 2018 for the '104 patent, patent owners may move for leave to amend. To note, defendant does not challenge patent owners' claims of direct infringement, thus those claims proceed.

Patent owners may move for leave to file another amended complaint by **FEBRUARY 13 AT NOON** (*see* CASE MANAGEMENT ORDER NUMBER 1, Dkt. No. 45). Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the amended complaint. This order highlighted certain deficiencies in the amended complaint, but it will not necessarily be enough to add sentences parroting each

9

missing item identified herein.  If patent owners move for leave to file yet another amended complaint, they should be sure to plead their best case.

**IT IS SO ORDERED.**

Dated: January 24, 2020.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE