WILMER CUTLER PICKERING
   HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
950 Page Mill Road
Palo Alto, California 94304
Telephone:   (650) 858-6000
Facsimile:   (650) 858-6100

OMAR A. KHAN (*pro hac vice*)
Omar.Khan@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:   (212) 230-8800
Facsimile:   (212) 230 8888

JOSEPH TAYLOR GOOCH (SBN 294282)
Taylor.Gooch@wilmerhale.com
JOSHUA D. FURMAN (SBN 312641)
Josh.Furman@wilmerhale.com
1 Front Street, Suite 3500
San Francisco, California 94111
Telephone:   (628) 235-1000
Facsimile:   (628) 235-1001

*Attorneys for Defendant*
IONpath, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FLUIDIGM CORPORATION, A DELAWARE CORPORATION; AND FLUIDIGM CANADA INC., A FOREIGN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., A DELAWARE CORPORATION,<br><br>Defendant. | Case No. 3:19-cv-05639-WHA<br><br>**DEFENDANT IONPATH, INC.'S OPPOSITION TO MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT** |

In January, the Court granted IONpath's motion to dismiss Fluidigm's First Amended Complaint ("FAC"), dismissing claims for intentional interference with contractual relations, induced infringement, contributory infringement, and enhanced damages for willfulness.  ECF No. 46.  The Court provided Plaintiffs with the chance to file another amended complaint to address the deficiencies but warned that "it will not necessarily be enough to add sentences parroting each missing item identified herein."  *Id.* at 9–10.  Despite the warning, Fluidigm's Second Amended Complaint ("SAC") remains devoid of the necessary factual allegations to support its claim for intentional interference with contractual relations and its plea for enhanced damages in view of supposed willfulness.  As to those two claims,[1] the motion for leave to amend should be denied.

## I.   Fluidigm's Intentional Interference With Contractual Relations Claims Fail To Plausibly Tie IONpath's Actions to Any Breach

The Court dismissed the intentional interference claim in the FAC because "the complaint fails to allege facts showing patent owners' customers have actually, or will inevitably, misuse plaintiffs' products (id. at ¶ 92)."  *Id.* at 4 (emphasis and internal citation omitted).  Fluidigm's proposed SAC remains deficient on this key point.

To be sure, Fluidigm now names several alleged IONpath customers and alleges "on information and belief" that certain named Fluidigm customers "have breached and continue to breach the Ts&Cs by improperly using Fluidigm antibodies and reagents."  (SAC ¶¶ 89–90.)  But Fluidigm does not allege any fact to support its "information and belief" that these customers breached their agreements with Fluidigm.  Instead, Fluidigm's claim rests entirely on the (unpled) inference of breach stemming from its allegation that IONpath delivered its MIBIscope instruments to these customers before IONpath had its reagents for sale (SAC ¶ 130), such that the customers would inevitably breach their agreements by using the IONpath MIBIscope instrument with Fluidigm reagents.  In short, Fluidigm theory boils down to allegation that Fluidigm's customers had to have been using **Fluidigm's**

---

[1]   Although Fluidigm's allegations of direct and (now limited to post-suit) indirect infringement fail on their merits for multiple independent reasons, IONpath's opposition focuses on the claims for tortious interference and willful infringement, where Fluidigm has not even alleged facts that, if taken as true for purposes of this motion, would support those claims at the pleading stage.

MAXpar reagents in *IONpath's* MIBIscope instrument, in (alleged) violation of Fluidigm's terms and conditions. (SAC ¶ 129-130.)

Even taking these allegations as true (they are not[2]), Fluidigm's pleading still fails because it requires the Court to make an inference that extends far beyond a plausible inference from the factual allegations in the SAC. Fluidigm's theory rests on the unstated inference (or assumption, really) that any use of the IONpath instrument by these customers would inevitably result in their use of *Fluidigm reagents* (as opposed to IONpath reagents, third-party reagents, or their own home-grown reagents) and thus inevitably result in a breach of contract. But Fluidigm's SAC continues to omit the critical facts that would be necessary to make this inference plausible, even at the pleading stage: that because IONpath sold MIBIscopes before it allegedly had its own reagents for sale, IONpath induced its customers to use Fluidigm reagents with IONpath's instrument *for lack of any other choice of reagent*. (SAC ¶ 130; ECF No. 49 at 7.) This fails for two simple reasons.

*First*, on the face of the SAC, Fluidigm does not actually allege that there were no other possible reagents for IONpath's customers to use in their MIBIscopes. At ¶ 130 of the SAC, Fluidigm alleges that "IONpath did not offer antibodies and reagents for sale until July 2019, even though IONpath had already sold the MIBIscope product to its customers." Fluidigm further alleges (notably, *not* "on information and belief") that "[p]rior to July 2019, Fluidigm's Maxpar antibodies and reagents were the only such antibodies and reagents *commercially available* and specifically designed to work with these types of mass cytometry systems." *Id.* (emphasis added). What Fluidigm does not—and cannot—allege, is that the lack of a *commercially available* reagent allows one to logically infer that IONpath's customers would have necessarily used Fluidigm's reagents.

---

[2] Fluidigm alleges that "IONpath did not offer antibodies and reagents for sale until July 2019." (SAC ¶ 130.) In fact, IONpath was supplying reagents to its customers for use with the IONpath instrument well before that date. Fluidigm's allegations as to the customers that have allegedly purchased the IONpath instruments and thus allegedly breached their agreements with Fluidigm are also factually inaccurate—for example, one of the customers is not a customer of IONpath's instrument at all, while another has not taken possession of any IONpath instrument. Of course, IONpath understands that the Court must accept factual allegation as true for purposes of this motion.

*Second*, the implication itself—that there were no other alternatives—is negated by Fluidigm's own alleged facts. The University of Colorado's research laboratory lists a "27-marker panel" of reagents, and the cited webpage[3] states that the lab is "happy to discuss *customization*" and "can help *develop new antibodies* to help you analyze your tissues." (SAC ¶ 117.) That is to say, Fluidigm's own citations demonstrate that research laboratories (including the leading universities and biomedical research institutions that Fluidigm has accused of breach of contract) can and do develop their own reagents and antibodies.

Ultimately, Fluidigm does not plead—and cannot plead (because it would be false)—that the mere sale of IONpath instruments to customers would inevitably result in the use of Fluidigm reagents with IONpath instruments. Without that allegation, there is no factual allegation to support the plausible inference of inevitable breach by any Fluidigm customer, and the claim must be dismissed. *See PG&E v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990).

## II.   Fluidigm Does Not Allege Egregious Conduct

### A.   The SAC Does Not Allege Egregious Conduct

The Court's Order granting IONpath's motion to dismiss requires that Fluidigm allege "*egregious*" conduct to state a claim for willful infringement. (ECF No. 46 at 9.) The court has already considered and rejected allegations that were "'merely consistent with' liability." (*Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis omitted).) The marketing of products, without more, does not give rise to the reasonable inference of egregious conduct. (*Id.* at 9.) Here, while Fluidigm's SAC identifies *more* marketing materials, it still fails to identify anything new or raising to the level of egregious conduct:

- ■ The SAC identifies several recent academic publications in 2019 and 2020 (SAC ¶ 105–108) and conferences (SAC ¶ 113–118), but the FAC had already identified at least a 2018 *Cell* publication (FAC ¶ 77–79).

---

[3]   Fluidigm's pleading cites: http://www.ucdenver.edu/academics/colleges/medicalschool/programs/immunology-immunotherapy/HIMSR/HIMSRratesandservices/Pages/Imaging.aspx

- ■ The SAC also identifies the commercial launch of MIBIscope (SAC ¶ 112), but the FAC had already cited a "2018 Press Release" that allegedly described pilot implementations of the device (FAC ¶ 74–76).
- ■ The SAC identifies more customer instructions as to the use of the MIBIscope (SAC ¶ 159, 195, 231), the FAC had already identified customer instructions related to the use of the device (FAC ¶¶ 114, 141–142, 170).

Pleading is not an exercise of quantity over quality. A plea for enhanced damages requires "specific factual allegations about [defendant's] subjective intent, or any other aspects of [defendant's] behavior that would suggest its behavior was 'egregious.'" *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1936 (2016) ("'willful misconduct' do[es] not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more") (Breyer, J. concurring) (emphasis omitted). While Fluidigm has added more allegations, none of them rise to the level of egregious conduct. To the contrary, they are merely an extension of the same prior commercial activities identified in the FAC. Fluidigm's plea for enhanced damages in view of willfulness should be dismissed.

In addition, the SAC does not limit its allegations of willfulness to post-suit conduct for all three patents-in-suit. For the '386 patent, Fluidigm has properly limited its allegation. (SAC ¶ 146.) For the '104 patent, there is (still[4]) no explicit allegation of willful conduct tied to direct infringement. (SAC ¶ 183.) For the '698 patent, Fluidigm has not limited the willfulness allegation made at paragraph 218. The Prayer for Relief is likewise not expressly limited in time, but instead states "from the time it became aware of the infringing nature of its product." (SAC at ¶ G.) This court dismissed these non-time limited allegations of willful conduct, stating: "Should evidence of egregious conduct come to light, ***post-filing*** for the '386 and '698 patents and after September 2018 for the '104 patent, patent owners may move for leave to amend." (ECF No. 46 at 9 (emphasis

---

[4] IONpath's motion to dismiss identified this shortcoming in the FAC. (ECF No. 34 at 12.) Fluidigm's opposition merely pointed to the prayer for relief in its FAC. (ECF No. 37 at 10 n.5.)

added).) Fluidigm's pleading fails to fall within the boundaries set by the law of the case, and thus should be dismissed.

### III. Fluidigm Should Not Be Given Yet Another Opportunity To Amend

The Court expressly warned Fluidigm: "If patent owners move for leave to file yet another amended complaint, they should be sure to plead their best case." (ECF No. 46 at 10.) Presuming that Fluidigm heeded the Court's instructions, its best case still falls short of making out viable claims of intentional interference or willful infringement. And at this point, any further amendment would be futile. It is clear that Fluidigm does not have any evidence of any actual breach of ***its own contracts with its own customer***s. If it did, it would have pled them. The best that Fluidigm has come up with on its third shot is the inference that breach was inevitable because IONpath allegedly did not sell its own reagents until last summer; but that allegation is false, and even if taken as true, would not be enough to lead to an inference of actual breach by any Fluidigm customer. Likewise, Fluidigm's third-shot willfulness allegation just loads up the complaint with more of the same evidence that the Court previously found inadequate to support egregiousness. Fluidigm apparently does not have any evidence to support an allegation of egregious conduct, and any attempt to amend at this point would be a waste of time.

### IV. Conclusion

In view of the foregoing, Fluidigm's proposed SAC fails to meet the pleadings standards set forth in this Court's Order granting IONpath's motion to dismiss and in Rule 12 for Fluidigm's claim for intentional interference with contractual relations and its plea for enhanced damages. The motion for leave to amend should be denied as to these claims.

Dated: February 27, 2020

WILMER CUTLER PICKERING,
HALE AND DORR LLP

By: /s/ Sonal N. Mehta
    SONAL N. MEHTA
    OMAR A. KHAN
    JOSEPH TAYLOR GOOCH
    JOSHUA D. FURMAN

*Attorneys for Defendant IONpath, Inc.*