K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
Nick Williamson (appearance *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO 63102
Telephone: (314) 259-2000
daroodman@bclplaw.com
nick.williamson@bclplaw.com

Daniel P. Crane (appearance *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone: (602) 364-7000
dan.crane@bclplaw.com

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA INC., a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:19-cv-05639-WHA<br><br>**FLUIDIGM CORPORATION AND FLUIDIGM CANADA, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date: March 19, 2020<br>Time: 8:00 AM<br>Courtroom: 12<br>Judge: Hon. William Alsup |

Plaintiffs Fluidigm Corporation and Fluidigm Canada Inc. (collectively "Fluidigm") hereby respectfully submit this Reply in support of the pending "Motion to Amend."[1] Fluidigm's Motion to Amend directly and appropriately addresses deficiencies identified by the Court in its Order dismissing Fluidigm's indirect infringement claims, intentional interference with contract claim, and willful infringement allegations. *See* DE 49.

Significantly, IONpath's Opposition concedes that Fluidigm sufficiently pleads indirect infringement in its "Second Amended Complaint". DE 54. As such, IONpath's Opposition is limited to only challenging the sufficiency of Fluidigm's amended allegations that support its claims for intentional interference with contract and IONpath's willful infringement. Neither challenge holds water.

IONpath's sole attack upon Fluidigm's amended intentional interference claim is based upon IONpath's conclusion that the Court needs to infer that Fluidigm's identified customers actually breached their contracts. Yet, IONpath's argument is directly belied by the facts and allegations in the Second Amended Complaint. For example, Paragraph 132 of the proposed Second Amended Complaint expressly identifies eight Fluidigm customers who breached, and were induced to breach, their contracts by using Fluidigm's reagents with IONpath's MIBIscope. DE 49-3 at ¶ 132. Further, Paragraphs 86 through 88 of the proposed Second Amended Complaint identify how Stanford University: (i) purchased Fluidigm Maxpar® X8 Multimetal

---

[1] Fluidigm would like to use this opportunity to briefly apprise the Court regarding an issue the Court recently raised in granting the parties Stipulation permitting, in part, Fluidigm to amend its infringement contentions. Fluidigm was aware of the requirement that it procure leave of Court in order to properly serve amended infringement contentions, raised the issue with IONpath's counsel, and proposed that the Stipulation provide that Fluidigm may amend its infringement contentions "by the latter of this Court's Order approving this Stipulation or February 24, 2020," which would comply with Patent L.R. 3-6. IONpath's counsel rejected the proposal, and threatened to withdraw from the Stipulation unless Fluidigm's amended contentions were served upon it on Monday, February 24, 2020, regardless of whether the Court had yet had an opportunity to rule upon the Stipulation. IONpath then delayed until 10:16 p.m. on February 24 before giving Fluidigm permission to file the Stipulation. As such, Fluidigm included footnote 1, stating that the parties are aware "that Fluidigm's supplementation requires Court approval pursuant to Patent L.R. 3-6," in the Stipulation in the event the Court denied the Stipulation. Fluidigm is respectful of the Court's rules and the time required considering motions and stipulations.

Labeling Kits and Antibody Labeling Kits; (ii) agreed to be bound by the Ts&Cs[2]; and (iii) breached the terms of the Ts&Cs. IONpath's improper conduct is memorialized in part through Drs. Bendall and Angelo's 2018 publication, as well as yet another article (this time in January 2020), which conclusively demonstrate that a Fluidigm customer, Stanford, breached its contracts with Fluidigm. IONpath encouraged Fluidigm's customers improper use and breach of contracts by using Fluidigm's Maxpar reagents with IONpath's infringing MIBI System. Fluidigm's proposed Second Amended Complaint is properly plead.

IONpath's only other challenge is to the well-plead facts regarding IONpath's willful infringement. The proposed Second Amended Complaint details how, after IONpath was served with both the Original and First Amended Complaints, IONpath nevertheless intentionally and willfully proceeded to continue to solicit customers and launch, market, advertise, offer for sale, and sell its infringing MIBIscope. *See, e.g.*, DE 49-3 at ¶¶ 112-113. Representative of its conduct, at the November 6-10, 2019 SITC Meeting, despite its knowledge of its infringing conduct, IONpath went so far as to orchestrate having MIBIscope customers promote the infringing products, provide live testimonials, and describe how IONpath taught them to engage in the infringing methods and use the infringing MIBI technology. *Id.* at ¶ 116. In the three months after IONpath's commercial launch, IONpath and its founders intentionally and willfully coordinated the publication of multiple articles and, perhaps most egregiously, released a brand new infringing product line, the MIBI Service, through which IONpath directly infringes on Fluidigm's asserted claims and patents by analyzing samples with an IONpath MIBIscope. *Id.* at ¶ 123. Fluidigm has properly plead that IONpath's conduct constitutes knowing, willful, intentional, and deliberate infringement of Fluidigm's Patents. *See id.* at ¶¶ 118, 124.

For the reasons set forth in the Motion to Amend and this Reply, the Court should grant Fluidigm's Motion to Amend.

---

[2] Defined terms not otherwise defined in this Motion to Amend shall have the meaning assigned to them in the Second Amended Complaint filed at Docket Entry ("DE") 49-3.

## I.     **<u>IONPATH INTENTIONALLY INTERFERED WITH FLUIDIGM CUSTOMERS</u>.**

Fluidigm's proposed Second Amended Complaint properly asserts a claim for intentional interference with Fluidigm's customers. IONpath cannot and does not dispute that the proposed amendment clearly demonstrates four of the five required elements: (1) Fluidigm and its customers are bound by a valid contract, the Ts&Cs (DE 49-3 at ¶ 82); (2) IONpath had affirmative knowledge of the Ts&Cs (*id.* at ¶ 81); (3) IONpath engaged in improper and intentional conduct designed to induce a breach of the Ts&Cs (*see id.* at ¶¶ 86-88, 91, 128-124); and (4) IONpath's conduct has damaged Fluidigm (*id.* at ¶¶ 91, 133-135). *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998)). As such, IONpath is left to summarily argue that the fifth required prong – allegations of breach of contract – is somehow missing and must be inferred by the Court. Yet, it is properly plead and fully met by the amendment.

Fluidigm properly pleads its intentional interference claim -- and IONpath's argument fails -- for at least two reasons: (1) Fluidigm specifically alleges that eight MIBIscope customers breached their Ts&Cs with Fluidigm in Paragraph 132; and (2) Fluidigm's supporting facts make clear that these customers breached Fluidigm's Ts&Cs. Disregarding Fluidigm's well-plead facts – including the customers' breach of contracts, IONpath argues that the claim is deficient based upon the contention that the Court must infer that there was a breach. Not so. Fluidigm specifically alleged that IONpath's improper conduct resulted in at least eight of its customers breaching the Ts&Cs:

> 132.    As of January 2020, at least eight of IONpath's customers purchased Fluidigm's antibodies and reagents – and entered into contracts with Fluidigm where they accepted and agreed to be bound by Fluidigm's Ts&Cs – for use with an IONpath MIBIscope and in breach of the Ts&Cs.

DE 49-3 at ¶ 132.

IONpath next appears to argue, without any legal analysis, that the Court should find that Count One is somehow futile because, in Paragraph 90, Fluidigm alleges that "[a]ll eight of these

3

Fluidigm customers agreed to be bound by the Ts&Cs and, on information and belief, have breached and continue to breach the Ts&Cs by improperly using Fluidigm antibodies and reagents with the infringing MIBIscope, as promoted, marketed, encouraged, and advertised by IONpath." *Id.* at 90.  Taking as true the allegations in both Paragraphs 132 and 90, all eight customers breached the Ts&Cs and, on information and belief, continue to do so as a result of IONpath's improper conduct.  IONpath's Opposition ignores Paragraph 132 in its entirety.

Even if the Court were to ignore the facts plead in Paragraph 132, IONpath's reliance upon the use of the words "on information and belief" in Paragraph 90 is off the mark. Allegations made "on information and belief" are completely sufficient under established Ninth Circuit case law under Rule 8, and even under Rule 9 where supported by facts (in the context of the heightened pleading standard for Rule 9 for fraud).  *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019); *see also Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013) (holding that under Rule 8, "[t]hat an allegation is pled on information and belief is neither dispositive nor particularly germane."). Fluidigm's facts supporting its contention and belief that at least eight IONpath MIBIscope customers breached and continue to breach Fluidigm's Ts&Cs are quite clear:

- IONpath's infringing MIBIscope system *requires* "the use of antibodies specifically designed to target biomarkers of interest within the sample being analyzed . . . ."  DE 49-3 at ¶ 76.

- IONpath began selling, and sold, its infringing MIBIscope system prior to IONpath having "any of its own reagents or antibodies available for sale to its customers and potential customers."  *Id.* at ¶ 80.

- With full knowledge of Fluidigm's Ts&Cs, Dr. Nolan, on behalf of Stanford, "placed 10 orders of Maxpar® X8 Multimetal Labeling Kits as well as 8 Maxpar® x8 Antibody Labeling Kits with Fluidigm between February 2018 and September 2018 for use with the MIBIscope method and system."  *Id.* at ¶ 84.

- Dr. Nolan's lab at Stanford possessed a MIBIscope when it placed these orders, and Stanford agreed to be bound by Fluidigm's Ts&Cs when it placed these Fluidigm reagent and antibody orders.  *Id.* at ¶¶ 84-85.

- Drs. Bendall and Angelo, "also associated with Stanford University" published a paper in September 2018 "that admitted to improperly using Fluidigm's Maxpar

4

X8 Antibody labeling kit as a Critical Commercial Assay for IONpath's technology [its MIBI System], in direct violation of the Ts&Cs." *Id.* at ¶ 86.

- Drs. Bendall and Angelo also published an additional article, on January 17, 2020, again promoting the improper use of Fluidigm's reagents and antibodies with IONpath's MIBIscope. *Id.* at ¶ 88.

- "Fluidigm was the first, and the only, company that has commercially available, validated reagents and antibodies." *Id.* at ¶ 77. And, in fact, seven additional customers (besides Stanford), who also have a MIBIscope, purchased Fluidigm antibodies and reagents from Fluidigm after Drs. Bendall and Angelo published their article in 2018 describing the improper use of IONpath's technology with Fluidigm's reagents and antibodies. *Id.* at ¶ 89.

There is no ambiguity as to whether Fluidigm alleges or has tendered facts in support of a breach of contract. Further, based upon the facts and allegations recited in the proposed Second Amended Complaint, it is simply not plausible that a company would spend in excess of $1,000,000 on a MIBIscope that it could not use. *See id.* at ¶¶ 78 and 133. Moreover, IONpath's argument that because Fluidigm is the only company with "commercially available, validated reagents and antibodies" somehow implies that MIBIscope customers are making their own reagents and antibodies misses the mark. Fluidigm, based upon its own sales records, specifically alleges that those eight customers (who own MIBIscopes) actually purchased Fluidigm's reagents and antibodies after IONpath began publishing using the MIBIscope with Fluidigm's reagents and antibodies. *Id.* at ¶ 89.

Thus, having been educated and encouraged by IONpath to purchase and use IONpath's MIBIscope with Fluidigm reagents and antibodies, despite the customers being contractually bound not to use Fluidigm's reagents and antibodies in such manner (and IONpath's knowledge of such contractual prohibitions), the identified customers were encouraged to and did breach the Ts&Cs that they entered into with Fluidigm.[3,]

---

[3]   IONpath also attempts to inject new allegations (without any request for judicial notice – which, even then, only permits a court to take notice of the existence of the website not the truth of the content therein) by quoting a discrete passage from the University of Colorado's website for the proposition that the research institutions can *now* develop antibodies and reagents. Opposition at 3. First, the attempt to inject the passage is wholly inappropriate under the 12(b)(6) standard and is, therefore, irrelevant to the Motion to Amend. Second, whether the passage supports IONpath's allegation is completely unclear from the information provided. Third, IONpath's argument cannot overcome the fact that Fluidigm has properly plead breach of

5

IONpath's argument that Fluidigm's allegations are futile is simply wrong. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim . . . ." *FlatWorld Interactives LLC v. Apple Inc.*, No. 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted)). This standard is the same as a motion to dismiss pursuant to Rule 12(b)(6). *Id.* Here, not only has Fluidigm properly plead breach of contract, there is no basis to conclude that there is any futility.

In any event, Paragraph 132 makes clear that IONpath has indeed induced Fluidigm customers to breach the Ts&Cs and that the Court should grant Fluidigm leave to amend.

## II.  IONPATH'S WILLFUL AND EGREGIOUS INFRINGEMENT.

The Court's ruling on the motion to dismiss (DE 46) did not give IONpath *carte blanche* permission to infringe on Fluidigm's Patents. The Court very clearly stated that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id.* at p. 8 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933, 195 L. Ed. 2d 278 (2016)). The Court went on to explain that enhanced damages are reserved for cases involving "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant or – indeed characteristic of a pirate." *Id.* And that, as both parties acknowledged, "a patent infringement plaintiff does not have to prove willfulness at the pleading stage . . . ." *Id.*

In the proposed Second Amended Complaint, Fluidigm has included detailed allegations exhibiting how, after IONpath undoubtedly learned of its infringement via service of the Complaint and First Amended Complaint, IONpath proceeded with, and perhaps accelerated, its efforts to make, use, offer for sale, sell, and market its infringing MIBI System. *See* DE 49-4 (redline for Proposed Complaint) at ¶¶ 7, 39, 47, 57, 88, 106-108, 111-123. The question for Fluidigm's Motion to Amend is whether, since IONpath was served with the Complaint and First

---

contract – and, at most, the argument raises questions of fact. And, fourth, even if, *arguendo,* the passage were correct in part, such allegations do not show that the customers had the ability to make the reagents and antibodies for a period of time in which they breached the Ts&Cs.

Amended Complaint in this lawsuit, has IONpath's conduct constituted willful infringement of Fluidigm's Patents-in-Suit.

There is no doubt that, with full knowledge of its infringement: (i) IONpath knowingly elected to launch its MIBIscope product; (ii) marketed, advertised, and presented its infringing product at the 2019 SITC Meeting; (iii) continued to publish articles demonstrating IONpath's *direct infringement*; and (iv) encouraged third-parties to acquire and use infringing MIBIscope products and methods. *See id.* If the foregoing intentional acts are not sufficient, IONpath knowingly, intentionally, and shockingly launched a brand new product line, the MIBI Service, pursuant to which IONpath will directly infringe on Fluidigm's Patents-in-Suit as a service for paying customers. *Id.* at ¶ 123. In short, IONpath has tried every avenue available to steal customers from Fluidigm by aggressively marketing, using, and selling its infringing products. Given the above conduct after IONpath's service of the First Amended Complaint in October 2019, the Court should grant Fluidigm leave to amend to include a claim for willful infringement.

IONpath attempts to downplay its knowing, willful, intentional, and aggressive efforts and conduct to promote and sell its infringing systems as "more marketing materials." Opposition at 3 (emphasis omitted). The facts and conduct that IONpath attempts to gloss over is that IONpath, when it solicited customers with the "more marketing materials," indisputably had and has knowledge of its infringement of the Patents-in-Suit and has never argued that Fluidigm's direct infringement claims are deficient.

IONpath also claims that Fluidigm has not alleged egregious conduct. This is false. Fluidigm specifically alleged that it has been harmed by IONpath's "egregious continued infringement," and that IONpath egregiously disregarded Fluidigm's rights by cavalierly, commercially launching the MIBIscope and actively participating in the 2019 SITC Meeting. DE 49-3 at ¶¶ 118, 124.

Whether IONpath, with full knowledge of its infringement, is willfully infringing Fluidigm's Patents by making, using, launching, offering for sale, and selling not only the MIBIscope product but also the MIBI Service, and by presenting at a conference with MIBIscope

1   users who laud how IONpath helped them directly infringe on Fluidigm's Patents, should be

2   decided on the facts – not as matter of law on the pleadings. *See UPF Innovations, LLC v.*

3   *Intrinsic ID, Inc.*, No. 19-CV-02711-VC, 2019 WL 4729601, at *1 (N.D. Cal. Sept. 17, 2019)

4   (quoting *Firstface Co. v. Apple*, Inc., No. 18-CV-02245-JD, 2019 WL 1102374, at *2 (N.D. Cal.

5   Mar. 8, 2019) for the proposition that "[t]he intensely factual issues inherent in a claim of

6   willfulness counsel against early dismissal at the pleading stage.").

### III.     IONPATH'S IMPROPER ARGUMENTS.

Throughout the Opposition, IONpath attempts to improperly inject its own allegations into its Opposition, which IONpath contemporaneously concedes is wholly improper and must be disregarded. Opposition at fn.2. Compounding its improper argument, IONpath then attempts to subtly weave its incorrect allegations into its Opposition. *See* Opposition p. 5 (referring to allegations in the Complaint as "false," premised upon IONpath's own unsupported and improper allegations). IONpath's attempt to do an end run around the applicable legal standard is improper and should be disregarded. *See FlatWorld Interactives LLC*, 2013 WL 6406437, at *3 (applying 12(b)(6) standard to determining viability of a motion to amend).

### CONCLUSION

For the foregoing reasons, Fluidigm respectfully requests that the Court grant Fluidigm's Motion for Leave to File a Second Amended Complaint.

Dated: March 5, 2020                              Daniel P. Crane
                                                  BRYAN CAVE LEIGHTON PAISNER LLP


                                                  By:   /s/ *Daniel P. Crane*
                                                        Daniel P. Crane

                                                  *Attorneys for Fluidigm Corporation
                                                  and Fluidigm Canada Inc.*