UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FLUIDIGM CORPORATION, et al.,

    Plaintiffs,

v.

IONPATH, INC.,

    Defendant.

No. C 19-05639 WHA

**ORDER GRANTING LEAVE TO AMEND**

## INTRODUCTION

A patent owner seeks leave to amend its complaint. Because the new allegations of intentional interference with contractual relations and post-suit willful patent infringement plausibly traverse defendant's opposition, the motion, to the extent below, is **GRANTED**.

## STATEMENT

A prior order dismissed several claims and detailed the facts of this case (Dkt. No. 46). The proposed second amended complaint alleges that Fluidigm Corporation and Fluidigm Canada Inc. ("patent owner") and IONpath, Inc. ("defendant") compete in the market for mass cytometry methods and systems which analyze the structures and biomarkers of cells. Relevant here, the parties' methods involve labelling a tissue sample with antibody-metal tags, which the parties call "reagents." These reagents bind to specific cell targets. Following several steps, not pertinent here, a mass spectrometer identifies the reagents, and by association, the targets present in a sample (Prop. Amend. Compl. at ¶¶ 4–5, 20, 23).

The proposed complaint further alleges that defendant first sold its mass cytometry system, the MIBIscope, in late 2017, but did not market the necessary reagents until July 2019. Meanwhile, patent owner was the only commercial supplier of those reagents. And, patent owner's sales terms prohibited the use of its reagents with any other manufacturer's mass cytometry systems. Yet, defendant sold MIBIscopes to several entities who also purchased patent owner's reagents. So, our patent owner concludes, defendant encouraged use of its MIBIscopes with patent owner's reagents, *i.e.* intentional interference with the patent owner's contractual relations (*id.* at ¶¶ 78–82).

Patent owner also asserts direct and indirect infringement of three patents covering the field of mass cytometry: U.S. Patent No. 10,180,386 (" '386 patent"); No. 10,072,104 (" '104 patent"); and No. 10,436,698 (" '698 patent"). The original September 6 complaint asserted the '386 and '104 patents and the October 11 first amended complaint added the '698 patent. Yet, the proposed complaint alleges, defendant continued to market its mass cytometry systems despite knowledge of its infringement (*id.* at ¶¶ 9, 39, 47, 57).

A January 24 order dismissed patent owner's claims for intentional interference with contractual relations, indirect infringement of the asserted patents, and enhanced damages. Patent owner now moves for leave to amend its complaint, reasserting largely the same claims. In light of the public health concern due to COVID-19, this motion is appropriate for disposition on the papers.

**ANALYSIS**

Federal Rule of Civil Procedure 15(a) dictates that leave to amend shall be freely given "when justice so requires." Absent (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; or (5) futility, leave should be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendant challenges only the futility of patent owner's amendment, arguing the claims for relief remain deficient.

As in a motion to dismiss, a complaint must allege facts sufficient to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That means the factual allegations permit a reasonable inference, not just speculation, that defendants are liable for the

misconduct alleged. All factual allegations rate as true, but legal conclusions merely couched as fact may be disregarded. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendant challenges only two aspects of the proposed second amended complaint.

### 1. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.

To state a claim for intentional interference with contractual relations, a complaint must allege, among others, an "actual breach or disruption of the contractual relationship." *See PG&E v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990). Defendant contends the complaints' allegations require an implausible inference of actual breach. This order disagrees.

The proposed complaint plausibly alleges that patent owner's customers entered into and breached product sales terms. Both patent owner and defendant marketed mass cytometry systems which required antibody-metal tag reagents. Defendant first sold its MIBIscope in late 2017, but did not market its own reagents until July 2019. In the interim, only patent owner commercially marketed the necessary reagents. Yet, to purchase patent owners' reagents, customers agreed to not "use any Fluidigm consumables or reagents with any non-Fluidigm instrument, device or system" (*id.* at ¶¶ 18, 76, 19, 23, 79–82).

Eight entities allegedly purchased *both* MIBIscopes *and* patent owner's reagents during the relevant time period: Stanford University; Dana-Farber Cancer Institute; University of Colorado, Denver; University of Minnesota; Mount Sinai Health System; University of Texas MD Anderson Cancer Center; University of California, San Francisco; and Bluebird Bio. Rather than leaving their MIBIscopes unused until July 2019, these entities used patent owner's reagents with them, thus breaching the sales terms (*id.* at ¶¶ 79, 89, 132–133).

This conclusion requires an inference, but not an implausible one: that MIBIscope customers used the most readily available reagents with their expensive systems. Defendant's counterarguments fail to convince.

*First*, patent owner need not foreclose all other reagent sources. Defendant jumps on a point, which the proposed complaint admits, that some entities, like the University of Colorado, manufactured their own reagents and may also have supplied them to other entities (*id.* at ¶ 117). The pleading standard requires plausibility, not certainty. MIBIscope customers

3

*may* have operated their systems with reagents obtained only from small-batch manufacturers. But special cases do not undermine the plausibility of patent owner's theory of liability, that MIBIscope customers operated their systems with reagents obtained from the most readily available commercial source, patent owner.

*Second*, defendant challenges the allegation that it did not supply reagents before July 2019. Such a challenge exceeds the scope of the proposed complaint. *See Khoja v. Orexigen Therapeutics,* 899 F.3d 988, 998 (9th Cir. 2018). Defendant has notice of the plausible theory of liability and may move for leave to file an early motion for partial summary judgment.

### 2. WILLFUL INFRINGEMENT.

The January 24 order which dismissed patent owner's pre-suit claims for enhanced damages stated:

> (1) [E]nhanced damages are generally reserved for egregious cases of culpable behavior;
>
> \* \* \*
>
> (2) [A] patent infringement plaintiff does not have to prove willfulness at the pleading stage, although they should allege more than a one-sentence prayer for willfulness relief; [and]
>
> \* \* \*
>
> (3) [C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.

(Dkt. No. 46 at 8–9). *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988 at *4–5 (N.D. Cal. Jan. 24, 2020) (quotations and citations omitted). Defendants contend the new allegations of egregious conduct remain deficient. This order again disagrees.

The proposed complaint adequately pleads *post-suit* willful infringement. Taking the allegations as true, service of the original complaint on September 23 notified defendant that it infringed the '386 and '104 patents and the October 11 first amended complaint communicated the same regarding the '698 patent (Prop. Amend. Compl. at ¶¶ 39, 47, 57). Since then, defendant officially launched its infringing MIBIscope on November 5, sold four more systems, proclaimed its MIBIscopes in several articles, and demonstrated them at a November 6 conference (*id.* at ¶¶ 106–07, 111–123). At this stage, the allegations permit the plausible conclusion that defendant's post-suit conduct was willful.

4

Defendant contends the new allegations merely repeat more of the same conduct identified in the prior complaints — more articles, customer instructions, and commercial releases (Dkt. No. 54 at 3–4). But as defendant notes in the next paragraph of its brief, the issue here is timing, not conduct. The January 24 order dismissed allegations of pre-suit willfulness because the prior complaints failed to plausibly allege defendant's pre-suit knowledge of infringement. Now with knowledge of (alleged) infringement, defendant's marketing efforts *become* willful.

But, as defendants note, the timing of the willfulness allegations matters. This order emphasizes that the allegations in the proposed second amended complaint support *only* willfulness claims after September 23 for the '386 and '104 patents and after October 11 for the '698 patent.

**CONCLUSION**

Leave to amend is **GRANTED**. This case proceeds with three patents, each with claims for direct and indirect infringement and for post-suit willfulness, and a claim for intentional interference with contractual relations.

But, as above, any claims for pre-complaint willfulness are not sufficiently alleged. And the Court is unsure why our patent owner again included several theories of liability in its proposed second amended complaint that were already dismissed. For example, the January 24 order made clear that mere knowledge of a prior patent conveys no knowledge whatsoever of later patents in the same family. Yet this theory remains in the proposed complaint (Prop. Amend. Compl. at ¶¶ 37–38, 55–56).

Before filing, patent owner shall please ensure its second amended complaint both: (1) carefully tailors its prayers for willfulness to post-suit behavior; and (2) omit theories explicitly dismissed in this or the January 24 order.

**IT IS SO ORDERED.**

Dated: March 24, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE