**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

FLUIDIGM CORPORATION, a )
Delaware corporation; and )
FLUIDIGM CANADA INC., a )
foreign corporation, )
                              )
       Plaintiffs, )
                              )
  VS. )  **NO. C 19-05639 WHA**
                              )
IONPATH, INC., a Delaware )
corporation, )
                              )
       Defendant. )

San Francisco, California
Thursday, April 16, 2020

**TELEPHONIC TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC APPEARANCES**:

For Plaintiffs:
                      BRYAN CAVE LEIGHTON & PAISNER LLP
                      Three Embarcadero Center, Seventh Floor
                      San Francisco, California  94111
           **BY: K. LEE MARSHALL**
               **ABIGAIL M. COTTON**
               **ATTORNEYS AT LAW**

For Defendant:
                      WILMER CUTLER PICKERING HALE & DORR LLP
                      950 Page Mill Road
                      Palo Alto, California  94304
           **BY: SONAL M. MEHTA**
               **ATTORNEY AT LAW**

Also Present:         **Harris Fienberg, Ph.D.**

REPORTED BY: ANA M. DUB, RDR, CRR, CCRR, CRG, CCG
             OFFICIAL REPORTER, CSR NO. 7445

```
 1   Thursday - April 16, 2020                              8:41 a.m.
 2                        P R O C E E D I N G S
 3                              ---o0o---
 4        THE CLERK:  Calling Civil Action 19-5639, Fluidigm
 5   Corporation, et al. versus IONpath, Inc.
 6        Counsel, please state your appearances for the record.
 7        MR. MARSHALL:  Good morning, Your Honor.  Lee Marshall
 8   with Bryan Cave for Fluidigm.
 9        MS. MEHTA:  Good morning, Your Honor.  Sonal --
10        MS. COTTON:  This is Abby --
11        MS. MEHTA:  I'm sorry.  Go ahead.
12        MS. COTTON:  I'm so sorry.
13        I'm sorry.  This is Abby Cotton, also with Bryan Cave, for
14   plaintiffs.
15        MS. MEHTA:  Good morning, Your Honor.  Sonal Mehta
16   from WilmerHale on behalf of the defendant, and with me on the
17   line is Dr. Harris Fienberg, the CEO of the defendant.
18        THE COURT:  Anyone else?
19        All right.  Good morning to all of you.  Welcome.
20        So as I understand, we need a schedule for the showdown
21   procedure.  Now, didn't I give you that once before?  I thought
22   I did; but, no, I guess not.
23        What's the story there?
24        MR. MARSHALL:  Your Honor, this is Lee Marshall for
25   the plaintiffs.
```

1     No, Your Honor.  You had given us a date for selection of
2 the showdown claims, which then was slightly adjusted to
3 account for getting all the contentions in place before the
4 parties selected their showdown claims.
5     I don't believe we had scheduled past the selection of the
6 claims; so that would be the purposes for the CMC.
7         **THE COURT:**  All right.  Have you done any discovery on
8 this yet?
9         **MR. MARSHALL:**  Your Honor, we have -- we've done some
10 document discovery.  We've exchanged some interrogatories.  We
11 have been talking with the other side about how to conduct
12 depositions remotely under the current circumstances, and so
13 we're going to be working on that.  And we have, just last
14 night, exchanged the claim -- the claim terms that need to be
15 construed so that we're getting the claim construction process
16 under way.  So that's where we currently are.
17     As we indicate in the case management statement, we are
18 obviously going to be working to get as much discovery as we
19 can done under the current circumstances.
20     There may be an issue, for example, with respect to
21 inspection of the accused device, the MIBIscope, which our
22 experts would need to see in person; and so, you know,
23 depending on how long the shelter-in-place is going on and the
24 ability to travel, that may be an issue down the road.  But
25 I think we've decided to punt on that for now.  And we've

1  proposed a schedule that's laid out in the case management
2  statement.
3       **THE COURT:**  Well, I think your schedule is too
4  relaxed, and so we need to move it up.
5       I was proposing that the summary judgment motions be heard
6  on August 20, with the opening briefs due on July 9.  And that
7  would be about three months from now.
8       What do you say to that?
9       **MS. MEHTA:**  Your Honor, this is Sonal Mehta.
10      Before I ask -- I'm sure Mr. Marshall wants to address
11 that.  I just wanted to add one thing to the prior response to
12 your question, which is about the status of the discovery.
13      There was one piece that I wanted to alert your court to
14 because it may be relevant to the scheduling, and that is
15 third-party discovery.  Both sides have served third-party
16 discovery.  From our perspective, a lot of the third-party
17 discovery relates to invalidity and to information about
18 relevant prior art systems.  There's also going to be
19 third-party discovery with respect to named inventors, some of
20 whom are not in the United States.  And the Fluidigm team has
21 served third-party discovery as well.
22      Relevant to the scheduling question, which I'll defer to
23 Mr. Marshall to go first on in a moment, a number of the third
24 parties have responded and said that they're unable to respond
25 to document subpoenas at the moment because their facilities

1   are completely shut down and the relevant individuals are not
2   able to go to the facilities to be able to collect documents in
3   response to subpoenas.  So we're running into some difficulty
4   there, but I wanted to let you know that that is also in
5   progress.
6           **THE COURT:** Okay.
7           **MR. MARSHALL:** Yeah.  Your Honor, this is Lee
8   Marshall, just responding to your question.
9       We certainly appreciate the purpose of the showdown is to
10  get things -- you know, an early read on the case quickly, and
11  so we appreciate that.
12      I do think, as I indicated, that it will be -- part of
13  having a good record for Your Honor to make those decisions on
14  summary judgment and, ultimately, if we need a trial, will be
15  some expert opinions on the infringement issues.  And given
16  that the accused device is, you know, quite large and, if I
17  understand it, they're quite expensive -- I think they're over
18  a million dollars apiece -- you know, this is a device that our
19  expert would have to travel to, to actually, you know, see it
20  in use.
21      And so I think in terms of thinking about the schedule, we
22  are willing to move as quickly as we can in the case.  The
23  issue, of course, is, you know, whether or not our witnesses
24  are going to be able to travel and do what they need to do to
25  give the Court, you know, the record that's necessary to decide

1   the case.
2       So that's the --
3       **THE COURT:**  Those are fair points.  But you're
4   assuming that the shelter-in-place will be extended -- not only
5   extended, but extended so long that it would be impossible for
6   the experts to do that, and I think we ought to be more
7   optimistic than that.  And if it turns out that we have to
8   extend it later because -- let's say, take the worst case:  The
9   shelter-in-place is extended well into the summer.  Well, then
10  we would have to adjust the schedule.  But I don't want to go
11  into this assuming the worst case.
12      So, all right.  Here's what I'm going to do.
13      By the way, on claim construction, I do that at the time
14  of summary judgment.  I don't do that in a special *Markman*
15  hearing.  So you've got to keep that in mind.
16      **MR. MARSHALL:**  Yeah.  In our proposed schedule, we
17  incorporated that concept, that the claim terms that need to be
18  construed for the showdown claims would be determined as part
19  of the summary judgment process.
20      **THE COURT:**  All right.  I'm going to read you a draft
21  scheduling order.
22      The parties shall file cross motions for summary judgment
23  on the two claims, one for each party, selected for the patent
24  showdown.  The parties are limited to one motion, regardless of
25  the number of issues raised:  standing, invalidity, and so

1  forth.  You get one motion.  Opening briefs are limited to
2  25 pages of briefing and 150 pages of declarations and
3  exhibits, not counting the patent itself.  The opposition will
4  be limited to 25 pages of briefing and 150 pages of
5  declarations and exhibits.  The replies must be limited to
6  15 pages of briefing and 20 pages of declarations and exhibits.
7  In the case of voluminous documents and transcripts attached as
8  exhibits, counsel may append only the pages of the document
9  necessary to support the assertions in the briefing and provide
10 reasonable context, along with cover pages sufficient to
11 identify the documents.  Any judicially noticed material will
12 count as an exhibit, but counsel may rely on exhibits and
13 declarations already filed on the same motion by the other side
14 without counting them against counsel's limit.  All briefing
15 and declarations must be double-spaced with 12-point font with
16 only occasional single-spaced quotes and footnotes.
17      All right.  Then I'm going to skip the claim construction
18 part for a second and then say, the opening briefs are due -- I
19 was going to say July 9, but I'm going to make it now
20 September 3rd.  I'm sorry.  Yeah, we'll say September 3rd.  And
21 then the oppositions are due September 17; September 24th for
22 the replies; and then the hearing will be October 15th at
23 8:00 a.m.
24      All right.  That's pretty close to what I think you were
25 arguing for; correct?

1  **MR. MARSHALL:** Yes, Your Honor. We appreciate that.
2  **THE COURT:** All right. Now, I want to give you a
3  schedule for the overall case for the rest of your case because
4  you all are litigating on every possible, conceivable issue and
5  I have to give you a schedule for that.
6  Have you done your initial disclosures yet?
7  **MR. MARSHALL:** Yes, Your Honor -- this is Lee
8  Marshall -- we have.
9  **THE COURT:** All right.
10 **MS. MEHTA:** Yes, Your Honor.
11 **THE COURT:** All right. Just a minute.
12 Have I given you an overall case schedule yet?
13 **MR. MARSHALL:** Your Honor, this is Lee Marshall.
14 No, you have not.
15 **THE COURT:** Have I given you a deadline by which to
16 amend pleadings?
17 **MR. MARSHALL:** Your Honor, this is Lee Marshall.
18 I don't believe so. As you may recall, we went through a
19 couple motions -- or, actually, we went through a motion to
20 dismiss and then a motion for leave to amend, and we have a
21 second amended complaint in place at this point.
22 **THE COURT:** Well, do you plan to bring any amendments
23 to that?
24 **MR. MARSHALL:** Absent something coming up in discovery
25 that we would learn, I'm not contemplating any at this point,

1  Your Honor.
2      **THE COURT:**  All right.  Well, anyway, I'm going to
3  give you till May 28th to add new parties or to amend the
4  pleadings.  Not just to amend, but to seek to amend.  May 28th.
5  After that, the Rule 16 standard would apply.
6      What is your plan for mediation in this case?  Do you have
7  a private mediator in mind, or what's your thought on that?
8      **MR. MARSHALL:**  Your Honor, this is Lee Marshall again.
9      We have not discussed that recently with our colleagues on
10 the other side.  I do understand that there have been some, you
11 know, discussions between the parties directly, and I'm not
12 aware of the precise status of those discussions.
13     But in terms of, you know, asking for a mediation in
14 particular, we're certainly open to that.  I think getting
15 through the showdown would be helpful, from my perspective.
16     And I will yield to Ms. Mehta.
17     **MS. MEHTA:**  Yes, Your Honor. So I think Mr. Marshall
18 is correct.  There's been some informal discussion between the
19 parties.  I also don't know exactly the status of that, but
20 I believe those discussions are ongoing.
21     With respect to mediation, I think in this case -- and,
22 again, this is our position; I haven't talked to Mr. Marshall
23 about this in the last few weeks -- I think we could certainly
24 do private mediation.  I'm also respectful of the fact that
25 the Court's magistrate judges are quite busy.  They're also

1  very effective.  So if the Court were to suggest that we go to
2  a magistrate judge, we'd also be open to that; but in lieu of
3  that, I think private mediation down the road would also be
4  workable.
5      **THE COURT:**  All right.  I'm going to come back to that
6  in a second.
7      The fact discovery cutoff will be January 29 of 2021.
8  That's also the date that your expert reports are due if you
9  have the burden of proof on that issue.  And then, when you get
10 the order, you'll see that the opposition expert reports are
11 due 14 days after that.
12     And so you'll see how it's laid out.  I've used it for
13 21 years.  This schedule works great.
14     All right.  Then we come to last day to file summary
15 judgment.  Now, this is on issues other than the showdown
16 procedure.
17     Last day to file for summary judgment will be March 4,
18 2021; final pretrial conference will be June 3rd, 2021; and a
19 jury trial that will begin on June 21 -- no -- June 14, 2021.
20     And then we go to the point about the -- I'm going to
21 refer you to a magistrate judge.  Do you two have -- give me
22 some ideas on a magistrate judge who you think would like to do
23 this case.
24     **MS. MEHTA:**  I can't speak for the magistrate judges.
25 I don't know if they'd like it or not.

1  One judge that just comes immediately to top of mind is
2  Judge Beeler, Your Honor, but I think there's a number of
3  judges in the district that have significant patent experience
4  that could be useful in a case like this.
5      **MR. MARSHALL:**  Your Honor, this is Lee Marshall again.
6  We would not object to Magistrate Beeler.
7  Magistrate Corley is also someone who may be quite good for
8  this case.
9      **THE COURT:**  You both mentioned Beeler; so
10 Laurel Beeler is it.
11     Okay.  Now, I've found in these patent cases that the
12 lawyers say they will be reasonable but then they almost
13 immediately start with discovery disputes.  And I'm willing to
14 do the discovery disputes as long as it's just a few; but if it
15 turns out to be the typical patent lawyer thing, with about
16 every four or five weeks you have another dispute, I'm going to
17 just send it to a different magistrate judge for supervision.
18     So I need to take your temperature, and you tell me how
19 reasonable you're going to be in this case and how many
20 disputes you foresee coming up.
21     Plaintiff first.
22     **MR. MARSHALL:**  Apologies, Your Honor.  This is Lee
23 Marshall.  I was slow in getting my phone off of mute.
24     I will say that, you know, there are always some disputes.
25 Ms. Mehta and I have been opposite each other in at least one

other case that I can think of, and we have developed, I think, a constructive, professional relationship.  We were able to get on the same page in terms of a proposed schedule, which is not always easy.

I anticipate there are going to be some disputes, but I don't think that it will be, you know, on the magnitude or level that perhaps you've experienced in other patent cases.

**THE COURT:**  Defense?

**MS. MEHTA:**  Your Honor, this is Sonal Mehta.

I suspect that no litigant would tell you that they expect to have a lot of discovery disputes.  But I echo Mr. Marshall's comment, which is, I think so far in this case, the parties have been able to work together constructively, and he and I have an existing relationship as adversaries that has suggested that that will continue to be the case, and we will do everything we can to have it continue to be the case.

**THE COURT:**  All right.  I'm going to keep the discovery disputes for the time being.  Read my discovery guidelines.  Those would apply, even if we sent it to a magistrate judge.  But read my -- do you know -- have you seen my discovery guidelines?

**MR. MARSHALL:**  Yes, Your Honor.

**MS. MEHTA:**  Yes, Your Honor.

**MR. MARSHALL:**  Lee Marshall.

We've reviewed them.

1     **THE COURT:** I particularly want you to be aware of how
2  I feel about the abuse of Rule 30(b)(6). So please make sure
3  you read that one. That comes up a fair amount, and I want you
4  to be aware that I don't like the abuse of Rule 30(b)(6).
5     All right. I am going to give you a chance to try to talk
6  me out of this overall schedule. Plaintiff first.
7     **MR. MARSHALL:** Your Honor, I'm not going to try to
8  talk you out of the overall schedule.
9     I think that there are a couple of things that perhaps
10 either some clarification or guidance would be helpful --
11    **THE COURT:** Sure.
12    **MR. MARSHALL:** -- to the parties.
13    One thing that we were a little unsure of -- and we
14 included something in the case management statement on this --
15 is, at least as I understand it, the showdown is on direct
16 infringement and invalidity issues; that you're not going to be
17 looking at remedies or damages at the time of the showdown
18 summary judgment.
19    Is that understanding correct?
20    **THE COURT:** The dollar amount of damages does not have
21 to be adjudicated in this round. But let's say you, as the
22 plaintiff, let's say you win on the showdown and that you
23 achieve victory and show that the product is infringing. Well,
24 then your very next motion should be one to take it off the
25 shelf and an injunction against selling it.

1    That's the whole point of this.  And I would expect that
2 to be very quick; that we would either take the product off the
3 shelf if it's infringing or maybe there's a design-around.  I
4 don't know.  But then there could be a later trial on the
5 amount of damages.
6    But the initial -- the showdown is to get at:  Is there
7 infringement by the accused product, number one, direct
8 infringement?  And/or is this patent -- is that claim -- is
9 that claim valid or invalid?  That's what I want to get at.
10    So does that answer your question?
11    **MR. MARSHALL:**  Yes, Your Honor, it does.  That was
12 helpful.
13    And then the other thing --
14    **THE COURT:**  Just to be evenhanded on this, if you were
15 to lose and let's say you lost so badly that I thought this was
16 an exceptional case, and very quickly the other side would
17 bring a motion for attorneys' fees to sock your client with the
18 attorneys' fees they've expended on a worthless case -- I'm not
19 saying the case is worthless.  I'm just saying that's the whole
20 point of this procedure, because there are a lot of cases out
21 there where the plaintiff claims are worthless and they should
22 never have been brought.  There are also cases where the
23 plaintiff's claims are valid and infringement is going on and
24 the defendant should be socked.
25    So the whole point is to give you both your best shot at

those alternative outcomes.

So in one case, I did hit the plaintiff with exceptional fees right off the bat; and in another case, the plaintiff's claims lost but it was a reasonable argument.

I don't think I've had yet a case where the plaintiff has gotten an injunction, but I am open to that. I promise you that if you can prove infringement, taking the product off the shelf is going to be on the table quickly.

So that's the whole point of this procedure, is to put both sides at risk; where instead of waiting until the end of the entire case, you both get your best shot at drawing first blood, so to speak, right off the bat. Of course, it's not really right off the bat. It's several months into it. But rather than waiting a year and a half, you only have to wait a half a year.

All right. Any questions about that?

**MR. MARSHALL:** No, Your Honor, not from plaintiff. That was helpful.

**THE COURT:** How about --

**MS. MEHTA:** Your Honor?

**THE COURT:** Yes.

**MS. MEHTA:** Yes, Your Honor. I'm also not going to try to talk you out of the overall schedule but would ask for clarification on one issue --

**THE COURT:** Sure.

1   **MS. MEHTA:** -- which is, understanding that Your Honor
2   does not do a separate claim construction hearing and that we
3   will brief claim construction issues that are relevant to
4   summary judgment disputes that are briefed before Your Honor,
5   we wanted to ask -- and I believe the parties are aligned on
6   our thinking on this, but we wanted to get your guidance on
7   whether the Court is expecting the parties to comply with the
8   claim construction briefing deadline in the patent local rules.
9   **THE COURT:** Yes.
10   **MS. MEHTA:** I think both sides -- okay. So you would
11   like us to fully brief claim construction?
12   **THE COURT:** Yes. Those local rule things keep going
13   on independently of the -- but you've still got to brief for
14   me -- in the summary judgment, you've got to brief what your
15   claim construction issues are.
16   **MS. MEHTA:** Okay, Your Honor. Understood.
17       And one other clarification, which is, with respect to the
18   patent local rules briefing deadlines, do you want us to brief
19   claim construction with respect to all of the patents on the
20   current schedule or the showdown patents on the current
21   schedule?
22   **THE COURT:** Everything. I am not relieving anybody
23   from anything that the local rules require you to do. That has
24   to keep going on for the benefit of the overall case.
25       But the showdown thing is a way to expedite and get to a

1  quicker result on what each of you think is your best claim.
2          **MS. MEHTA:**  Understood, Your Honor.  Thank you.
3          **THE COURT:**  Thank you.  All right.
4      All right.  So I don't hear any other heartburn.  I'm
5  going to get an order out that captures what we did here today,
6  unless somebody has any other case management issue you want me
7  to bring up.
8          **MR. MARSHALL:**  No, Your Honor.  Thank you very much.
9          **MS. MEHTA:**  No, Your Honor.  Thank you.
10         **THE COURT:**  Good luck to both sides.  I'll get an
11  order out pronto.  Bye-bye.
12         **MS. MEHTA:**  Thank you, Your Honor.  Bye-bye.
13         **MR. MARSHALL:**  Thank you.  Bye.
14             (Proceedings adjourned at 9:06 a.m.)
15                         ---o0o---
16
17                    **CERTIFICATE OF REPORTER**
18         I certify that the foregoing is a correct transcript
19  from the record of proceedings in the above-entitled matter.
20
21  DATE:   Thursday, April 30, 2020
22
23  _____
24      Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG
             Official Reporter, U.S. District Court
25