**Pages 1 - 12**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA, INC., a foreign corporation,      Plaintiffs,   VS.   IONPATH, INC., a Delaware corporation,      Defendant. | **NO. C 19-05639 WHA** |

San Francisco, California
Thursday, June 18, 2020

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**APPEARANCES BY TELEPHONE:**

For Plaintiffs:
        BRYAN CAVE LEIGHTON PAISNER LLP
        211 N. Broadway - Suite 3600
        St. Louis, Missouri  63102
    **BY:  NICK E. WILLIAMSON, ATTORNEY AT LAW**

For Defendant:
        WILMER, CUTLER, PICKERING, HALE
          & DORR LLP
        950 Page Mill Road
        Palo Alto, California  94304
    **BY:  SONAL N. MEHTA, ATTORNEY AT LAW**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

**APPEARANCES BY TELEPHONE:** (CONTINUED)

For Defendant:
        WILMER, CUTLER, PICKERING, HALE
          & DORR LLP
        One Front Street - Suite 3500
        San Francisco, California  94111
BY: **JOSHUA R. FURMAN, ATTORNEY AT LAW**

| | |
|---|---|
| **Thursday - June 18, 2020** | **8:00 a.m.** |

                          P R O C E E D I N G S

                                 ---oOo---

**THE CLERK:** Please come to order. This court is now in session. The Honorable William Alsup presiding.

Calling case 19-5639, Fluidigm Corporation, et al., versus IONpath, Inc.

Counsel, beginning with plaintiffs' counsel, state appearances, please.

**MR. WILLIAMSON:** Good morning, Your Honor. This is Nick Williamson from Bryan Cave Leighton Paisner on behalf of plaintiff Fluidigm.

**MS. MEHTA:** Good morning, Your Honor. This is Sonal Mehta from the WilmerHale firm on behalf of defendant IONpath, and with me today is my colleague Josh Furman who will be handling the argument for IONpath.

**THE COURT:** Great. Anyone else?

                              (No response.)

**THE COURT:** Okay. Please, when you speak, identify yourselves for the court reporter.

I'm up to speed on what the issue is. I'd like to give each side a chance to make their main argument, their main point, but not very long; and each side --

So let me just say to everyone else, if you sign on or off, it makes that irritating beep sound and I lose track of

1  what's being said so, please, wait until we have a good break
2  before you sign off.  I suspect those are people who are
3  signing in, but I don't know.
4      Okay.  So let's start with the defendant who's making the
5  motion.  Please go ahead.
6          **MR. FURMAN:**  Thank you, and good morning, Your Honor.
7  This is Josh Furman for defendant IONpath.
8      So just to -- I know you're up to speed, but to set the
9  stage, IONpath has asked for, as part of its interrogatory, its
10 properly enabled to Fluidigm's limitation-by-limitation
11 contentions as to how each element of the claims is allegedly
12 met by each allegedly embodying product.
13     While Fluidigm has provided a response to this
14 interrogatory, they have not provided an element-by-element
15 analysis.  Instead, their charts that they provide show
16 broad-strokes information and on a claim-by-claim basis.  Where
17 this falls short is that it fails to provide notice to IONpath,
18 clear notice, as to how Fluidigm contends that these products
19 actually do practice the claims.
20     What I would like to address today really falls quickly
21 into three buckets.  First is why this information --
22         **THE COURT:**  No, no.  You don't get three.
23         **MR. FURMAN:**  Okay.
24         **THE COURT:**  You get one.
25         **MR. FURMAN:**  Sure.

1      **THE COURT:** So make your best point.

2      **MR. FURMAN:** Okay. Well, to address -- I'll say that
3  the relevance of these products hasn't actually been disputed
4  so I will focus on why what Fluidigm has provided is not
5  sufficient.

6      What they've produced to us are a set of charts; and if
7  Your Honor has Exhibit F to IONpath's brief available --

8      **THE COURT:** No, I don't have it.

9      **MR. FURMAN:** You don't. It's quite all right.

10     **THE COURT:** I just have a summary, but I understand
11 the issues so I don't need to see the chart.

12     **MR. FURMAN:** Fine. Not a problem at all.

13     So the chart that they provided, it is a chart but, at the
14 end of the day -- and what we've included here, while it's just
15 an excerpt, it fit into Your Honor's standing order in terms of
16 the 12-page limit -- it shows, for instance, one of the claims
17 that's included in the showdown procedure, and we have on the
18 left side the entire claim bundled into a single cell and on
19 the right-hand side just four screen shots of web pages and
20 user guides and a sentence or two that provides a small amount
21 of detail.

22     What it doesn't provide is the element-by-element
23 analysis; and to be more specific there, just as an example,
24 the claim -- this claim requires a first device to do a number
25 of things and a second device to do a number of things.

1  When we look to the screen shots, there are several
2  elements described relating to this allegedly embodying
3  product, but there's no explanation of what is the first device
4  from among those things described and, more importantly, what
5  is not the first device described.
6  And then it goes on -- you know, the claim goes on to
7  include other elements, such as detecting a transient and the
8  use of a lanthanide or noble metal, and for these things -- for
9  these elements of the claim, there's simply no mapping.  And
10  why that's important at the end of the day --
11  **THE COURT:**  All right.  I don't care why that's
12  important.
13  Let me ask you a question.  The other side says, look, for
14  lost profits, it doesn't have to read on -- the claims don't
15  have to read, all they've got to do is show that there are no
16  noninfringing alternatives; and if the public didn't buy your
17  product, they would have had to buy their product even though
18  it doesn't fall within the claim language because there are no
19  noninfringing alternatives.  So what do you say to that
20  argument?
21  **MR. FURMAN:**  So I would say two things.  Number one,
22  while they could make that argument, that's not the argument
23  that they've made.  Fluidigm's damages contentions put these
24  embodying products squarely at the center of what's at issue.
25  The other thing --

1    **THE COURT:**  Read to me -- what do you base that on?
2    Read to me what you base that on.
3    **MR. FURMAN:**  So in Fluidigm's damages contentions,
4    they have stated that their proprietary products, the CyTOF
5    Helios and Hyperion mass cytometry technologies, practice and
6    utilize the inventions claimed in the patent, and they use that
7    to support their demand for the patented product under their
8    lost profits and losses.
9    **THE COURT:**  Wait, wait, wait.  Are you reading it to
10   me or are you summarizing it?
11   **MR. FURMAN:**  I am quoting but slightly out of order,
12   and this was in Exhibit B.
13   **THE COURT:**  Read the exact quote so I can -- because
14   if they, in fact, did say that, I might agree with you.  So I'd
15   like to hear where the lost profits analysis is pitched by
16   plaintiff --
17   **MR. FURMAN:**  The heading --
18   **THE COURT:**  Go ahead.
19   **MR. FURMAN:**  Sorry.
20      The heading says "A Demand for the Patented Product," and
21   it says (reading):
22         "There is a strong and growing market for mass
23      cytometry instruments and reagents as demonstrated by
24      sales that have already been made by both parties and the
25      technology's potentially revolutionary effect on

1          personalized cancer treatment.  Fluidigm has made
2          significant sales of its products and services but
3          practice and utilize the inventions claimed in the
4          asserted patents; namely, its proprietary CyTOF Helios and
5          Hyperion mass cytometry technologies, Maxpar reagents, and
6          therapeutics insights surface."
7          **THE COURT:**  All right.  Hold that thought.  I want to
8  see what the other side says to what I just heard.
9          Please go ahead.
10         **MR. WILLIAMSON:**  Good morning, Your Honor.  This is
11 Nick Williamson for plaintiff Fluidigm.
12         I think that the issues here are fairly well laid out in
13 the parties' letter briefs, and I wanted to key in on what we
14 see as an important issue here, Your Honor, and that's that in
15 every case that defendants have cited -- in the *Infernal*
16 *Technology* case, in the *Blast Motion* case, in the *Apple* case,
17 in the *LifeNet* case, and in the *Ultimate Pointer* case -- the
18 plaintiffs had either refused to provide any response or had
19 simply relied on documents under Rule 33 of the Federal Rules
20 of Civil Procedure.
21         Here we have a very different posture where Fluidigm has
22 provided 17 pages of detailed charts providing sufficient
23 notice to defendant IONpath of why Fluidigm believes that the
24 products and methods practice the asserted claims that we'd see
25 as a substantial distinguishing factor on top of the

1  overbreadth and burdensome nature of the original
2  interrogatory, which demanded properly objectionable
3  information well beyond what is now sought with this limited --
4          **THE COURT:**  Well, how can it be burdensome?  How can
5  it be burdensome for you?  You had the patent owner to identify
6  how your own products practice the claimed patents -- claimed
7  inventions.  To me you ought to be able to do that in about two
8  hours.  I don't see why that's burdensome.  This is information
9  totally within your control.  What's so burdensome about that?
10         **MR. WILLIAMSON:**  I understand that, Your Honor, and
11 that is -- the unduly burdensome nature comes in with trying to
12 break this down on an element-by-element or a limitation-by-
13 limitation chart.
14     We've already provided --
15         **THE COURT:**  You can do that -- listen, you can do that
16 in two hours.  If you can't, you've got no case.  This is
17 ridiculous.  You could do that.  I don't understand why you're
18 resisting this.
19     I know why you're resisting it.  It's because you're
20 afraid to go on record because it's going to hurt you in other
21 cases.  I understand how these patent cases work.  You're
22 desperate to avoid taking a position on this.  So you're going
23 to lose this point.
24     All right.  I'm ready to make a ruling.  Are you ready to
25 take down my ruling?

1          **MR. WILLIAMSON:**  Yes, Your Honor.

2          **THE COURT:**  All right.  I'm ordering the plaintiff to
3    do a claim chart limitation-by-limitation on why and how its
4    own products that it claims are lost profits or would be
5    evidence of commercial success of the invention, how each
6    claim, not the patent, each claim that is asserted reads on
7    those patents -- I'm sorry -- reads on those products.

8          The reason for this is it's relevant in two respects.
9    First, on account of lost profits contentions as set forth in
10   the plaintiffs' own interrogatory answer.  Now, I want to say
11   that I recognize that even products that do not read on it
12   might serve as the basis for lost profits if and only if there
13   is no noninfringing alternative; but given the way that the
14   plaintiff has pitched it in the interrogatory answer, you are
15   stuck with your answer and you're not going to wiggle off even
16   though it may hurt you in some other case.  You're going to be
17   specific or I'm going to throw out your case.

18         Number two reason that it's relevant is because of
19   commercial success.  You're claiming that this is the greatest
20   thing since sliced bread -- okay -- and that your own products
21   prove that; but if your own products don't practice the actual
22   limitation by limitation, it's irrelevant.  It must be
23   limitation by limitation read exactly on the claims or it
24   doesn't count for commercial success.

25         All right.  That's the ruling and you're going to answer

1   this, and I'm going to make you pay the fees of the other side
2   for being obstinate and requiring this hearing.  This was
3   unwarranted.  You should have answered this.  You're the
4   plaintiff.  A plaintiff is supposed to open up the doors and
5   say "Come get my discovery."  Instead, you are stonewalling
6   like a big law firm.  Do not do that.
7         Okay.  I want the plaintiff -- I'm sorry -- the defendant
8   to prepare a form of order that captures what I just said.
9         Now, I want to say to you, Defendant, if you overreach and
10  try to slip things in there that I have not ruled in your favor
11  on, then I'm going to deny your relief.  So please do not try
12  to slip in extra things.
13        I'll give you three weeks in order -- in which to
14  answer -- to give proper answers to this interrogatory.
15        Any product for which you do not do this, you will not be
16  allowed to rely on it at trial for any purpose.  So be aware of
17  that.  If you're going to assert this at trial or on summary
18  judgment as a basis for commercial success or lost profits or
19  for any other reason where the contention is it reads on the
20  patent, then you must identify it now.
21        And I want to say one other thing.  Sometimes a product
22  has two different versions.  It has Version A, then it has
23  Version B.  It will not be enough to say, "Oh, here's
24  Version A.  That's good enough."  Any version that you say
25  reads on the limitations must be identified with a claim chart.

1    So if you've got four versions of the particular product
2 and you're going to contend at trial all four versions, then
3 you have to identify for all four versions because I have
4 found, sadly, in other cases that only one product -- only one
5 arguably fits and the plaintiff is trying to skate by by
6 claiming that all of them, you know, is representative.  No, no
7 representatives.  You've got to do it version by version,
8 product by product.
9    All right.  That's the ruling.
10    Thank you, Counsel.  I'm sorry, I've got other hearings to
11 go to and good luck to both sides.
12         **MR. WILLIAMSON:**  Thank you for your time, Your Honor.
13         **MR. FURMAN:**  Thank you, Your Honor.
14         **MS. MEHTA:**  Thank you, Your Honor.
15            (Proceedings adjourned at 8:14 a.m.)
16                     ---oOo---
17              **CERTIFICATE OF REPORTER**
18    I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20 DATE:   Saturday, June 20, 2020
21
22
23 _____
24    Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              U.S. Court Reporter
25