1   WILMER CUTLER PICKERING
      HALE AND DORR LLP
2   SONAL N. MEHTA (SBN 222086)
    Sonal.Mehta@wilmerhale.com
3   950 Page Mill Road
    Palo Alto, California 94304
4   Telephone:    (650) 858-6000
    Facsimile:    (650) 858-6100
5
    OMAR A. KHAN (*pro hac vice*)
6   Omar.Khan@wilmerhale.com
    7 World Trade Center
7   250 Greenwich Street
    New York, New York 10007
8   Telephone:    (212) 230-8800
    Facsimile:    (212) 230 8888
9
    JOSEPH TAYLOR GOOCH (SBN 294282)
10  Taylor.Gooch@wilmerhale.com
    JOSHUA D. FURMAN (SBN 312641)
11  Josh.Furman@wilmerhale.com
    1 Front Street, Suite 3500
12  San Francisco, California 94111
    Telephone:    (628) 235-1000
13  Facsimile:    (628) 235-1001

14  *Attorneys for Defendant*
    IONpath, Inc.
15

16              **UNITED STATES DISTRICT COURT**

17             **NORTHERN DISTRICT OF CALIFORNIA**

18                **SAN FRANCISCO DIVISION**

19

20  FLUIDIGM CORPORATION, A DELAWARE        Case No. 3:19-cv-05639-WHA
    CORPORATION; AND FLUIDIGM CANADA
21  INC., A FOREIGN CORPORATION,            **DEFENDANT IONPATH, INC.'S**
                                            **MOTION TO STRIKE UNDISCLOSED**
                              Plaintiffs,   **THEORIES IN THE EXPERT REPORT**
22                                          **OF GARY HIEFTJE, Ph.D.**
              v.
23                                          Date:      September 10, 2020
    IONPATH, INC., A DELAWARE               Time:      8:00 am
24  CORPORATION,                            Ctrm.:     12
                              Defendant.    Judge:     Hon. William Alsup
25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................2

II.     THE COURT SHOULD STRIKE FLUIDIGM'S UNDISCLOSED
        INFRINGEMENT THEORIES ...................................................................................4

        A.      The Patent Local Rules and This Court's Orders Require Disclosure Of
                Infringement Contentions ..............................................................................4

        B.      The Court Should Strike Expert Opinion On Undisclosed DOE Theories....................4

                1.      Fluidigm Was On Notice That Placeholder DOE Contentions Are Not
                        Enough .................................................................................................4

                2.      Fluidigm's Amended (Operative) Contentions Only Disclose Only
                        One DOE Theory—For The "Vaporiz[ing], Atomiz[ing], Ioniz[ing]"
                        Limitations ...........................................................................................5

                3.      Dr. Hieftje's Analysis Includes DOE Opinions Beyond Those
                        Disclosed..............................................................................................6

                4.      Fluidigm Refused To Withdraw The Undisclosed Contentions ........................9

                5.      Dr. Hieftje's Opinions On Doctrines of Equivalents Should Be
                        Stricken ..............................................................................................10

        C.      The Court Should Strike Opinions On Undisclosed Means-Plus-Function
                Infringement Theories.................................................................................14

                1.      Dr. Hieftje's Report Includes Means-Plus-Function and Structural
                        Equivalents Opinions That Were Not Disclosed In Fluidigm's
                        Infringement Contentions ...................................................................14

                2.      Fluidigm Has Known For Months That IONpath Is Asserting That The
                        "First Device To . . ." And "Second Device To . . ." Limitations Are
                        Means-Plus-Function Limitations.........................................................15

                3.      Dr. Hieftje's Opinions on 112(f) and Structural Equivalents Should Be
                        Stricken ..............................................................................................16

III.    THE COURT SHOULD STRIKE DR. HIEFTJE'S CLAIM CONSTRUCTION
        OPINIONS ................................................................................................................17

IV.     CONCLUSION ........................................................................................................21

1

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
   No. C 12-0630 LHK (PSG), 2013 WL 3246094 (N.D. Cal. June 26, 2013)...........4, 12, 16

*BOT M8 v. Sony Corp. of Am.*,
   No. C 19-07027 WHA (N.D. Cal. June 10, 2020).........................................................4, 11

*Cisco Sys., Inc. v. Teleconference Sys., LLC*,
   No. 09-cv-01550 JSW (NC), 2012 WL 9337627 (N.D. Cal. June 11, 2012).............12, 16

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
   No. C 16-06180 WHA, 2017 WL 2630088 (N.D. Cal. June 19, 2017)...........................11

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-CV-06946-JST, 2018 WL 4181906 (N.D. Cal. Aug. 31, 2018)...........................11

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-CV-06946-JST, 2019 WL 7589210 (N.D. Cal. Feb. 5, 2019).............................11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006)..................................................................................4, 12

*Oracle Am., Inc. v. Google, Inc.*,
   No. C 10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ..........................11

*Sunpower Corp. Sys. v. Sunlink Corp.*,
   No. 08-cv-02807 SBA, 2009 WL 1657987 (N.D. Cal. June 12, 2009).....................13, 16

*Thought, Inc. v. Oracle Corp.*,
   No. 12-cv-05601 WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016) ..........................11

*Xiaohua Huang v. Nephos Inc.*,
   No. C 18-06654 WHA, 2019 WL 5892988 (N.D. Cal. Nov. 12, 2019)...........................10

**STATUTES, RULES, AND REGULATIONS**

35 U.S.C. § 112(6) ...............................................................................1, 3, 14, 15, 16

Patent L.R. 3-1(c)..............................................................................................10

Patent L.R. 3-3(c)..............................................................................................15

Patent L.R. 4-1 ...........................................................................................3, 15

Patent L.R. 4-2 ...................................................................................3, 15, 17

Patent L.R. 4-3 ..............................................................................................17

## NOTICE OF MOTION AND MOTION TO STRIKE UNDISCLOSED
## EXPERT OPINIONS OF GARY HIEFTJE, Ph.D.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2020 at 8:00 a.m., in Courtroom 12, 19th Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant IONpath, Inc. ("IONpath") moves for an Order striking the following portions of Plaintiffs Fluidigm Corp. and Fluidigm Canada Inc.'s ("Fluidigm") opening expert report on infringement that include infringement theories and opinions on claim construction that were not properly disclosed pursuant to the Patent Local Rules and this Court's Orders:

(1) Paragraphs 69, 82, 125 and 137, wherein Dr. Hieftje opines on theories of infringement under the doctrine of equivalents that exceed what was disclosed in Fluidigm's supplemental infringement contentions.

(2) The portions of Paragraphs 70, 126, 138, 149, 153, 194, 204 in which Dr. Hieftje opines on theories of infringement under the doctrine of equivalents that exceed what was disclosed in Fluidigm's supplemental infringement contentions.

(3) Paragraphs 158-179 and 195-202 wherein Dr. Hieftje offers undisclosed opinions on infringement under Section 112(6) and structural equivalents.

(4) Paragraphs 67, 94-99, 102, 104, 122-123, 134-135, 174-176, 178, 187, 190, and 191 wherein Dr. Hieftje opines on matters of claim construction.

This motion is supported by the following Memorandum of Points and Authorities and the Declaration of Joseph Taylor Gooch, filed concurrently herewith, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

IONpath moves to strike specific paragraphs from the expert report on direct infringement of the showdown claims offered by Dr. Gary Hieftje[1] based on Fluidigm's failure to timely disclose its theories as required by this Court's Orders and the Patent Local Rules.

**First**, the report includes opinions regarding infringement under the doctrine of equivalents ("DOE") that are not disclosed anywhere in Fluidigm's operative infringement contentions. There is no excuse for Fluidigm's failure to properly disclose these theories, or its refusal to withdraw them now. Six months ago, IONpath gave Fluidigm notice that the Patent Local Rules and case law from this district, including from this Court, require specific DOE contentions. In response, Fluidigm presented—and the Court permitted—amended contentions in which Fluidigm provided DOE contentions for just one claim limitation. IONpath does not challenge Dr. Hieftje's DOE opinions on that limitation here.[2] IONpath does challenge Fluidigm's attempt to introduce, for the first time in its infringement report in advance of the 'showdown' summary judgment proceedings, DOE theories that were omitted from its amended (and still operative) infringement contentions. IONpath pointed this out in advance of bringing this motion and asked Fluidigm to withdraw the undisclosed theories. Fluidigm declined.

**Second**, the Hieftje Report includes new opinions regarding infringement of limitations that IONpath has proposed are means-plus-function limitations, including lengthy opinions on structural

---

[1]     The Court has set a schedule for showdown proceedings including a September 3, 2020 deadline for summary judgment motions, and for fact and expert discovery in the case more broadly. D.I. 75. To promote an orderly process for expert discovery relating to the showdown claims specifically, the parties agreed to exchange burden of proof expert reports relating to direct infringement and invalidity of the showdown claims on July 27, 2020, and rebuttal expert reports limited to those issues on August 10, 2020. D.I. 86 at 5. IONpath attaches the relevant excerpts of Fluidigm's July 27 showdown infringement report to the Declaration of Joseph Taylor Gooch ("Gooch Decl."). Ex. 1 [Excerpts from July 27, 2020 Report of Gary Hieftje, PhD] ("Hieftje Report").

[2]     There are other problems with Dr. Hieftje's DOE opinions and with Fluidigm's DOE theories on that limitation. IONpath does not trouble the Court with those issues now. It will raise them as appropriate in its summary judgment motion, and, if the case proceeds, pretrial filings.

equivalents that are not disclosed anywhere in Fluidigm's operative infringement contentions. Fluidigm has known since at least IONpath's original April 1, 2020 invalidity contentions and IONpath's April 15, 2020 Patent Local Rule 4-1 Disclosures that IONpath contends that two limitations from the '698 patent[3] are governed by Section 112(6). And Fluidigm has known since at least IONpath's May 6, 2020 Patent Local Rule 4-2 Disclosures what corresponding structure IONpath is proposing for those limitations. Yet Fluidigm did not—and still has not—sought to amend its infringement contentions to offer any infringement theory under Section 112(6) should the Court adopt IONpath's means-plus-function contention. Instead, for the first time in Dr. Hieftje's infringement report, Fluidigm impermissibly offers nearly a dozen pages of infringement analysis under IONpath's proposed means-plus-function construction, including paragraph upon paragraph of previously undisclosed contentions regarding structural equivalence.

*Third*, the Hieftje Report includes opinions regarding claim construction even though (1) Dr. Hieftje was not identified as one of the four individuals that Fluidigm said would offer expert opinions on claim construction during the Patent Local Rules disclosures process and in its portion of the Joint Claim Construction and Prehearing Statement; (2) Fluidigm had already served an expert declaration (which IONpath is not challenging on timeliness grounds) on claim construction from a different, disclosed expert on the timeline required by the Patent Local Rules; and (3) Fluidigm submitted Dr. Hieftje's untimely, undisclosed theories as part of an infringement expert report that arrived on IONpath's virtual doorstep just three days before IONpath's responsive claim construction brief and own expert declaration were due.

---

[3]     Those limitations are: (1) "a first device to vaporize, atomize, and ionize multiple elemental tags from a single first cell of the plurality of tagged cells and multiple elemental tags from a single second cell of the plurality of tagged cells"; and (2) "a second device to detect, by mass spectrometry, lanthanides and/or noble metals of the single first cell by detecting a transient signal of the multiple vaporized, atomized, and ionized elemental tags of the single first cell, and lanthanides and/or noble metals of the single second cell by detecting a transient signal of the multiple vaporized, atomized, and ionized elemental tags of the single second cell, wherein the transient signal associated with the single first cell and the transient signal associated with the single second cell are detected sequentially."

1

2

## II.     THE COURT SHOULD STRIKE FLUIDIGM'S UNDISCLOSED INFRINGEMENT THEORIES

3

### A.     The Patent Local Rules and This Court's Orders Require Disclosure Of Infringement Contentions

4

5

 "In this district, the Patent Local Rule 3-1 infringement and invalidity contentions set the metes and bounds of the suit." *BOT M8 v. Sony Corp. of Am.*, No. C 19-07027 WHA (N.D. Cal.

6

June 10, 2020) at 17 (Order re Summ. J.) (quoting *Apple Inc. v. Samsung Elecs. Co.*, No. C 12-0630

7

LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013)). The Patent Local Rules "requir[e]

8

both the plaintiff and the defendant in patent cases to provide early notice of their infringement and

9

invalidity contentions, and to proceed with diligence in amending those contentions when new

10

information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power*

11

*Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). "***Arguments truly outside the scope of the***

12

***contentions will be stricken***." *BOT M8*, No. C 19-07027 WHA (N.D. Cal. June 10, 2020) at 17

13

(Order re Summ. J.).[4] That is precisely what IONpath asks the Court to do here.

14

### B.     The Court Should Strike Expert Opinion On Undisclosed DOE Theories

15

#### 1.     Fluidigm Was On Notice That Placeholder DOE Contentions Are Not Enough

16

17

 Pursuant to the Patent Local Rules and this Court's orders, Fluidigm served its original

18

infringement contentions on February 6, 2020. Although the case law in this district is consistent

19

that contentions must be substantive and that boilerplate reservations of rights are not sufficient,

20

Fluidigm's DOE contentions included only that. In its cover pleading, Fluidigm contended only

21

"[i]n the alternative, to the extent a limitation of the above-listed claims is found not to be literally

22

present in an Accused Products, Fluidigm contends that any differences are insubstantial and/or the

23

Accused Products perform substantially the same function, in substantially the same way, to obtain

24

substantially the same result as the above-listed elements and limitations in each of the asserted

25

claims and, therefore, each and every limitation of the claims is present in the Accused Products

26

and infringed under the doctrine of equivalents," and reserved the right to supplement or amend it

27

---

28

[4]     Emphasis added and internal citations omitted throughout unless otherwise noted.

4

contentions. *See* Gooch Decl., Ex. 2 [Infringement Contentions Cover Pleading] at 11. In each of its attached claim charts, Fluidigm included only a single sentence in a footnote stating "Additionally, to the extent IONpath alleges that any limitation of an asserted claim is not present literally in IONpath's Accused Products, Fluidigm contends that the element is, at a minimum, present under the doctrine of equivalents as any differences are insubstantial. Fluidigm expressly reserves the right to supplement these Contentions and Exemplary Support in the event that IONpath alleges that any claim limitation is not literally present in the Accused Products." *See, e.g.,* Gooch Decl., Ex. 3 [Infringement Contentions Appendix A ('386 patent)] at 1; Gooch Decl., Ex. 4 [Infringement Contentions Appendix C ('698 patent)] at 1.

On February 11, 2020, IONpath wrote to Fluidigm to identify a number of deficiencies in Fluidigm's infringement contentions, including its failure to provide substantive DOE contentions on a limitation-by-limitation basis:

> **L.R. 3-1(e) - Doctrine of Equivalents**
>
> Fluidigm's infringement contentions state that it contends that any difference with any limitation between the accused products and the asserted claims would be subsumed by the doctrine of equivalents. This is no more than a boilerplate assertion. Infringement Contentions at 3. The patent rules, and this court, require that you detail your theory as to how the accused products infringe under the doctrine of equivalents on a limitation by limitation basis. *See Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017) (determining that the patentee did not comply with Rule 3.1 because the infringement contentions "provide[d] no explanation whatsoever as to how the accused products infringe under the doctrine of equivalents even if they do not literally infringe.").

*See* Gooch Decl., Ex. 5 [Letter to D. Crane] at 6.

> **2.    Fluidigm's Amended (Operative) Contentions Only Disclose Only One DOE Theory—For The "Vaporiz[ing], Atomiz[ing], Ioniz[ing]" Limitations**

After a meet-and-confer process in which IONpath expended considerable effort requesting Fluidigm to bring its infringement contentions into compliance with the Court's rules, Fluidigm agreed to supplement its contentions. On February 24, 2020, Fluidigm sought permission from the Court to amend its invalidity contentions; IONpath did not oppose Fluidigm's request. *See* D.I. 50 [Stipulation and Proposed Order to Extend Certain Deadlines]. The Court approved but noted: "Patent owner is warned, however, that future amendment will be governed strictly by Patent Local Rule 3-6's good cause standard. Having enjoyed one free amendment already, further leave will not

1    be lightly granted." D.I. 53 [Order Granting Stipulated Extension and Continuance].

2          Fluidigm served its Supplemental Invalidity Contentions on February 24, 2020. *See* Gooch

3    Decl., Ex. 6 [Amended Infringement Contentions Cover Pleading]. Fluidigm disclosed a doctrine

4    of equivalents theory for the claim limitations that require "vaporization, ionization and

5    atomization" in the '386 and '698 patents. *See* Gooch Decl., Ex. 7 [Amended Infringement

6    Contentions Appendix A ('386 patent)] at 19-20, 24, 29-30, 33-34, 39, 41 (expressly limiting each

7    invocation of the doctrine of equivalents to the "limitation 'vaporized, ionized and atomized'" and

8    incorporating "previously-articulated doctrine of equivalents disclosure for the related 'vaporizing,

9    atomizing, and ionizing' in Claim 1 as if fully set forth herein"); Gooch Decl., Ex. 8 [Amended

10   Infringement Contentions Appendix C ('698 patent)] at 18, 20, 24 (same). Fluidigm **did *not***

11   articulate a DOE theory for the other claim limitation. Gooch Decl., Exs. 7-8.

12         **3.      Dr. Hieftje's Analysis Includes DOE Opinions Beyond Those Disclosed**

13         Fast-forward to July 27, 2020 when Fluidigm served its burden of proof expert report for the

14   showdown proceedings. *See supra* n.1. In that report, Dr. Hieftje purports to opine on literal and

15   DOE infringement for each limitation of the showdown claims. As noted, *see supra* n.2, IONpath

16   has no timeliness objection to Dr. Hieftje's DOE opinions for the "vaporize, atomize, ionize" claim

17   limitations. Nor does IONpath object to Dr. Hieftje elaborating on, explaining, and providing

18   additional evidence in support of the DOE ***theory*** expressed in Fluidigm's Supplemental Invalidity

19   Contentions for the "vaporize, atomize, ionize" claim limitations. But Dr. Hiefje's opinions go far

20   beyond that.

21         ***First***, in each of Paragraphs 69, 82, 125 and 137, Dr. Hieftje opines on DOE for claim

22   limitations for which no DOE theory was disclosed in Fluidigm's operative infringement

23   contentions.

24         Paragraphs 57-70 address the preamble of claim 1 of the '386 patent: "A method of

25   sequentially analyzing single cells by mass spectrometry, comprising." After his literal infringement

26   analysis, Dr. Hieftje opines at **Paragraph 69**:

27

28

6

> 69.    If the Court were to find that the IONpath MIBI System does not literally meet this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it performs substantially the same function (sequentially analyzing cells), in substantially the same way (by generating ionized atomic components and analyzing said components via mass spectrometry), and to substantially the same result (in order to detect metal tags affixed to antibodies indicating the presence of analytes of interest) as described in the '386 Patent.

See Gooch Decl., Ex. 1, ¶ 69. However, Fluidigm's operative (amended) infringement contentions addressing the same limitation offer no DOE theory at all. See Gooch Decl., Ex. 7 at 1-3.

Paragraphs 71-83 address the "providing a sample containing a plurality of tagged cells tagged with a plurality of tagged antibodies, wherein each of the tagged antibodies is specific for a different analyte, and wherein each of the tagged antibodies is tagged with an elemental tag comprising a lanthanide or noble metal" limitation. Again, after his literal infringement analysis, Dr. Hieftje opines at **Paragraph 82**:

> 82.    If the Court were to find that the IONpath MIBI System does not literally meet this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it performs substantially the same function (creating a plurality of cells tagged with antibodies bearing distinguishable metal tags), in substantially the same way (by tagging antibodies specific to analytes of interest with distinguishable tags and staining samples of interest with said antibodies), and to substantially the same result (affixing metal tags (via the antibodies) to those cells containing analytes of interest) as described in the '386 Patent.

Gooch Decl., Ex. 1, ¶ 82. Again, Fluidigm's operative (amended) infringement contentions addressing the same limitation offer no such theory at all. See Gooch Decl., Ex. 7 at 3-13.

**Paragraph 125** sets forth a DOE theory for the "detecting, using mass spectrometry, the elemental composition of the first cell by detecting a transient signal of the multiple vaporized, atomized, and ionized elemental tags of the first cell" limitation:

7

1

2

> 125.    If the Court were to find that the IONpath MIBI System does not literally meet
> this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it
> performs substantially the same function (detecting signals from ionized metal tags), in
> substantially the same way (by generating ionized atomic components and detecting the presence
> of specific elements in said components via mass spectrometry), and to substantially the same
> result (in order to determine the presence of analytes of interest in specific cells) as described in
> the '386 Patent.

8   Gooch Decl., Ex. 1, ¶ 125. Here, Fluidigm's operative infringement contentions do invoke DOE.

9   *See* Gooch Decl., Ex. 7 at 20-24. But the operative contentions expressly limit that theory to the

10   "vaporize, atomize, ionize" equivalents contention. Dr. Hieftje's report expresses new DOE theories

11   relating to the other limitations in the claim, providing a function-way-result analysis for "detecting

12   signals from ionized metal tags" (which happens after the sample is already vaporized, atomized,

13   ionized) to "determine the presence of analytes of interest in specific cells," and does not relate to

14   or even mention the vaporize, atomize, ionize aspect of the claim for which Fluidigm disclosed a

15   DOE theory. *Id.*

16        Finally, **Paragraph 137** offers a DOE theory for the "detecting, using mass spectrometry,

17   the elemental composition of the second cell by detecting a transient signal of the multiple

18   vaporized, atomized, and ionized elemental tags of the second cell, wherein the transient signal

19   associated with the first cell and the transient signal associated with the second cell are detected

20   sequentially" limitation:

> 137.    If the Court were to find that the IONpath MIBI System does not literally meet
> this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it
> performs substantially the same function (sequentially detecting transient signals of ionized
> metal tags), in substantially the same way (by generating ionized atomic components from
> successive cells and detecting the presence of specific elements in said components via mass
> spectrometry), and to substantially the same result (in order to determine the presence of analytes
> of interest in or on specific cells) as described in the '386 Patent.

28   Gooch Decl., Ex. 1, ¶ 137. Here again, Fluidigm's operative infringement contentions do invoke the

8

DEF'S MOT TO STRIKE UNDISCLOSED THEORIES IN
EXPERT REPORT OF GARY HIEFTJE, PhD

1   DOE. *See* Gooch Decl., Ex. 7 at 30-34. But again, the operative contentions expressly limit that

2   theory to the "vaporize, atomize, ionize" equivalents contention, whereas Dr. Hieftje's report

3   expresses new DOE theories relating to the other terms in the claim phrase. *Id.*

4           ***Second***, even beyond these specific paragraphs, Dr. Hieftje also relies on DOE to generally

5   opine that the IONpath MIBI System infringes the '386 and '698 patent in his summary paragraphs

6   for each limitation: **Paragraphs 70, 126, 138, 149, 153, 194, and 204** (asserting that the limitation

7   is met "either literally or under the doctrine of equivalents").

8           **4.      Fluidigm Refused To Withdraw The Undisclosed Contentions**

9           Less than 48 hours after Fluidigm served Dr. Hieftje's report, IONpath contacted Fluidigm

10  to identify the specific paragraphs described above as presenting undisclosed theories, and to request

11  that Fluidigm withdraw those paragraphs so that IONpath would not need to take the Court's time

12  with motion practice or incur the associated burden and expense. Gooch Decl., Ex. 9 [Email Mehta

13  to Marshall, July 29, 2020]. Fluidigm flatly refused. Gooch Decl., Ex. 10 [Email Marshall to Mehta,

14  July 30, 2020]. Instead, Fluidigm argued that its extensive reliance on DOE theories was proper

15  based solely on the boilerplate reservations of rights in its infringement contentions:

16              But Fluidigm's Amended Infringement Contentions clearly state: "In
                the alternative, to the extent a limitation of the above-listed claims is
17              found not to be literally present in an Accused Products, Fluidigm
                contends that any differences are insubstantial and/or the Accused
18              Products perform substantially the same function, in substantially the
                same way, to obtain substantially the same result as the above-listed
19              elements and limitations in each of the Asserted Claims and, therefore,
                each and every limitation of the claims is present in the Accused
20              Products and infringed under the doctrine of equivalents. … Fluidigm
                further provides in the claim charts, set forth in Appendices A–C, where
21              each limitation of the Asserted Claims, alternatively, infringe under the
                doctrine if equivalents."; *see also* Amended Infringement Contentions
22              App'x A n.1 ("Additionally, to the extent IONpath alleges that any
                limitation of an asserted claim is not present literally in IONpath's
23              Accused Products, Fluidigm contends that the element is, at a minimum,
                present under the doctrine of equivalents as any alleged differences are
24              insubstantial and/or as IONpath's Accused Products and/or method(s)
25              used by those Accused Products perform substantially the same
                function, in substantially the same way, to achieve substantially the
26              same result as claimed."): App'x C n.1 (same).
27

28

1   *Id.* IONpath responded that Fluidigm's attempt to rely on "placeholder" language is inconsistent

2   with case law in this district that a DOE theory must be articulated with specificity (and that

3   Fluidigm has been on notice of that case law since February, when IONPath informed Fluidigm that

4   it must include specific DOE contentions and Fluidigm then elected to rely on DOE only for the

5   "vaporize, atomize, ionize" limitations). Gooch Decl., Ex. 9. Fluidigm had no response.

6         Instead, Fluidigm sought to back-track. When the parties conferred on August 3 (the date of

7   this filing), Fluidigm conceded that the DOE theories offered by Dr. Hieftje (other than that related

8   to the "vaporize, atomize, ionize" limitations) were undisclosed but belatedly argued that it was

9   entitled to assert them because they are supposedly responsive to IONpath's proposed claim

10  constructions. Gooch Decl., Ex. 14 [Email Mehta to Marshall, August 3, 2020]. Accordingly,

11  Fluidigm agreed that it would limit those undisclosed theories to assert DOE only under IONpath's

12  proposed constructions. *Id.* But that post-hoc agreement is inconsistent with what Dr. Hieftje's

13  report says and his analysis. Dr. Hieftje's DOE opinions expressly opine on DOE theories under

14  both sides' constructions, *see* Gooch Decl., Ex. 1, ¶¶ 70, 126, 138, 149, 153, 194, 204, and his

15  opinions do not address IONpath's claim constructions at all, *id.*, ¶¶ 69, 82, 125 and 137. Instead,

16  he concludes that, if IONpath is found not to literally infringe, the accused instrumentality performs

17  the same function, in the same way, with the same result as the claims. *Id.*

18        In any case, as explained below, even if Dr. Hieftje's new DOE theories had actually been

19  responsive to IONpath's proposed constructions (they are not), Dr. Hieftje's opinions would still be

20  improper because Fluidigm has had IONpath's proposed constructions since May 6 and failed to

21  diligently disclose and seek leave to amend its DOE theories in response.

22        **5.    Dr. Hieftje's Opinions On Doctrines of Equivalents Should Be Stricken**

23        Rule 3-1 not only requires that a patentee explain where each limitation is found, but "how

24  each limitation of each asserted claim is found within each accused instrumentality." Rule 3-1(c);

25  *See Xiaohua Huang v. Nephos Inc.*, No. C 18-06654 WHA, 2019 WL 5892988, at *3 (N.D. Cal.

26  Nov. 12, 2019) ("Patent Local Rule 3-1(c) requires [patentee] to identify specifically where and

27  how each limitation of each asserted claim is found within each Accused Instrumentality. To repeat,

28  that means that plaintiff must specifically tie the asserted claim language to some feature within the

1   accused product."); *see also*, *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946-JST, 2018 WL

2   4181906, at *2 (N.D. Cal. Aug. 31, 2018), enforcement granted, No. 17- CV-06946-JST, 2019 WL

3   7589210 (N.D. Cal. Feb. 5, 2019) (holding that the infringement contentions must include a

4   "narrative explanation of how the product group infringes"). As with literal infringement, patent

5   owners are required to detail theories as to how the accused products infringe under the doctrine of

6   equivalents ***on a limitation by limitation basis*** in their contentions. *See Comcast Cable Commc'ns,*

7   *LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017)

8   (determining that the patentee did not comply with Rule 3.1 because the infringement contentions

9   "provide[d] no explanation whatsoever as to how the accused products infringe under the doctrine

10  of equivalents even if they do not literally infringe.").

11       Here, there can be no credible dispute that Dr. Hieftje has impermissibly offered new DOE

12  infringement theories that were not disclosed at all, let alone with specificity, in Fluidigm's

13  infringement contentions. The Court should strike each new theory and hold Fluidigm to its

14  operative infringement contentions. *See BOT M8*, No. C 19-07027 WHA (N.D. Cal. June 10, 2020)

15  at 17 (Order re Summ. J.); *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561-WHA, 2011 WL

16  4479305, at *4 (N.D. Cal. Sept. 26, 2011) (granting defendant's motion to strike because plaintiff's

17  Infringement Contentions did not support its expert's infringement theory; plaintiff generally

18  identified the Android dx tool as the infringing feature in its contentions but did not explain how

19  the tool supposedly performed the claimed function until plaintiff's expert report, which specified

20  the precise means by which the function was allegedly performed within the dx tool process);

21  *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601 WHO, 2016 WL 3230696, at *7-*8 (N.D. Cal. June

22  13, 2016) (granting motion to strike because the infringement theory presented in plaintiff's expert

23  report was "not adequately disclosed," noting "this Court's infringement contention disclosure

24  requirements avoid implicit infringement theories by requiring express ones").

25       To the extent Fluidigm is asking the Court to permit amendment—or otherwise excuse

26  Fluidigm's failure—now, IONpath respectfully requests that the Court deny such relief. Fluidigm

27  cannot satisfy the basic requirements to support an amendment of its infringement contentions now:

28  (1) a showing of diligence in seeking to amend a party's contentions, and (2) the absence of

1    prejudice to the opposing party.

2        Fluidigm bears the burden of establishing diligence. *See O2 Micro*, 467 F.3d at 1366-68.

3    Fluidigm was on notice that it needed to offer DOE theories with specificity at least as early as

4    February 11, when IONpath directed Fluidigm to the relevant case law. Fluidigm showed that it

5    understood that requirement when it amended its contentions and disclosed one DOE theory. Basic

6    diligence would have required Fluidigm to have disclosed other DOE theories for other claim

7    limitations at the same time. There can be no credible excuse or justification for Fluidigm's failure

8    to do so. *See Apple Inc.*, 2013 WL 3246094, at *2 (denying leave to add DOE contentions because

9    "DOE contentions are not dependent on the opposing party's noninfringement theories").[5]

10       It is unsurprising then that, when IONpath raised this issue with Fluidigm before bringing

11   this motion, Fluidigm offered none. *See supra* Section II.B.4. Instead, Fluidigm sought to post-hoc

12   recharacterize its undisclosed theories as responsive to IONpath's proposed constructions. *Id.* That

13   argument is belied by the text of Dr. Hieftje's DOE opinions themselves and should be rejected on

14   that basis alone. *Id.* Indeed, for the same reasons that DOE contentions are not dependent on

15   noninfringement theories, they are not dependent on claim construction positions. In any case, even

16   if Fluidigm were somehow right that DOE theories that do not address, or even mention, claim

17   construction positions can somehow be responsive to them, it would not justify Fluidigm's belated

18   assertions of these DOE theories. Fluidigm has had IONpath's proposed constructions since May 6

19   and failed to diligently disclose and seek leave to amend its DOE theories in response. *See Apple*

20   *Inc.*, 2013 WL 3246094, at *3-4; *see also, e.g.*, *Cisco Sys., Inc. v. Teleconference Sys., LLC*, No.

21   09-cv-01550 JSW (NC), 2012 WL 9337627, *3 (N.D. Cal. June 11, 2012) (denying motion for leave

22   to amend infringement contentions after claim construction ruling adopting accused infringer's

23

24   _____

     [5]    In *Apple v. Samsung*, Magistrate Judge Grewal reasoned that the rules do not provide "that

25   [even] a party's failure to disclose noninfringement theories justifies amendment to include DOE
     theories." *Id.* Here, Fluidigm does not even have the theoretical excuse. Its new DOE theories could

26   not possibly have been triggered by any new non-infringement contention or theory from IONpath.
     Because Fluidigm did not serve any interrogatories or requests for admission in this case until June

27   30, IONpath's interrogatory responses relating to its non-infringement contentions were not even
     initially due until ***after*** the Hieftje Report was served.

28

arguments because the date patent owner received the proposed claim construction "marked the beginning of the relevant time period for evaluating [patent owner's] diligence because that is when [patent owner] first became aware of the risk that the district court could adopt that construction"); *Sunpower Corp. Sys. v. Sunlink Corp.*, No. 08-cv-02807 SBA, 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009) (denying motion to amend because a claim construction ruling "in and of itself does not constitute good cause" for allowing amendment; "risk of the construction rendered by the presiding judge was well known and anticipated by [movant]"). In fact, in the parties' meet and confer, Fluidigm did not even assert diligence. Instead, Fluidigm asserted "Fluidigm has no obligation under the Patent L.R. to seek leave to amend in response to IONpath's preliminary, proposed constructions." *See* Gooch Decl., Ex. 14 [Email Mehta to Marshall, August 3, 2020] (email from Mr. Williamson at 1:04 pm).

Because Fluidigm was not diligent, the Court need not reach the question of prejudice. But if it does, there can be no legitimate debate that there is prejudice here. IONpath's motion for summary judgment on the showdown claims is due on September 3—just **thirty-eight days** after the disclosure of these new theories. And IONpath's time for rebuttal expert opinion is even more compressed—IONpath and its expert now have to address multiple new DOE theories in the **fourteen days** the parties had allotted for rebuttal reports in advance of the showdown summary judgment proceeding (from opening reports on July 27 to rebuttal reports August 10). And that does not even cover the things that IONpath could have done differently if it had fair notice of these theories, including factoring Fluidigm's positions on insubstantial differences into its claim construction and invalidity disclosures, which have long since passed, or its invalidity expert report that was served the same day as the Hieftje Report.

*   *   *

Because they rely upon undisclosed DOE theories, the Court should strike Paragraphs 69, 82, 125 and 137 of the Hieftje Report in full and paragraphs 70, 126, 138, 149, 153, 194, and 204 in relevant part.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.   The Court Should Strike Opinions On Undisclosed Means-Plus-Function Infringement Theories**

**1.   Dr. Hieftje's Report Includes Means-Plus-Function and Structural Equivalents Opinions That Were Not Disclosed In Fluidigm's Infringement Contentions**

Neither Fluidigm's original nor amended (operative) infringement contentions included any infringement theory under Section 112(6). *See* Gooch Decl., Exs. 6-8. This lack of disclosure would not itself be a problem because Fluidigm appears to dispute that the "first device to . . ." and "second device to . . ." limitations are means-plus-function limitations. D.I. 86-1 at n.2 (contending these limitations are not governed by Section 112(6) but proposing in the alternative corresponding structure from the specification). In the normal course, the parties would duke it out in their respective claim construction and summary judgment, and the Court would decide whether Section 112(6) applies or not. And if Fluidigm were to prevail, it could of course continue to assert its infringement theories as disclosed in its contentions.

Except now, Fluidigm has sought to step outside the bounds of its infringement contentions. Paragraphs 158-179 and 195-202 of Dr. Hieftje's infringement report disclose, for the first time, page upon page of infringement analysis purporting to apply Section 112(6) to the "first device to . . ." and "second device to . . ." limitations, including lengthy opinions with respect to structural equivalents theories that were never disclosed. Gooch Decl., Ex. 1, ¶¶ 158-179 and 195-202. For example, as to the "first device to . . ." limitation, Dr. Hieftje notes "The structures that both parties agree are disclosed by the '698 patent include: 'a glow discharge, graphite furnace, capacitively coupled plasma device, or inductively coupled plasma (ICP) device,'" and goes on to devote pages to his opinion that "the differences between the structure of the glow discharge and an ion beam (as in SIMS) insubstantial." *Id.*, ¶¶ 169-172. The Court will search Fluidigm's infringement contentions in vain for any disclosure of any means-plus-function analysis, let alone a disclosure that Fluidigm's theory would be that the accused instrumentalities are structurally equivalent to a glow discharge device. *See* Gooch Decl., Exs. 6-8.

DEF'S MOT TO STRIKE UNDISCLOSED THEORIES IN EXPERT REPORT OF GARY HIEFTJE, PhD

2. **Fluidigm Has Known For Months That IONpath Is Asserting That The "First Device To . . ." And "Second Device To . . ." Limitations Are Means-Plus-Function Limitations**

Fluidigm has known since at least IONpath's original April 1, 2020 invalidity contentions and IONpath's April 15, 2020 Patent Local Rule 4-1 Disclosures that IONpath propose that the "first device to . . ." and "second device to . . ." limitations from the '698 patent are governed by Section 112(6). Gooch Decl., Ex. 11 [IONpath PLR 4-1 Disclosure] at 3; D.I. 92 at 4.

Fluidigm has known since at least IONpath's May 6, 2020 Patent Local Rule 4-2 Disclosures what corresponding structure IONpath is proposing for these limitations. Gooch Decl., Ex. 12 [IONpath PLR 4-2 Disclosure] at 8-11.

And Fluidigm has known for months that IONpath's position that these limitations should receive means-plus-function treatment would have an impact on the parties' contentions. After receiving IONpath's invalidity contentions on April 1, Fluidigm asserted that IONpath's invalidity contentions—which disclosed its contentions under Section 112(6) in detail—were insufficient and asked IONpath to amend its contentions to provide detail as to "the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function."[6] In so arguing Fluidigm *itself* asserted the importance of detailed Section 112(6) disclosures, claiming that Fluidigm's "ability to understand and address IONpath's invalidity arguments" and "assess IONpath's 35 U.S.C. § 112(6) arguments in connection with the disclosures required under Patent L.R. 4-2(b)" had been prejudiced and arguing that "[t]he Northern District of California's required, staged, disclosures were promulgated for a reason, to avoid the type of prejudice and gamesmanship IONpath is employing here." *See* Gooch Decl., Ex. 13 [Email Williamson to Furman, May 6, 2020]. Although IONpath explained (with case law support) why its contentions were sufficient under the Patent Local Rules, it nevertheless provided Fluidigm with amendments that added further detail to its Section 112(6) contentions for all of its asserted prior art and sought leave to amend its contentions with that information. Although Fluidigm initially refused to stipulate to the

---

[6] Because IONpath is asserting that these claims are means-plus-function, it was obligated to—and did—provide Section 112(6) contentions with its invalidity contentions pursuant to Patent Local Rule 3-3(c).

amendments, it ultimately did not oppose the motion and the Court granted leave to amend, reserving the question of whether Fluidigm should bear associated IONpath's fees and costs. *See* D.I. 92; D.I. 108.

Weeks and months have passed and the parties have continued with claim construction proceedings and fact and expert discovery relating to the upcoming showdown. Meanwhile, Fluidigm stayed silent on any infringement theory under Section 112(6) should the Court adopt IONpath's means-plus-function arguments—only breaking its silence with Dr. Hieftje's report.

### 3. Dr. Hieftje's Opinions on 112(f) and Structural Equivalents Should Be Stricken

As above, there can be no credible dispute that Dr. Hieftje has impermissibly offered new Section 112(6) infringement theories in Paragraphs 158-179 and 195-202 of his report. As above, the Court should strike each new theory and hold Fluidigm to its operative contentions. And as above, the Court should not permit amendment—or otherwise excuse Fluidigm's failure—now.

Fluidigm has been on notice of IONpath's means-plus-function contentions since at least April. And Fluidigm showed that it understood the importance of corresponding structure contentions when it insisted that IONpath amend its contentions to provide even further detail as to corresponding structure in its invalidity contentions. Basic diligence would have required Fluidigm to have disclosed its own means-plus-function infringement theories if it wished to rely on them in the event IONpath succeeds on claim construction. *See, e.g.*, *Apple Inc.*, 2013 WL 3246094, at *4 ("Concern over the possibility of a loss at claim construction does not amount to good cause."); *Cisco Sys.*, 2012 WL 9337627, at *3 (date patent owner received the proposed claim construction "marked the beginning of the relevant time period for evaluating [patent owner's] diligence because that is when [patent owner] first became aware of the risk that the district court could adopt that construction"); *Sunpower*, 2009 WL 1657987, at *1 ("risk of the construction rendered by the presiding judge was well known and anticipated by [movant]").

Because Fluidigm was not diligent, the Court need not even reach the question of prejudice. But if it does, there can be no legitimate debate that there is prejudice here for the same reasons that IONpath is prejudiced by Fluidigm's new DOE theories. *See* Section II.B.5 *supra*.

16

1                                      *     *     *

2          Because they rely upon an undisclosed theory, Paragraphs 158-179 and 195-202 should be

3   stricken from Dr. Hieftje's expert report.

4   **III.    THE COURT SHOULD STRIKE DR. HIEFTJE'S CLAIM CONSTRUCTION**
          **OPINIONS**
5

6          Patent Local Rule 4-2 requires the parties to simultaneously exchange preliminary proposed

7   constructions of disputed claim terms, and to provide both intrinsic and extrinsic evidence as

8   support. *See* Patent L.R. 4-2(b). Parties must "provide a description of the substance of that witness'

9   proposed testimony that includes a listing of any opinions to be rendered in connection with claim

10  construction." *Id.* Patent Local Rule 4-3 requires the parties to jointly file a claim construction and

11  prehearing statement, and to disclose if "any party proposes to call one or more witnesses at the

12  Claim Construction Hearing, the identity of each such witness, and for each witness, a summary of

13  his or her testimony including, for any expert, each opinion to be offered related to claim

14  construction." *See* Patent L.R. 4-3(e).

15         In its Patent Local Rules 4-2 and 4-3 disclosures, Fluidigm identified four experts from

16  whom it anticipated testimony on claim construction: "Dr. Arash Zarrine-Afsar, Dr. Thomas Kelly,

17  Dr. Vladimir Baranov, and Dr. Dmitry Bandura." D.I. 86-1. With its opening brief, Fluidigm offered

18  an 87-page expert declaration on claim construction from one of the four, Dr. Kelly. D.I. 109-2.

19  IONpath does not object to the timeliness of that report. And if that were all Fluidigm had submitted,

20  we would not be here.

21         The problem is that Fluidigm has also sought to rely on the testimony of Dr. Hieftje—who

22  was not disclosed in any of Fluidigm's Patent Local Rule 4-2 or 4-3 Disclosures—on claim

23  construction. In **Paragraphs 67, 94-99, 102, 104, 122-123, 134-135, 174-176, 178, 187, 190,** and

24  **191** of his infringement report, Dr. Hieftje repeatedly—and extensively—opines on matters of claim

25  construction. These are not opinions in which he *applies* one side's proposed claim construction or

26  the other's—there are a number of such paragraphs and IONpath is not seeking to strike those. These

27  are paragraphs in which Dr. Hieftje takes an affirmative position on what the meaning of the claim

28  limitation should be or how a person of ordinary skill in the art would interpret the claim, and

                                                   17

elaborates on interpretation of the claims for pages and pages with new analysis, and even new evidence, not included in Dr. Kelly's claim construction declaration or Fluidigm's Patent Local Rules disclosures. *See* Gooch Decl., Ex. 1, ¶¶ 67, 94-99, 102, 104, 122-123, 134-135, 174-176, 178, 187, 190, and 191.

IONpath raised these specific paragraphs with Fluidigm and asked Fluidigm to withdraw them before IONpath had to take the Court's time or spend its own time and money—right in the midst of claim construction briefing and showdown expert discovery—on unnecessary motion practice. Gooch Decl., Ex. 9. Fluidigm again declined. Gooch Decl., Ex. 10. Notably, it did not dispute that Dr. Hieftje was not disclosed as an expert on claim construction and had nonetheless opined on claim construction. *Id.* Instead, Fluidigm offered three responses: (1) that, in some places, Dr. Hieftje was explaining "how a POSIA would understand, interpret, and attempt to implement IONpath's proposed construction;" (2) that "Dr. Hieftje is simply agreeing with Dr. Kelly's opinion on the appropriate constructions" and that they are "redundant;" and (3) "IONpath cannot claim any prejudice as this predicate is entirely consistent with Dr. Kelly's opinions" because "IONpath will also have the opportunity to depose Dr. Hieftje (and Dr. Kelly) and will be free to explore these issues." *Id.*; *see also* Gooch Decl., Ex. 14 [Email Mehta to Marshall, August 3, 2020]. Each fails.

***First***, the argument that Dr. Hieftje was explaining "how a POSIA would understand, interpret, and attempt to implement IONpath's proposed construction" is contradicted by the text his report. The challenged paragraphs do not apply IONpath's proposed constructions—they repeatedly offer affirmative opinions on how the claims would be read by a person of ordinary skill in the art, and ***directly challenge*** IONpath's proposed constructions. For example:

> 99.    IONpath's proposed construction would exclude glow discharge devices. But the '386 Patent explicitly discloses glow discharge devices as suitable devices "to vaporize, atomize and excite or ionize the particle or the elemental tag associated with the particle." '386 Patent 13:2-6. This supports my view, consistent with the opinion of Dr. Kelly, that IONpath's proposed construction is improperly narrow and ignores the specification of the Patents.

DEF'S MOT TO STRIKE UNDISCLOSED THEORIES IN EXPERT REPORT OF GARY HIEFTJE, PhD

123.    Furthermore, IONpath appears to propose in connection with this limitation that the phrase "elemental composition" be construed to mean "the elements that make up the first cell." In my opinion, this construction is in conflict with both Claim 1 and the specification of the '386 Patent. As I previously noted, the specification of the '386 Patent uses the term "elemental composition" to refer to elemental tags or labels, not the entire composition of an entire cell. *See* '386 Patent, 29:1-5 ("The beads are distinguished by their elemental composition, which might be a surface element label, and (*sic*) encapsulated element label or an element label incorporated within the bead material."). Again, if IONpath is attempting to argue that "detecting ... the elemental composition of the first cell by detecting a transient signal of the multiple vaporized, atomized, and ionized elemental tags of the first cell" requires determining the complete elemental composition of the entire cell, I disagree and believe the stated task to be impossible even with modern technology.

94.    I agree with Dr. Kelly that this construction is overly narrow and does not comport with the claims and description of the invention in the specification of the '386 Patent.

95.    To a POSIA at the time, vaporization would simply refer to the act of converting a substance into vapor. It would be synonymous with volatilization. Bartlett's Roget's Thesaurus (1st Ed. 1996). And a POSIA, as described by Dr. Kelly, would not understand vaporization/volatilization to require heat. Instead, as understood by POSIA, vaporization could be accomplished in a variety of ways including, by way of example, laser ablation, acoustic ablation, inductively coupled plasma, electrospray ionization, a graphite furnace, glow discharge, or through the use of an ion beam. *See, e.g.*, Kelly Rep. ¶¶ 64, 66; Stanislav S. Rubakhin &

*See, e.g.*, Gooch Decl., Ex. 1, ¶¶ 94-95, 99, 123.[7]

**Second**, Fluidigm's assertion that "Dr. Hieftje is simply agreeing with Dr. Kelly's opinion

---

[7]    Fluidigm does not seem to disagree. For example, when pressed on Paragraph 123, Fluidigm stated that it was willing to withdraw the headline sentence "In my opinion, this construction is in conflict with both Claim 1 and the specification of the '386 patent," but not the remainder of the paragraph with the supporting analysis in which Dr. Hieftje purports to explain not how he would map the accused instrumentalities to the claims under IONpath's construction (which would be permissible) but instead why he disagrees with IONpath's construction. Gooch Decl., Ex. 14 [Email Mehta to Marshall, August 3, 2020]. And when asked what portions of the other challenged paragraphs it claimed were *applying* proposed claim constructions as opposed to opining that a construction is right or wrong, Fluidigm was unable or unwilling to answer. *Id.*

on the appropriate constructions" and that his opinions are "redundant" is too clever by half. Although Dr. Hieftje does agree with Dr. Kelly repeatedly (it would be surprising indeed if he did not), his opinions extend far beyond that. He says so himself. Throughout his report, Dr. Hieftje says he agrees with Dr. Kelly or that his views are "consistent" with Dr. Kelly's opinions, but then goes on for sentences, and often paragraphs, offering additional opinions on claim construction. If he were simply agreeing with Dr. Kelly, he would have simply done so. And, if in fact, Fluidigm were right that his opinions are merely cumulative of Dr. Kelly's, there would be no reason to have offered them and no reason not to withdraw them. In any case, even if Dr. Hieftje's claim construction opinions are "redundant," they would still be untimely and improper. A party cannot excuse an untimely (undisclosed) expert opinion on claim construction by couching it as "agreeing" with a timely one, especially where claim construction and noninfringement issues will be briefed and resolved together at the showdown.

   **Third**, Fluidigm's suggestion that depositions of Dr. Kelly and Dr. Hieftje will cure any prejudice here must be rejected. A deposition cannot mitigate the prejudice because IONpath did not receive Dr. Hieftje's declaration until eleven days after Fluidigm's claim construction brief and 87-page declaration from Dr. Kelly were due and filed (July 16, 2020), and just **three days before** IONpath's own claim construction brief and expert declaration were due and filed (July 30, 2020). And because it came well after Fluidigm's claim construction submissions were due, IONpath did not receive Dr. Hieftje's claim construction opinions until after IONpath had already served its own burden of proof report on invalidity on July 27. A *post hoc* deposition cannot cure the prejudice to IONpath from not having these additional claim construction opinions in hand before IONpath had to submit its own responsive claim construction briefing and expert opinions.

*   *   *

   The Court should strike Paragraphs 67, 94-99, 102, 104, 122-123, 134-135, 174-176, 178, 187, 190, and 191 from Dr. Hieftje's expert report because they include untimely and undisclosed opinions on claim construction from Dr. Hieftje.

## IV.   CONCLUSION

Fluidigm's attempt to introduce undisclosed infringement theories and claim construction expert evidence are inconsistent with the requirements of this Court's Patent Local Rules. IONpath respectfully requests that the Court strike the specific portions of Dr. Hieftje's report that opine on new infringement theories and on claim construction:

(1) Paragraphs 69, 82, 125 and 137 and the relevant portions of Paragraphs 70, 126, 138, 149, 153, 194, and 204, wherein Dr. Hieftje opines on theories of infringement under the doctrine of equivalents that exceed what was disclosed in Fluidigm's supplemental infringement contentions.

(3) Paragraphs 158-179 and 195-202 wherein Dr. Hieftje offers undisclosed opinions on infringement under Section 112(6) and structural equivalents.

(4) Paragraphs 67, 94-99, 102, 104, 122-123, 134-135, 174-176, 178, 187, 190, and 191 wherein Dr. Hieftje opines on matters of claim construction.

Dated: August 3, 2020

WILMER CUTLER PICKERING HALE AND DORR LLP

By:   /s/ Sonal N. Mehta
      SONAL N. MEHTA
      OMAR A. KHAN
      JOSEPH TAYLOR GOOCH
      JOSHUA D. FURMAN

*Attorneys for Defendant IONpath, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2020, a true and correct copy of the above and foregoing

Document has been served by electronic mail upon all counsel of record.

Dated: August 3, 2020

By: _/s/ Sonal N. Mehta_
SONAL N. MEHTA