K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
Nick E. Williamson (appearance *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO 63102
Telephone: (314) 259-2000
daroodman@bclplaw.com

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA INC., a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:19-cv-05639<br><br>**PLAINTIFFS FLUIDIGM CORPORATION AND FLUIDIGM CANADA, INC.'S RESPONSE IN OPPOSITON TO DEFENDANT IONPATH, INC.'S MOTION TO STRIKE** |

Fluidigm Corporation and Fluidigm Canada Inc. ("Fluidigm") hereby respectfully submit their Opposition to Defendant IONpath Inc.'s ("IONpath") Motion to Strike Undisclosed Theories in the Expert Report of Gary Hieftje, Ph.D. (ECF 114, "Motion"). The motion should be denied for the following reasons:

1. IONpath's request to strike Dr. Hieftje's opinion on the literal infringement theory of structural equivalence under Section 112 ¶ 6 should be denied because Patent L.R. 3-1(c) does not require Fluidigm to disclose structure as Fluidigm does not contend that the applicable limitations are governed by Section 112 ¶ 6. Dr. Hieftje may opine on literal infringement under Section 112 ¶ 6 should the Court construe any limitations to be covered under 112 ¶ 6. Furthermore, Fluidigm clearly described in its contentions that portion, including the structure, of IONpath's MIBIscope that is covered by the limitations at issue.

2. IONpath's request to strike portions of Dr. Hieftje's report in which he articulates the claim construction positions of the parties should be denied as it is necessary and appropriate for Dr. Hieftje to articulate the claim constructions in order to apply them in his infringement analysis. That Dr. Hieftje noted, in doing so, his agreement with Dr. Kelly's claim construction opinions is immaterial because there is no daylight between the two (no new claim construction opinions were articulated by Dr. Hieftje). And, Fluidigm has offered to stipulate that it is not relying on Dr. Hieftje for purposes of claim construction.

3. Indeed, IONpath's expert, Dr. Winograd, has done precisely the same as Dr. Hieftje in extensively discussing the parties' respective claim constructions in tendering an expert report on non-infringement. *See* <u>Exhibit A</u>, Winograd Rep. at pages 13-15 (relying on prosecution history to construe the claims), page 60 (claim construction opinion of "sequentially analyzing single cells in a sample"), pages 62 and 66 (claim construction opinion of "detect … lanthanides"), page 77 (claim construction opinion of "vaporizing, atomizing, and ionizing), and page 90 (claim construction opinion). The fact is that it is nearly impossible to discuss

infringement opinions without describing the expert's understanding of the claim construction.

4. IONpath's request to strike portions of Dr. Hieftje's report on the doctrine of equivalents should be denied as these opinions are merely responsive to IONpath's own claim constructions.  Each and every one of Dr. Hieftje's challenged assessments is responsive to IONpath's arguments and was diligently disclosed.  Moreover, Dr. Hieftje's report is appropriate and sufficient to create a material issue of fact on the doctrine of equivalents should the Court adopt IONpath's claim construction positions on one or more of the limitations at issue.  In such a case, Patent L.R. 3-6(a) expressly notes that good cause for amendment is met by "a claim construction by the Court different from that proposed by the party seeking amendment."  And prior to that time, it would be premature for Fluidigm to seek leave to amend its infringement contentions in advance of the Court's claim construction.  *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK-PSG, 2013 WL 3246094, at *4 (N.D. Cal. June 26, 2013).

In either case, Fluidigm respectfully suggests that the Court should take this Motion with the showdown summary judgment motions so that it can be considered in the full context of the parties' positions and the Court can give Dr. Hieftje's opinions the full weight that they deserve.

## I. There is No Basis to Strike Dr. Hieftje's Opinions Regarding the Literal Infringement Theory of Structural Equivalents.

### A. The Patent Local Rules Do Not Require the Disclosure of Structural Equivalents under Section 112 ¶ 6.

IONpath has not identified any authority suggesting, much less requiring, that Fluidigm's initial infringement contentions must include the identification of corresponding structures in IONpath's accused products for terms and limitations that IONpath (not Fluidigm) asserts are subject to Section 112 ¶ 6.  The reason is clear: the Patent Local Rules do not require, and no authority imposes, any such a requirement on a plaintiff that does not contend that its asserted claims are subject to Section 112 ¶ 6.

1	The Patent Local Rules provide that a plaintiff is only required to identify corresponding structure in infringement contentions if that plaintiff maintains that Section 112 ¶ 6 applies. Patent L.R. 3-1(c) ("A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation **that such party contends is governed by 35 U.S.C. § 112(6)**, the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." (bold emphasis added)).

Fluidigm has consistently maintained that the limitations at issue are **<u>not</u>** governed by Section 112 ¶ 6, and the Court has not yet ruled on this issue. <u>Exhibit B</u>, Fluidigm's May 6, 2020 Patent Local Rule 4-2 Disclosures, Exh. B at 16-22 ("Fluidigm proposes that the phrase 'a first device' as used in this term should be given its plain and ordinary meaning."; "Section 112(6) is not applicable to this claim term."); (*see also* Fluidigm's Opening Claim Construction Brief, ECF 109 at 13-16 *and* Fluidigm's Reply Claim Construction Brief, ECF 118 at 11-13). Accordingly, under the Patent Local Rules, Fluidigm was not required to identify any corresponding structure under Section 112 ¶ 6 in its infringement contentions.

**B. Fluidigm's Infringement Contentions Describe the Structural Features of the MIBIscope that Correspond to the Elements that IONpath Contends are Subject to Section 112 ¶ 6.**

Moreover, notwithstanding the fact that Fluidigm was not required to identify corresponding structure under Section 112 ¶ 6, there can be no debate that Fluidigm fully identified how IONpath's Accused Instrumentalities meet each of the terms and limitations of the asserted claims. Fluidigm has consistently identified that IONpath's use of an ion beam in the MIBIscope Accused Instrumentalities meets the limitation of "a first device to vaporize, atomize, and ionize multiple elemental tags…," and that IONpath's use of a mass spectrometer meets the limitation of "a second device to detect, by mass spectrometry…" of Claim 6 of the '698 Patent. Despite the fact that Fluidigm had no obligation to identify any corresponding structure under Section 112 ¶ 6, Fluidigm nevertheless provided IONpath with detailed allegations as to how the

MIBIscope, including its structure, infringes upon the asserted claims. Any allegation of unfair surprise or prejudice by IONpath is baseless.

### C. Fluidigm's Claim Construction Disclosures Provided IONpath with Timely Notice that, if Section 112 ¶ 6 Applies, the Accused Instrumentalities Are Structural Equivalents.

IONpath has known for over three months – since May 6, 2020 – of Fluidigm's position regarding the disputed claim terms "a first device to vaporize, atomize, and ionize multiple elemental tags…" and "a second device to detect, by mass spectrometry …."[1] Fluidigm's May 6, 2020 Patent Local Rule 4-2 Disclosures expressly state: (i) Fluidigm's position that those limitations are not subject to Section 112 ¶ 6; and (ii) in the alternative, if Section 112 ¶ 6 is ultimately held to apply to either or both terms, IONpath's MIBIscope contains structures that are structural equivalents such that the accused MIBIscope literally infringes:

> "Fluidigm proposes that the phrase 'a first device' as used in this term should be given its plain and ordinary meaning. … Section 112(6) is not applicable to this claim term."
>
> \*   \*   \*
>
> "However, in the event the Court finds that Section 112(6) governs the construction of this term, … the specification supports that the structure, structures, and/or acts that correspond to the term, and their equivalents, include one or more of the following: glow discharge, graphite furnace, capacitively coupled plasma devices, inductively coupled plasma devices, other suitable devices, and equivalents thereof, including microwave induced plasma, DC-glow discharge, rf-glow discharge, spark source, laser ablation/ionization, **ion-beam (including, but not limited to, techniques that generate secondary ions using an ion beam),** electrospray, capacitive microwave plasma, and direct current

---

[1] Although the Patent Local Rules do not require the disclosure demanded by IONpath, Fluidigm was unquestionably diligent in responding to IONpath's April 2020 Section 112 ¶6 disclosures. *See* ECF 114 at 15.

5
PLAINTIFFS' RESPONSE IN OPPOSITION TO IONPATH'S MOTION TO STRIKE

plasma."

Exhibit B, Fluidigm's May 6, 2020 Patent L.R. 4-2 Disclosure, Exh. B at 16-17 (bold emphasis added), at 21 (like disclosure for the "a second device to detect, by mass spectrometry…" limitation, corresponding structure including "… simultaneous or sequential mass analyzers…").

IONpath cannot credibly claim that either Fluidigm's structural equivalence position was not disclosed, or that IONpath did not understand Fluidigm's position. On August 3, 2020 – the same day that IONpath filed the present Motion – it also served interrogatory responses on Fluidigm that directly addresses Fluidigm's allegation that IONpath's use of an ion beam and mass spectrometer meet the claims' limitations and comprise structural equivalents. Exhibit C, August 3, 2020 IONpath Interrogatory Responses, Response to Interrogatory No. 2 at 44 ("This claim limitation is also not met when properly applied under 35 U.S.C. § 112 ¶ 6, because the MIBIscope has no structure that corresponds to the corresponding structure described in the specification of the '698 patent or equivalents. The specification identifies a glow discharge, graphite furnace, capacitively coupled plasma device, and an inductively coupled plasma device. The MIBIscope uses a secondary ion mass spectrometer, that does not have any of the enumerated structures. Further, the MIBIscope does not have any equivalent structures to the enumerated corresponding structures."). Indeed, IONpath's response directly addresses its knowledge of Fluidigm's contention that the '698 Patent's disclosure of a glow discharge device encompasses and is structurally equivalent to the SIMS device employed in IONpath's accused product (*id*. at 44-45) – and IONpath articulates its argument that "a SIMS device is not an 'equivalent structure.'" (*id*. at 45).

Weeks and months have passed since Fluidigm's May 6, 2020 disclosure and IONpath has raised no issue with the clear interrelationship of Fluidigm's literal infringement and claim construction positions. Instead, IONpath has engaged in discovery with full knowledge and understanding of Fluidigm's positions. The record suggests that IONpath waited until Fluidigm's independent expert tendered his report on infringement to allege feigned ignorance regarding Fluidigm's long-established positions to improperly seek to strike Fluidigm's expert's well-

reasoned analyses and opinions. In fact, Fluidigm has complied with the Patent Local Rule in every respect.

### D. Fluidigm's Literal Infringement Theory Has Not Changed.

Importantly, Fluidigm's literal infringement theory has not changed, the only operative difference is whether two limitations of one claim are subject to Section 112 ¶ 6 – an issue for claim construction.

As required by Patent L.R. 3-1(e), Fluidigm's Amended Infringement Contentions properly disclosed Fluidigm's position as to where and how the MIBIscope Accused Instrumentalities literally infringe. (ECF 114-7, Am. Inf. Cont. at 16 ("On information and belief, Fluidigm contends, at this time, that each and every element of the Asserted Claims listed in Section I-B., *supra,* is literally infringed by the Accused Products as described and set forth generally in Appendices A–C.")). Literal infringement of a claim term governed by Section 112 ¶ 6 occurs when there is either corresponding structure or a structural equivalent. *Gen. Protecht Grp., Inc. v. Int'l Trade Comm'n,* 619 F.3d 1303, 1312 (Fed. Cir. 2010) ("**Literal infringement** of a means-plus-function limitation requires that the relevant structure in the accused device … be identical **or equivalent to the corresponding structure** in the specification.") (bold emphasis added) (internal quotation marks and citation omitted). Although both "structural equivalents" and "doctrine of equivalents" use a common term, the former concerns literal infringement and the latter does not.

And, under Fluidigm's disclosed literal infringement theory, claim construction is the vehicle for determining whether the two limitations are subject to Section 112 ¶ 6. The Court's Patent Local Rules properly contemplate that the scope of structural equivalents is a matter of claim construction, separate and apart from infringement. Patent L.R. 4-2(a) ("Each such 'Preliminary Claim Construction' shall also, for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's function.").

Fluidigm respectfully submits that Dr. Hieftje's analyses and opinions in paragraphs 158-179 and 195-202 of his independent expert report on infringement reflect Dr. Hieftje's

understanding of the parties' claim construction positions and apply that understanding to his literal infringement analysis of the asserted showdown claims of the '698 Patent.[2] For example, Paragraph 163 states:

> "163. IONpath's MIBI System includes the MIBIscope, 'a dynamic secondary ion mass spectrometer (SIMS),' which utilizes a 'primary ion beam … [to] liberat[e] secondary ions.' IONpath LI Paper at 1114. Such an ion beam is one of the structures listed by Fluidigm in their proposed structure list."

(ECF 114-2, Dr. Hieftje Report at 63).

And, IONpath cannot identify any alleged prejudice associated with Fluidigm continuing to take the same and consistent literal infringement position and Dr. Hieftje analyzing and opining on facts and issues under that theory. *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK-PSG, 2013 WL 3246094, at *7 (N.D. Cal. June 26, 2013) (Finding no prejudice and permitting structural equivalence argument where the plaintiff "alleges nothing more than that the components it previously identified … still infringe under equivalence theories…."). The Accused Instrumentalities have not changed; the literal infringement theory has not changed; there is no prejudice. Limited fact discovery has occurred (*e.g.*, no depositions have been taken), and IONpath has a full and fair opportunity to serve a rebuttal expert report (which it did, yesterday) and cross-examine Dr. Hieftje regarding his literal infringement analyses and opinions.

## II. Dr. Hieftje Will Not Offer Claim Construction Opinions.

IONpath seeks to exclude various paragraphs from Dr. Hieftje's expert report, some in which he describes and agrees with the claim construction opinions of Fluidigm's claim construction expert, Dr. Kelly, and others where he attempts to apply IONpath's proposed constructions, on the grounds that they allegedly represent improper claim construction opinions. But IONpath's objections ignore the fact that Fluidigm confirmed that it will not use Dr. Hieftje's report for claim construction and that Dr. Hieftje's articulation of the claim construction positions

---

[2] Had Dr. Hieftje not documented his understanding of the parties' claim construction positions, and simply addressed literal infringement absent any context, IONpath surely would have complained that his analysis and opinions lacked foundation.

was performed in the context of his assessment and analysis of providing an infringement opinion. Further, there is no prejudice to IONpath since Fluidigm has stated that it will not offer Dr. Hieftje's report for purposes of claim construction. Moreover, should the Court, *arguendo,* elect to strike portions of Dr. Hieftje's report, his opinions will be oddly separated from the claim constructions that he must apply for infringement purposes.

### A. Fluidigm Offered to, and Will, Stipulate that Dr. Hieftje Will Not Opine on Claim Construction.

As an initial matter, IONpath fails to disclose that during the parties meet-and-confer, Fluidigm offered to stipulate that (contrary to IONpath's allegation in the instant Motion) that it will not rely on Dr. Hieftje to support its claim construction positions and it has no intention to do so. This alone should have resolved the issue in its entirety, but instead IONpath now asserts some undefined prejudice it may allegedly suffer because "claim construction and noninfringement issues will be briefed and resolved together at the showdown."

### B. Dr. Hieftje's Report Is Consistent with and References Dr. Kelly's Claim Construction Opinions; He Will Not Separately Opine on Claim Construction.

In addition to IONpath's refusal of a simple resolution to the parties' dispute, IONpath also overstates the quantity and nature of Dr. Hieftje's challenged opinions. While some of the paragraphs in Dr. Hieftje's opinion do discuss the construction of certain claim terms, such discussion is only done in the context of Dr. Hieftje opining on infringement. Such discussions are not the provision of new claim construction opinions and are entirely proper within the scope of an infringement opinion. Dr. Hieftje must articulate, discuss, and explain the various claim constructions in order to apply them in his infringement analysis. IONpath's hyperbolic claim that Dr. Hieftje's report contains "pages and pages" of new claim construction opinions is false and not borne out by the report itself.

The twenty paragraphs IONpath challenges can be divided into three categories.

First, there are ten paragraphs in Dr. Hieftje's opinion in which he discusses and agrees with Dr. Kelly's claim construction opinions regarding the meaning of "vaporization, atomization, and ionization" and related limitations. (*See* ECF 114-2, Hieftje Rep. ¶¶94-99, 174-

9
PLAINTIFFS' RESPONSE IN OPPOSITION TO IONPATH'S MOTION TO STRIKE

176, 178).[3] Importantly, Dr. Hieftje's comments on these issues do not raise anything new and can be of no surprise to IONpath – rather, they principally comment on Dr. Hieftje's agreement with, and cite to Dr. Kelly's claim construction opinions and the materials cited in Dr. Kelly's report. Of course, the fact that Dr. Hieftje agrees with Dr. Kelly's opinion is immaterial and can be disregarded by the Court. In the end, it appears that IONpath is simply complaining that Dr. Hieftje should not have commented upon Dr. Kelly's or IONpath's claim constructions in rendering his infringement opinion. Of course, he must articulate the various claim constructions in order to apply them in his infringement analysis.

Second, there are eight paragraphs where Dr. Hieftje attempts to understand, interpret, and apply IONpath's proposed claim constructions. (*See* ECF 114-2, Hieftje Rep. ¶¶67, 122, 123 (which includes one line in which Dr. Hieftje provides a claim construction opinion and which IONpath admits Fluidigm already offered to withdraw; ECF 114, Mot. at 19 n.7), 134, 135, 187, 190, 191). While IONpath attempts to characterize such opinions as claim construction opinions, these paragraphs assume that IONpath's construction has been adopted. Dr. Hieftje's view as to how a POSIA would understand IONpath's ambiguous constructions is indisputably appropriate infringement analysis as an expert must compare "the claims as properly construed … to the accused device or process." *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1372 (Fed. Cir. 2006). Interpreting the construed claim is appropriate infringement analysis. *See Snellman v. Ricoh Co.*, 862 F.2d 283, 287 (Fed. Cir. 1988) ("Although claim interpretation is a question of law, expert testimony is admissible to explain the meaning of technical terms in the claims and to give an opinion on the ultimate question of infringement" (citations omitted)).

In many of these paragraphs, Dr. Hieftje also identifies a potential IONpath non-infringement argument and discusses why a POSIA would not read *IONpath's proposed claim construction* to support such an argument. (*See* ECF 114-2, Hieftje Rep. ¶67 ("To the extent IONpath may argue that the proposed limitation [*from IONpath's construction*] 'discerning elemental composition' is not met by analyzing liberated ions for the presence of elemental tags, I

---

[3] Fluidigm also observes that this first category contains three of the four examples provided by IONpath.

10
PLAINTIFFS' RESPONSE IN OPPOSITION TO IONPATH'S MOTION TO STRIKE

do not know what IONpath would then be referring to, nor would a POSIA at the time. If IONpath is attempting to argue that the limitation "analyzing single cells" requires a determination of the complete elemental composition of the cell, I do not read the '386 Patent to require such, it conflicts with the claim itself (which is directed to detecting and analyzing ionized elemental tags) and, indeed, it would be impractical or impossible even with modern technology."); *see also id.* ¶¶123, 134, 135, 187, 190, 191). But this analysis is substantively different than arguing that a construction is inappropriate; it assumes a construction already exists and interprets that construction (if possible) and evaluates arguments made in light of such construction, all of which are absolutely appropriate for an infringement expert.

Finally, there are two paragraphs where Dr. Hieftje references IONpath's construction but does not provide an opinion as to its appropriateness. (*See* ECF 114-2, Hieftje Rep. ¶102 (mentioning the apparent motivation for IONpath's construction, but making no statement about its appropriateness), ¶104 (observing a similarity between Fluidigm's and IONpath's proposed construction, implying a similar infringement analysis)). Dr. Hieftje is not offering a claim construction opinion merely by referring to a proposed claim construction.

Importantly, none of these paragraphs constitutes "new [claim construction] analysis" as suggested by IONpath. All are either consistent with or repeat Dr. Kelly's opinions or are not claim construction opinions.

Similarly, Dr. Hieftje's report does not contain substantial "new evidence." Following is a complete list of every reference cited in the disputed paragraphs: '386 Patent, '698 Patent, Kelly Report (ECF 109-2), Rubakhin (ECF 109-15, Ex. L to Kelly Rep.), McArthur (ECF 109-14, Ex. K to Kelly Rep.), Blades (ECF 109-9, Ex. F to Kelly Rep.), Bogaerts (ECF 109-10, Ex. G to Kelly Rep.), Bartlett's Roget's Thesaurus. With the exception of the thesaurus, every single other reference is either one of the patents-in-suit, Dr. Kelly's expert report, or one of the exhibits to the Kelly Report. Such evidence is not new nor should it be a surprise to or unexpected by IONpath.

Rather than wade through this issue in a vacuum, Fluidigm respectfully suggests that the Court could simply take this Motion with the showdown summary judgment briefs and determine what weight to give these aspects of Dr. Hieftje's report. Such a result would make sense,

particularly in light of the fact that there is nothing new in Dr. Hieftje's report with respect to claim construction and Fluidigm's offer to stipulate that it is not offering Dr. Hieftje for purposes of claim construction.

### C. Dr. Hieftje's Application of Dr. Kelly's Claim Construction Opinions Is Not Prejudicial, It is Necessary for His Infringement Analyses.

Lastly, IONpath's argument that it has somehow suffered prejudice as a result of Dr. Hieftje's opinions would be more reasonable if it could identify any *constructions* referred to in Dr. Hieftje's report that were not already disclosed in Dr. Kelly's expert report. Opinions, having already been disclosed, cannot cause prejudice when they are repeated. Three of the four examples IONpath cites are clearly duplicative of opinions already disclosed. (*See* ECF 114-2, Hieftje Rep. ¶94 ("I agree with Dr. Kelly that this construction is overly narrow and does not comport with the claims and description of the invention in the specification of the '386 Patent."), ¶95 (citing to ECF 109-2, Kelly Rep. ¶¶64, 66 and citing materials cited in Kelly Rep. ¶¶64-66), ¶99 ("This supports my view, consistent with the opinion of Dr. Kelly, that IONpath's proposed construction is improperly narrow….")). The fourth (¶123), as mentioned above, primarily contains non-claim construction opinions and Fluidigm has offered to withdraw the single line of claim construction opinion from it; and the substance of the paragraph is disclosed at Kelly Rep. ¶¶107-111 (ECF 109-2). Striking entire paragraphs would go well beyond alleviating any alleged prejudice and, instead, unduly prejudice Fluidigm. The fact is that Dr. Hieftje must describe his understanding of IONpath's claim construction in order to apply them in his infringement analysis.

### III. Dr. Hieftje's Doctrine of Equivalents Analyses Are Entirely Appropriate, Particularly Given the Accelerated Showdown Process.

#### A. Fluidigm Was Diligent in Disclosing Its Doctrine of Equivalents Theories in Response to IONpath's Final Proposed Claim Constructions.

Each and every challenged doctrine of equivalents position is one raised solely in response to IONpath's proposed claim constructions. Accordingly, IONpath cannot credibly argue that Fluidigm, somehow, should have disclosed these theories in February 2020 (in

connection with its original Infringement Contentions and Amended Infringement Contentions). IONpath did not even disclose its proposed terms for construction until April 15, 2020 (ECF 114-12) and did not disclose what it captioned as its "*preliminary* claim constructions" until May 6, 2020 (ECF 114-13).  In short, Fluidigm did not first learn of IONpath's "*preliminary* claim constructions" until about three months after it served its infringement contentions.

Thereafter, the parties properly met and conferred fully and in good faith as required by the Patent Local Rules in order to narrow issues or resolve differences.  Patent L.R. 4.1(b) ("The parties shall thereafter meet and confer for the purposes of limiting the terms in dispute by narrowing or resolving differences…");  Patent L.R. 4.2(c) ("The parties shall thereafter meet and confer for the purposes of narrowing the issues…").  That process necessarily contemplates, and encourages, the parties to amend their proposed construction for the purpose of "narrowing or resolving differences."  As part of that process the parties reached agreements on several terms (*see* ECF 86 at 2) and discussed proposed amendments to others.  That process culminated with the parties' filing of the Joint Claim Construction and Prehearing Statement on June 1, 2020 (ECF 86), just 45 calendar days before Fluidigm's opening claim construction brief (Patent L.R. 4-5(a); ECF 109).  And, pursuant to the parties' agreed-to schedule, Dr. Hieftje tendered his report a mere eleven days after Fluidigm filed its opening claim construction brief (ECF 114-2; ECF 86 at 5).

Fluidigm was unquestionably diligent in disclosing its responsive doctrine of equivalents theories, pursuant to the parties' agreed-to timeframe for expert disclosures in the showdown process, and less than two months after their claim construction positions were crystallized in the Joint Claim Construction and Prehearing Statement.[4]  *See, e.g., Radware Ltd. v. F5 Networks, Inc.*, 2014 WL 3728482, at *2 (N.D. Cal. 2014) (disclosure three months after claim construction was reasonable); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2011 WL 940263, at *3

---

[4]  Fluidigm has responded to IONpath's inaccurate and incomplete presentation of the procedural history and the parties' disclosures, as they illustrate both Fluidigm's diligence and the lack of prejudice to IONpath.  IONpath has also made an inaccurate and incomplete presentation of Fluidigm's conduct regarding the doctrine of equivalents issues, and Fluidigm has elected to not respond to those mischaracterizations here in favor of the actual facts and issues in dispute.  The parties' respective communications, and IONpath's tactics, speak for themselves.

(N.D. Cal. Feb. 18, 2011) (disclosing four months after deposition did not show a lack of diligence).

### B. Dr. Hieftje Opines on DOE in the Context of Only IONpath's Constructions.

IONpath's "snippets" of specific paragraphs from Dr. Hieftje's report are presented in the Motion without context or perspective. When properly considered in view of the adjacent paragraphs, it is clear that Dr. Hieftje opines on the doctrine of equivalents in the context of only IONpath's constructions. For example, IONpath's reproduction of only Paragraph 69 on page 10 of its Motion is misleading as it lacks the context of adjacent paragraphs. *See* Motion, ECF 114 at 10.

> 67. IONpath proposes that the phrase "sequentially analyzing single cells" be construed to mean "individually discerning elemental composition on a cell-by-cell basis." As
>
> \*   \*   \*
>
> 68. Under IONpath's construction, properly interpreted to cover analyzing ionized elemental tags, IONpath's technology also meets this limitation. As demonstrated in the IONpath LI Paper, the MIBI System is capable of producing cell-segmented data wherein each pixel measurement taken by the MIBIscope corresponds to a single cell. IONpath LI Paper at 1114. Such data allow for the creation of cell-segmented images in which the elemental composition (i.e. presence of specific antigens or other biomarkers) can be determined on a cell-by-cell basis. *See* LI Paper Fig. 1.
>
> 69. If the Court were to find that the IONpath MIBI System does not literally meet this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it performs substantially the same function (sequentially analyzing cells), in substantially the same way (by generating ionized atomic components and analyzing said components via mass spectrometry), and to substantially the same result (in order to detect metal tags affixed to antibodies indicating the presence of analytes of interest) as described in the '386 Patent.
>
> 70. Under either proposed construction, as I understand them, it is my opinion that IONpath's MIBI technology performs a method of sequentially analyzing single cells by mass spectrometry, either literally or under the doctrine of equivalents.

(ECF 114-2, Hieftje Rep. at ¶¶67-70).

Paragraphs 67 and 68 address literal infringement "under IONpath's construction." In Paragraph 69, Dr. Hieftje continues his analysis "under IONpath's construction" (as indicated in

the immediately preceding paragraph) and addresses infringement under the doctrine of equivalents. And, in Paragraph 70, Dr. Hieftje concludes his analysis by referencing his opinions reached by applying both Fluidigm's construction (literal infringement, in Paragraph 66) and IONpath's construction (literal infringement and infringement under the doctrine of equivalents).[5]

This contextual structure holds true for all of Dr. Hieftje's appropriate doctrine of equivalents analyses and opinions now challenged by IONpath. That paragraphs 69, 82, 125 and 137 are directed solely to analyses under IONpath's proposed construction is shown by contextual paragraphs 68, 81, 121-124, and 133-136. Each of the other challenged paragraphs (¶¶70, 82, 125, 126, 137, 138, 149, 153, 194, and 204) simply includes the phrase "or under the doctrine of equivalents" which, likewise, applies only to Dr. Hieftje's consideration of IONpath's proposed constructions.

**C. The Patent Local Rules Permit a Later Amendment After Claim Construction.**

Patent L.R. 3-6(a) expressly notes that good cause for amendment is met by "a claim construction by the Court different from that proposed by the party seeking amendment." And, notwithstanding Fluidigm's appropriate and diligent disclosure in Dr. Hieftje's expert report, it would be premature for Fluidigm to seek leave to amend its infringement contentions in advance of the Court's claim construction. *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK-PSG, 2013 WL 3246094, at *4 (N.D. Cal. June 26, 2013) ("Concern over the possibility of a loss at claim construction does not amount to good cause. If and when Samsung faces an adverse construction, it may seek leave to amend in light of that adverse construction, at which point the court can consider whether its proposed amendments arise from a material difference in the claim construction and the prejudice, if any, Apple may suffer as a result. Samsung's request is premature."). *The fact is that Dr. Hieftje's opinion on doctrine of equivalence is clearly relevant in demonstrating a possible question of fact on DOE infringement should the Court adopt something other than Fluidigm's claim construction and permit leave to amend as permitted by*

---

[5] Paragraph 70 does not mean that Dr. Hieftje will opine on infringement under the doctrine of equivalents under Fluidigm's proposed construction. And Fluidigm does not intend to reply on it for such a purpose. This also holds true for the other challenged paragraphs (¶¶70, 82, 125, 126, 137, 138, 149, 153, 194, and 204) that reference "or under the doctrine of equivalents."

*Patent L.R. 3-6(a)*.

### D.  IONpath Has Not Been Prejudiced.

IONpath is not prejudiced by and cannot identify any alleged prejudice associated with Fluidigm continuing to take the same and consistent infringement position and Dr. Hieftje's analysis and opinions concerning infringement under IONpath's proposed constructions. IONpath has a full and fair opportunity to serve a rebuttal expert report (which it did, yesterday) and cross-examine Dr. Hieftje regarding his responsive doctrine of equivalents infringement analyses and opinions.

In February 2020, long before IONpath disclosed even its "*preliminary* claim constructions," Fluidigm put IONpath on notice that "to the extent IONpath alleges that any limitation of an asserted claim is not present literally in IONpath's Accused Products, Fluidigm contends that the element is, at a minimum, present under the doctrine of equivalents as any alleged differences are insubstantial and/or as IONpath's Accused Products and/or method(s) used by those Accused Products perform substantially the same function, in substantially the same way, to achieve substantially the same result as claimed." (ECF 114-4 at 1, ECF 114-5 at 1, ECF 114-8 at 1, ECF 114-9 at 1). IONpath has long been aware that Fluidigm would respond to IONpath's proposed constructions and agreed to the timing and disclosure of opening expert reports under the showdown process. (ECF 86 at 5). With that awareness, and Fluidigm's diligence in view of the deadlines under the Patent Local Rules, under the parties' agreement, and under the showdown process, IONpath has not been prejudiced.

Curiously, IONpath asserts that one of "the things that IONpath could have done differently" is "factoring Fluidigm's positions on insubstantial differences into its claim construction." (ECF 114 at 13). This position is not only illogical (claim construction is based upon the intrinsic record), but also fatally circular (Fluidigm is somehow supposed to foresee IONpath's constructions, articulate prospective and hypothetical doctrine of equivalents theories, and then IONpath would factor those theories into its actual constructions).  There is no prejudice.

**IV. Conclusion.**

Fluidigm Corporation and Fluidigm Canada Inc. respectfully maintain that the Expert Report of Gary Hieftje, Ph.D contains well-reasoned and timely-disclosed analyses and opinions. For at least the foregoing reasons, Fluidigm Corporation and Fluidigm Canada Inc. request that the Court deny IONpath Inc.'s Motion to Strike in-full.

Dated: August 11, 2020                               BRYAN CAVE LEIGHTON PAISNER LLP

By: */S/ Nick E. Williamson*
    Nick E. Williamson

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2020, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel

    */s/ Nick E. Williamson*
    Nick E. Williamson