WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
950 Page Mill Road
Palo Alto, California 94304
Telephone:   (650) 858-6000
Facsimile:   (650) 858-6100

OMAR A. KHAN (*pro hac vice*)
Omar.Khan@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:   (212) 230-8800
Facsimile:   (212) 230 8888

JOSEPH TAYLOR GOOCH (SBN 294282)
Taylor.Gooch@wilmerhale.com
JOSHUA D. FURMAN (SBN 312641)
Josh.Furman@wilmerhale.com
1 Front Street, Suite 3500
San Francisco, California 94111
Telephone:   (628) 235-1000
Facsimile:   (628) 235-1001

*Attorneys for Defendant*
IONpath, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, A DELAWARE CORPORATION; AND FLUIDIGM CANADA INC., A FOREIGN CORPORATION,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>IONPATH, INC., A DELAWARE CORPORATION,<br><br>　　　　　　　　　Defendant. | Case No. 3:19-cv-05639-WHA<br><br>**DEFENDANT IONPATH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EXPERT DECLARATION IN VIEW OF UNDISCLOSED CONTENTIONS**<br><br>Date:　August 19, 2020<br>Time:　8:00 a.m.<br>Ctrm.:　12<br>Judge:　Hon. William Alsup |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. THE COURT SHOULD STRIKE UNDISCLOSED INFRINGEMENT THEORIES.............1

    A. The Court Should Strike Dr. Hieftje's Undisclosed DOE Theories ..............................1

        1. Fluidigm Cannot Amend Its Contentions By Expert Report ............................2

            a) The DOE Theories Are Not Based on IONpath's Constructions .....................................................................................2

            b) Fluidigm Has Not Been Diligent .........................................................4

            c) Fluidigm's Reliance on Patent Local Rule 3-6(a) Is Misplaced ...........6

        2. IONpath Has Been Prejudiced ........................................................................8

    B. The Court Should Strike Fluidigm's Means-Plus-Function Theories ..........................9

        1. Fluidigm's Section 112(f) Infringement Theories Are Untimely .....................9

    C. The Court Should Strike Dr. Hieftje's Claim Construction Opinions .........................13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
    No. C 12-0630 LHK (PSG), 2013 WL 3246094 (N.D. Cal. June 26, 2013)...................3, 7

*BOT M8 v. Sony Corp. of Am.*,
    No. C 19-07027 WHA (N.D. Cal. June 10, 2020).............................................................1

*Cisco Sys., Inc. v. Teleconference Sys., LLC*,
    No. 09-cv-01550 JSW (NC), 2012 WL 9337627 (N.D. Cal. June 11, 2012).................4, 8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006).....................................................................................1, 7

*Oracle Am., Inc. v. Google, Inc.*,
    No. C 10-03561-WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ............................1

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
    599 F.3d 1308 (Fed. Cir. 2010)........................................................................................12

*Radware Ltd. v. F5 Networks, Inc.*,
    No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014) ...........................5, 6

*Sunpower Corp. Sys. v. Sunlink Corp.*,
    No. 08-cv-02807 SBA, 2009 WL 1657987 (N.D. Cal. June 12, 2009).............................4

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-05601 WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016) ...........................2

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
    No. C09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011).................5, 6, 11

*Verinata Health, Inc. v. Sequenom, Inc.*,
    No. C 12-00865 SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014).......................................5

*Via Techs., Inc. v. ASUS Computer Int'l*,
    No. 14-cv-03586-BLF (HRL), 2017 WL 396172 (N.D. Cal. Jan. 30, 2017) ....................11

*Word to Info Inc. v. Facebook Inc.*,
    No. 15-cv-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) ........................5, 6

**STATUTES, RULES, AND REGULATIONS**

35 U.S.C. § 112(6) ................................................................................................9, 10, 11, 12

Patent L.R. 3-6 .................................................................................................................6, 7, 8

Patent L.R. 4-2 ....................................................................................................................4, 11

## I. INTRODUCTION

The Patent Local Rules define the basic rules of engagement for parties in patent litigation in this district. Because they are intended to crystallize the parties' disputes early to avoid 'shifting sands,' the Patent Local Rules "requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006). This framework is important in every patent case, but especially critical in this Court's 'showdown' proceeding. Unable or unwilling to live by these rules, Fluidigm's Opposition ("Opp.") asks this Court to excuse its failures to timely disclose infringement theories and claim construction expert evidence under the Patent Local Rules, and to instead bless an approach of 'amendment by expert report' that has been repeatedly rejected by this Court and many others in this district. Fluidigm has offered no cognizable justification or excuse for its failure to disclose its new theories in its operative infringement contentions or claim construction disclosures, and no creditable showing of good cause that would permit amendment. The challenged paragraphs for Dr. Hieftje's report should be stricken.

## II. THE COURT SHOULD STRIKE UNDISCLOSED INFRINGEMENT THEORIES

### A. The Court Should Strike Dr. Hieftje's Undisclosed DOE Theories

Fluidigm does not dispute that it had notice of IONpath's claim construction positions since May 6, 2020. Opp. at 13. Fluidigm also does not dispute that it had notice of case law from this Court that makes clear that a party must provide substantive DOE contentions on a limitation by limitation basis in its infringement contentions. *Id.* at 12-15. And Fluidigm does not dispute that its expert has offered DOE opinions outside its operative infringement contentions. *Id.* at 13. Instead, Fluidigm argues that it was diligent in disclosing its DOE theories for the first time in its July 27, 2020 burden of proof expert report because these theories are responsive to IONpath's claim construction positions. Opp. at 12, 13. Fluidigm's argument is too little, too late. Infringement contentions cannot be amended by expert report. *See* Mot. at 4 (citing *BOT M8 v. Sony Corp. of Am.*, No. C 19-07027 WHA (N.D. Cal. June 10, 2020); *Oracle Am., Inc. v. Google, Inc.*, No. C 10-

03561-WHA, 2011 WL 4479305, at *4 (N.D. Cal. Sept. 26, 2011); *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601 WHO, 2016 WL 3230696, at *7 (N.D. Cal. June 13, 2016)).[1] And even if they could, Fluidigm has not met the rigorous requirements established by this Court and in this district for amendment.

### 1. Fluidigm Cannot Amend Its Contentions By Expert Report

#### a) The DOE Theories Are Not Based on IONpath's Constructions

Fluidigm's lead argument—and the premise for its position on diligence—is that its new DOE theories are timely because "[e]ach and every challenged doctrine of equivalents position is one raised solely in response to IONpath's proposed claim constructions." Opp. at 12. Not so.

Fluidigm's own example—excerpted at Page 12 of its opposition—disproves its point. Fluidigm argues that "IONpath's reproduction of only Paragraph 69 on page 10 of its Motion is misleading as it lacks the context of adjacent paragraphs." Opp. at 12. Fluidigm notes that "Paragraphs 67 and 68 address literal infringement 'under IONpath's construction.'" *Id*. at 14. Fair enough. IONpath does not dispute that. But Fluidigm goes on to argue that "[i]n Paragraph 69, Dr. Hieftje continues his analysis 'under IONpath's construction' (as indicated in the immediately preceding paragraph) and addresses infringement under the doctrine of equivalents." *Id.* at 14-15. That is not what Dr. Hieftje's report says. On its face, Paragraph 69 is not limited to IONpath's proposed construction; in fact, it does not mention any of IONpath's proposed constructions or recite a single word from them. Instead, Dr. Hieftje asserts that the accused instrumentality perform substantially the same function, in the same way, with the same result *as the claim language*:

> 69. If the Court were to find that the IONpath MIBI System does not literally meet this limitation, it is my opinion that it would be covered under the doctrine of equivalents as it performs substantially the same function (sequentially analyzing cells), in substantially the same way (by generating ionized atomic components and analyzing said components via mass spectrometry), and to substantially the same result (in order to detect metal tags affixed to antibodies indicating the presence of analytes of interest) as described in the '386 Patent.

---

[1] Fluidigm does not even acknowledge, let alone address, any of these cases.

Nothing in this analysis suggests that Dr. Hieftje's opinion would only apply under one side's construction or the other. And the "context" that Fluidigm argues is critical, and that Fluidigm argues IONpath omitted, confirms this. While Fluidigm argues that "[i]n Paragraph 70, Dr. Hieftje concludes his analysis by referencing his opinions reached by applying both Fluidigm's construction (literal infringement, in Paragraph 66) and IONpath's construction (literal infringement and infringement under the doctrine of equivalents)," his report includes no such caveats. *Id.* at 15. Dr. Hieftje states expressly that he is opining on infringement under both parties' constructions:

> 70. Under either proposed construction, as I understand them, it is my opinion that IONpath's MIBI technology performs a method of sequentially analyzing single cells by mass spectrometry, either literally or under the doctrine of equivalents.

In other words, Dr. Hieftje makes clear that his opinions regarding DOE relate to **both** Fluidigm and IONpath's claim constructions, and not "solely in response to IONpath's proposed claim constructions" as Fluidigm now asserts. The same is true for each of the challenged DOE opinions: Paragraphs 69, 82, 125 and 137 (in full) and Paragraphs 70, 126, 138, 149, 153, 194, 204 (in relevant part). As Fluidigm acknowledges, the "contextual structure [of paragraphs 69-70] holds true for all" of Dr. Hieftje's DOE opinions. Opp. at 15; *see also* Mot. at 6-9.

In any case, even if the Court were to accept Fluidigm's position that it intends to rely on DOE only if the Court adopts IONpath's proposed constructions, Fluidigm still does not explain why its DOE theories were not disclosed earlier. For the same reasons that "DOE contentions are not dependent on the opposing party's noninfringement theories," *see Apple Inc. v. Samsung Elecs. Co.*, No. C 12-0630 LHK (PSG), 2013 WL 3246094, at *2 (N.D. Cal. June 26, 2013), Fluidigm's DOE contentions are not dependent on its opposing party's claim construction positions. One need look no further than Dr. Hieftje's DOE opinions for confirmation—they do not apply, address, or even allude to IONpath's proposed claim constructions. If Fluidigm intended to assert that the accused instrumentalities perform substantially the same function, in the same way with the same result **as the claims** (which is all Dr. Hieftje has done), there is simply no reason it could not have done so when it amended its contentions to disclose a DOE theory for the vaporize, ionize, atomize limitation (which IONpath has not sought to strike). *See* Mot. at 4-6.

### b) Fluidigm Has Not Been Diligent

Even if Fluidigm were somehow right that its DOE theories were "solely in response" to IONpath's claim construction positions (they are not), Fluidigm's attempt to amend its infringement contentions via expert report should nonetheless be rejected because Fluidigm was not diligent in disclosing its theories, let alone in seeking leave to amend to add them.

Fluidigm did not assert diligence during the parties' extended meet and confer in advance of this motion, arguing instead that it "has no obligation under the Patent L.R. to seek leave to amend in response to IONpath's preliminary proposed constructions." Mot. at 13. Apparently recognizing that it did in fact have such an obligation, Fluidigm now claims that it was diligent in asserting its new DOE theories because: (1) its diligence period should not run from IONpath's claim construction disclosure on May 6, 2020 because it was "captioned as its '*preliminary* claim constructions,'" but should instead run from the Parties' Joint Claim Construction and Prehearing Statement on June 1, 2020; and (2) its fifty-six day delay between June 1 to July 27 (the date on which the parties exchanged burden of proof expert reports) was "unquestionably diligent." Opp. at 13. Fluidigm's position is contrary to law and logic.

As a threshold matter, Fluidigm's position runs counter to the vast weight of authority in this district that find that the diligence clock runs from notice of a claim construction position even before it is adopted. *See* Mot. at 12-13 (citing, e.g., *Cisco Sys., Inc. v. Teleconference Sys., LLC*, No. 09-cv-01550 JSW (NC), 2012 WL 9337627, at *3 (N.D. Cal. June 11, 2012); *Sunpower Corp. Sys. v. Sunlink Corp.*, No. 08-cv-02807 SBA, 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009)).

Fluidigm does not confront, or even cite, these cases in its Opposition. Instead, Fluidigm argues that it did not have to be diligent in response to IONpath's May 6 proposed constructions because they were styled as "*preliminary*." Opp at. 13 (original emphasis). Of course, IONpath served "Preliminary Claim Constructions Pursuant To Patent L.R. 4-2"—the rule specifically contemplates "Exchange of **Preliminary** Claim Constructions and Extrinsic Evidence." Patent Local Rule 4-2.[2] But that does not change the fact that Fluidigm had notice of IONpath's proposed

---

[2] Emphasis added and internal citations omitted throughout unless otherwise noted.

constructions when they were served on May 6. *See, e.g.*, *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 789197, at *2 (N.D. Cal. Feb. 26, 2014) (noting that "Sequenom was given notice of these proposed constructions by at least October 26, 2012 ***when the parties exchanged their preliminary claim constructions***," and thus "was aware of the risk that the Court could adopt these constructions by October 2012"); *Word to Info Inc. v. Facebook Inc.*, No. 15-cv-03485-WHO, 2016 WL 6276956, at *6 (N.D. Cal. Oct. 27, 2016) (finding that plaintiffs' "obligation to diligently pursue amendment was triggered on March 18, 2016 ***when Facebook disclosed its proposed claim constructions***" pursuant to Patent Local Rule 4-2).

In any event, even if Fluidigm were right that the diligence period runs from the filing of the Joint Claim Construction and Prehearing Statement on June 1, Fluidigm's delay from June 1 to July 27 is unjustified and inexcusable especially in view of the showdown schedule. Although it asserts that it was "unquestionably" diligent, Fluidigm avoids the basic questions surrounding diligence. Why did Fluidigm wait from June 1 to July 27 to disclose its DOE theories? Why did Fluidigm need fifty-six days to come up with DOE contentions that simply assert that IONpath's accused instrumentalities perform substantially the same function, in substantially the same way with substantially the same result as the asserted claims? Why did Fluidigm even need IONpath's proposed constructions to offer these DOE theories? And knowing that IONpath was making important decisions about its case—including electing prior art on July 10 and serving its invalidity expert report on July 27—why didn't Fluidigm provide IONpath with notice that it intended to assert DOE at any point prior to the agreed-upon deadline for burden of proof reports?

Apparently unable to answer these questions, Fluidigm cites to *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-2024 RMW, 2014 WL 3728482 (N.D. Cal. July 28, 2014) and *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. C09–05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011), for the proposition that its "less than two month" delay must be okay because the period in question in those other cases was three- or four-months. Opp. at 13, 14. Neither supports Fluidigm here. In *Radware Ltd. v. F5 Networks, Inc.*, the parties had agreed to a schedule that included a final date by which the parties could amend their contentions and Radware's amended contentions were served on that date. *See Radware*, 2014 WL 3728482, at *2. Radware's

amendments were also either (1) responsive to an interrogatory response from the defendant regarding source code identifications, or (2) responsive to Court's adoption of claim construction positions that *neither* party had proposed. *Id*. at \*2, \*3. None of these facts exist here. Likewise, in *Vasudevan Software, Inc. v. International Business Machines Corp.*, the Court evaluated the specific facts of the case and determined patent owner VSi was diligent in seeking leave to amend to offer an alternative infringement theory where it (1) conducted a month-long investigation to confirm information that it learned in a deposition, (2) only learned of its alternative infringement theory through this investigation; and (3) within days of confirming the requisite facts, sent the defendant a draft of its proposed amended infringement contentions, which ultimately led to the motion to amend. *Vasudevan Software*, 2011 WL 940263, at \*2. Again, none of those facts exist here.

Ultimately, these cases confirm the common-sense principle that the diligence inquiry is not simply about counting days on a calendar as Fluidigm suggests, but about a party's diligence in view of the specific facts of a case. *See Word to Info*, 2016 WL 6276956, at \*6 ("Diligence is a fact intensive inquiry, and courts do not apply a mechanical rule in assessing a party's diligence but instead consider the factual circumstances in total."). Here, that inquiry must resolve whether, in the midst of the showdown, Fluidigm has shown that it was diligent from May 6, 2020 (when it received notice of IONPath's claim construction positions) to July 27, 2020 (when it disclosed its new DOE theories in its expert report). It was not.

### c) Fluidigm's Reliance on Patent Local Rule 3-6(a) Is Misplaced

Perhaps recognizing that its diligence showing falls far short, Fluidigm argues that it did not need to disclose its DOE theories because it would be freely given an opportunity to amend after "a claim construction by the Court different from that proposed by the party seeking amendment." Opp. at 15. According to Fluidigm, it was not only unnecessary to amend its contentions before showdown expert discovery, but "it would be premature for Fluidigm to seek leave to amend its infringement contentions in advance of the Court's claim construction." *Id.* Patent L.R. 3-6(a) does not bear the weight Fluidigm seeks to put on it.

The Patent Local Rules "requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and **to proceed with diligence**

in amending those contentions **when new information comes to light in the course of discovery**." *O2 Micro*, 467 F.3d at 1365-66. Thus, the rule in this district is that amendments to infringement contentions under Patent L.R. 3-6 are only allowed "upon a timely showing of good cause." And, as described in IONpath's motion and here, courts have long recognized that "good cause" cannot be established merely on the basis of the court's adoption of a claim construction that differs from the party's precise proposed construction. In fact, the cases cited above—including *Sunpower Corp. Sys. v. Sunlink Corp.*, *Cisco Sys., Inc. v. Teleconference Sys., LLC*, *Word to Info Inc. v. Facebook*, and *Verinata v. Sequenom*—were all decided under Patent L.R. 3-6(a). If Fluidigm was correct that Patent L.R. 3-6(a) permits a party to amend its contentions after claim construction so long as the court does not adopt that parties' **own** claim construction—even if it adopts the adversary's claim construction—, each of those cases (and many others in this district) would have been wrongly decided.

Here, there has not been a claim construction ruling, much less one that was unforeseen or unforeseeable by Fluidigm. Fluidigm's very ability to add these new theories to its expert report demonstrates that its positions were foreseeable based on IONpath's claim construction disclosure alone. For that reason, Fluidigm's citation to *Apple Inc. v. Samsung Elec. Co.*, is not persuasive. As discussed in IONpath's Motion, *Apple* makes clear that fear of an adverse claim construction ruling—which is all Fluidigm had here—does not amount to good cause. *Apple*, 2013 WL 3246094, at *4 ("Concern over the possibility of a loss at claim construction does not amount to good cause."). *Apple* does not stand for the principle that Fluidigm did not have a duty to diligently amend after receiving notice of IONpath's proposed claim constructions, or that seeking leave to amend would have been premature. To the contrary, *Apple* makes clear that a party seeking leave to amend its contentions must meet the amendment standard set forth in the rules. *Id.*

One need only consider the implications of Fluidigm's position to understand why its reading of the Patent Local Rules must be rejected. According to Fluidigm, it was entitled to wait until after this Court's ruling on motions for summary judgment (in which the Court is expected to address certain claim construction disputes) to seek to amend its infringement contentions to assert new infringement theories. Under Fluidigm's view of the Court's rules, it had the right to assert these new theories even if the Court simply adopts claim construction positions IONpath has

- 7 -

disclosed and advanced for months. Worse yet, Fluidigm would permit a patent owner to avoid an adverse summary judgment ruling in the showdown by simply asserting its supposed right to offer a new infringement theory because the Court did not adopt the patent owner's own claim construction. This is not a caricature of Fluidigm's position. Fluidigm expressly advocates for that outcome: "*The fact is that Dr. Hieftje's opinion on doctrine of equivalence is clearly relevant in demonstrating a possible question of fact on DOE infringement should the Court adopt something other than Fluidigm's claim construction and permit leave to amend as permitted by Patent L.R. 3-6(a).*" Opp. at 15-16 (original emphasis). It cannot be that the Patent Local Rules or this Court's showdown procedure permit such a perverse outcome.

### 2. IONpath Has Been Prejudiced

Because Fluidigm was not diligent, this Court need not reach prejudice. *See, e.g.*, *Cisco Sys.*, 2012 WL 9337627, at *4 ("Here, because [plaintiff] has not met its burden to establish diligence, the court 'need not even entertain whether the amendment would prejudice the nonmoving party.'"). If the Court does consider prejudice, there can be no legitimate debate that it exists here.

Fluidigm argues that "IONpath has a full and fair opportunity to serve a rebuttal expert report (which it did, yesterday) and cross-examine Dr. Hieftje regarding his responsive doctrine of equivalents infringement analyses and opinions." Opp. at 16. But a rebuttal report and deposition do not mitigate the prejudice here. IONpath's expert report of non-infringement was due just fourteen days after Fluidigm disclosed its new DOE theories. Fourteen days provided no real opportunity for IONpath to test Fluidigm's new theories through fact discovery.[3] Moreover, in just the time between May 6 and July 27 that Fluidigm remained silent on its new DOE theories, IONpath (1) sought leave to and was granted leave to amend its invalidity contentions, (D.I. 92, granted D.I. 108); (2) agreed to and did narrow its prior art case and elect a subset of prior art references and combinations that it would rely on for the showdown, (D.I. 103); and (3) prepared

---

[3] Fluidigm suggests that only limited fact discovery has occurred because depositions have not been taken. Fluidigm ignores the fact that IONpath has served extensive written discovery and multiple third party subpoenas since the early stages of fact discovery—including discovery specifically directed to the scope and content of the prior art.

and served its burden of proof expert report on invalidity. Had Fluidigm's positions on equivalence—including its contentions that certain technologies supposedly practice the same function in substantially the same way as the asserted claims and with substantially the same result—been disclosed to IONpath, IONpath could have made different decisions about what prior art combinations and theories to disclose, elect, and offer. And, of course, if Fluidigm had disclosed its DOE theories earlier, as it did for the vaporize, ionize, atomize limitation, IONpath would have had the opportunity to consider its own positions—on invalidity, non-infringement, and claim construction—in the proper context of the parties' substantive disputes.

With no meaningful response, Fluidigm makes the puzzling argument that IONpath is not prejudiced by Fluidigm's new DOE theories because it had included boilerplate reservations of rights in its infringement contentions. Opp. at 16. Fluidigm cannot credibly contend that this provided IONpath with fair notice of Fluidigm's intention to rely on DOE or of the substance Fluidigm's contentions. *See* Mot. at 10-11. That is especially true where Fluidigm amended its contentions to provide a substantive DOE theory for a single limitation. *Id.* at 4-6.

**B.     The Court Should Strike Fluidigm's Means-Plus-Function Theories**

**1.     Fluidigm's Section 112(f) Infringement Theories Are Untimely**

Fluidigm asserts that "notwithstanding the fact that Fluidigm was not required to identify corresponding structure under Section 112 ¶ 6, there can be no debate that Fluidigm fully identified how IONpath's Accused Instrumentalities meet each of the terms and limitations of the asserted claims" and that it "has consistently identified that IONpath's use of an ion beam in the MIBIscope Accused Instrumentalities meets the limitation of 'a first device to vaporize, atomize, and ionize multiple elemental tags . . . ,' and that IONpath's use of a mass spectrometer meets the limitation of 'a second device to detect, by mass spectrometry . . .' of Claim 6 of the '698 Patent." Opp. at 4. What Fluidigm does not assert is that its amended (operative) infringement contentions provide any infringement theory **under Section 112(6)**, let alone a disclosure of Fluidigm's theory that the accused instrumentalities are structurally equivalent to a glow discharge device. Opp. at 5-6; Mot. at 14.

Unable to cite a single means-plus-function corresponding structure or structural equivalents disclosure in its infringement contentions, Fluidigm argues that it should nonetheless be permitted

- 9 -

1  to offer a means-plus-function infringement theory through Dr. Hieftje's report because (1)
2  Fluidigm had no obligation to disclose such a theory because Fluidigm does not agree that the "first
3  device to . . ." and "second device to . . ." limitations are means-plus-function; (2) IONpath had
4  notice of Fluidigm's "alternative" corresponding structures as part of Fluidigm's claim construction
5  disclosures; (3) Dr. Hiefjte's opinions apply his understanding of the parties' respective claim
6  construction positions "to his literal infringement analysis of the asserted showdown claims of the
7  '698 Patent;" and (4) IONpath is not prejudiced. Opp at 3-8. None of these arguments is persuasive.

8  ***First***, Fluidigm misapprehends the Court's Patent Local Rules. The question is not what
9  Fluidigm was obligated to provide in its infringement contentions **before** it learned of IONpath's
10 claim construction positions, but what it was required to do **after** it learned of IONpath's contention
11 that the "first device to . . ." and the "second device to . . ." limitations are means-plus-function
12 limitations in April and learned of IONpath's proposed corresponding structure on May 6, 2020.
13 The answer to that question cannot be, as Fluidigm argues, nothing.

14 As IONpath explained in its Motion, Fluidigm is of course free to argue that the "first device
15 to . . ." and the "second device to . . ." limitations are not means-plus-function limitations. And
16 because it is not affirmatively relying on Section 112(6), it was free not to affirmatively identify
17 corresponding structure in its infringement contentions. Then, if Fluidigm were to prevail on claim
18 construction and the Court were to find the limitations are not means-plus-function, Fluidigm would
19 be free to continue to assert its infringement theories as disclosed. What Fluidigm cannot do is step
20 outside the bounds of its infringement contentions. Mot. at 15-16.

21 Having failed to disclose the theory that it now seeks to rely on, Fluidigm argues that
22 "IONpath has not identified any authority suggesting, much less requiring, that Fluidigm's initial
23 infringement contentions must include the identification of corresponding structures in IONpath's
24 accused products for terms and limitations that IONpath (not Fluidigm) asserts are subject to Section
25 112 ¶ 6." Opp. at 3. Quite the contrary. IONpath has identified—in its Motion and again here—
26 numerous cases in which a party seeking to amend its contentions must establish good cause,
27 including diligence running from the date it first learned of is adversary's proposed construction.
28 *See supra* Section II.A.1.c; Mot. at 16. There is no reason that the same standard does not apply to

1    amendments to add infringement theories under Section 112(6), and Fluidigm has offered none.

2    *Via Techs., Inc. v. ASUS Computer Int'l*, No. 14-cv-03586-BLF (HRL), 2017 WL 396172 (N.D. Cal. Jan. 30, 2017) is instructive. In that case, the plaintiff proposed that the court adopt in its claim construction order the plain meaning of this term. The court instead adopted the defendant's proposed construction, construing the term as a means-plus-function limitation. *Via Techs.*, 2017 WL 396172, at *1. One month after the claim construction ruling, the plaintiff sought to amend its infringement contentions to address the means-plus-function construction. *Id.* It asserted good cause because "the court adopted a different claim construction from the one it proposed"—precisely the argument that Fluidigm makes here. *Id.*, at *2. The court rejected the argument because, the patent owner "had notice of the adverse claim construction ultimately adopted by the court since it appeared in the defendant's patent local rule disclosures in November 2015." *Id.*, at *3. It was thus "persuaded that the relevant time from which to measure diligence when (as here) the court adopts the opposing party's construction is the date the moving party receives notice of that construction, as this is when diligent preparations could begin." *Id.* So too here.[4]

**Second**, the Court should reject Fluidigm's argument that it met its disclosure requirements by including an "ion-beam (including, but not limited to, techniques that generate secondary ions using an ion beam)" in its Patent L.R. 4-2 Claim Construction Disclosure. Opp. at 5-6. To be sure, the question of *whether* a claim is subject to Section 112 ¶ 6 is a matter for claim construction. But once the Court decides that a claim limitation is means-plus-function and defines the corresponding

---

[4] The *VIA* court remarked that, even measuring from the court's claim construction order, VIA had not established diligence because it waited two-and-a-half months before serving its proposed amendments (and another two weeks to file them with the court), and "Courts in this district have found that such delays do not constitute diligence." *Id.*, at *3. The Court specifically addressed VIA's reliance on *Vasudevan Software, Inc.*, also cited by Fluidigm: "Finally, the case VIA cites to support its argument that three months is not too long to establish diligence is distinguishable. In *Vasudevan Software, Inc. v. International Business Machines Corp.*, the court found that a party was diligent despite a four-month delay when its reason for seeking an amendment was new information obtained in discovery. [2011 WL 940263, at *3]. Because the new information was unclear, the court determined that a longer investigation was justified. *Id.* **Here, however, the basis for the proposed amendment is an adverse claim construction**. **VIA had notice of the construction that was ultimately adopted starting in late 2015**. Under these circumstances, the court is not persuaded that VIA has acted diligently in moving to amend." *Id.*

structure, the question of whether the accused instrumentality includes the corresponding structure or structural equivalents is a matter of literal infringement. *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1317 (Fed. Cir. 2010). It is for that reason that Fluidigm's inclusion of "ion-beam (including, but not limited to, techniques that generate secondary ions using an ion beam)" in a laundry list of proposed equivalents in an "alternative" claim construction position is no substitute for adequate infringement contentions.[5] To wit, Fluidigm's claim construction disclosure provided no notice of **how** Fluidigm contended that IONpath's accused instrumentality is equivalent to one of the structures described in the claims. The first disclosure of that theory came when Dr. Hieftje offered nearly **10 pages** of analysis on infringement of the "first device to . . ." and the "second device to . . ." limitations under Section 112(6) including a detailed discussion of equivalence of IONpath's accused instrumentality with the claimed glow discharge device. *See* Mot. at 14. If Fluidigm wanted to assert literal infringement applying a means-plus-function reading of the claims, it needed to disclose its theory in its infringement contentions.

**Third**, Fluidigm's reliance on Paragraph 163 to suggest that the challenged paragraphs "reflect Dr. Hieftje's understanding of the parties' claim construction positions and apply that understanding to his literal infringement analysis of the asserted showdown claims of the '698 Patent" is not sound.  If anything, Fluidigm's argument confirms the precise problem with Dr. Hieftje's report—that he purports to apply a means-plus-function construction as part of a literal infringement theory that is nowhere in the contentions. These opinions go well beyond the "understanding" of the parties' claim constructions purportedly summarized in Paragraph 163. *See* D.I. 114-2 (Gooch Decl., Ex. 1), ¶¶ 158-179 and 195-202.

**Finally**, Fluidigm's conclusory argument that IONpath is not prejudiced should be dismissed. For one, Fluidigm has not asserted diligence, let alone sought leave to amend. But if it

---

[5] While Fluidigm denies that the claim limitation is means-plus-function (and thus avoids having to provide means-plus-function contentions under its own theories), it asserts and seeks to rely on an "alternative" claim construction listing that identifies not only corresponding structure (which is properly a subject of claim construction) as well as a long list of hypothetical "equivalent" structures (which is not). Fluidigm's attempt to include a long list of "equivalents" as part of the means-plus-construction cannot serve as a back-door to allow Fluidigm to assert means-plus-function infringement without providing Section 112(6) infringement contentions.

were to consider prejudice, there can be no legitimate debate that IONpath has been prejudiced for the same reasons discussed above. *See supra* Section II.A.2; Mot. at 13, 16.[6]

### C. The Court Should Strike Dr. Hieftje's Claim Construction Opinions

Fluidigm admits both that Dr. Hieftje opined on claim construction, and that he was not disclosed pursuant to the local rules. Opp. at 9. Nonetheless, Fluidigm argues that Dr. Hieftje's opinions should stand because it will stipulate "that it will not rely on Dr. Hieftje to support its claim construction positions and it has no intention to do so." Opp. at 9. Fluidigm never explains what that "stipulation" means in practice where claim construction and non-infringement issues will be briefed and resolved together at the showdown. And, when asked if Fluidigm would agree to withdraw Dr. Hieftje's claim construction opinions, Fluidigm refused. *See* D.I. 114-15 (Gooch Decl. Ex. 14). Instead, Fluidigm requests that the Court "take this motion with the showdown summary judgment briefs and determine what weight to give these aspects of Dr. Hieftje's report." Opp. at 11. In other words, while Fluidigm is offering to "stipulate" not to rely on Dr. Hieftje for claim construction, it is expressly asking the Court to consider Dr. Hieftje's opinions when it jointly considers claim construction and summary judgment. Fluidigm never explains the need for such a tortured procedure. If Fluidigm were genuinely willing not to rely on Dr. Hieftje for claim construction, there would be no reason for Fluidigm not to withdraw the challenged paragraphs. If Fluidigm wants, as it says, the Court to consider Dr. Hieftje's improper claim construction opinions as part of the showdown summary judgment proceeding, its "stipulation" is meaningless.

Fluidigm puts the challenged paragraphs into three buckets, and argues that each bucket should be permitted.[7] Each argument fails.

---

[6] Fluidigm's suggestion that IONpath somehow had a duty to object to Fluidigm's undisclosed infringement theory before it even received Dr. Hieftje's report is nonsensical. Opp. at 6-7. So too is its suggestion that IONpath discovery responses served *after* it received Dr. Hieftje's expert report somehow suggest that IONpath was on notice of Fluidigm's structural equivalence position before the report. Opp. at 6 (citing responses served one week after Dr. Hieftje's report).

[7] Fluidigm attempts to excuse its expert's opinions by arguing that IONpath's expert has "done precisely the same" thing. Opp. at 2. Other than a few parentheticals in which it (mis)characterizes Dr. Winograd's opinions, Fluidigm offers no explanation or elaboration. In fact, his non-infringement expert report does not offer opinions on the parties' disputed claim constructions. Nor would it have made sense for it to. Dr. Winograd was disclosed as a claim construction expert and

- 13 -

***First***, Fluidigm argues that a subset of the challenged paragraphs (Paragraphs 94-99, 174-176, and 178) merely "discuss[] and agree[] with Dr. Kelly's claim construction opinions." Opp. at 9. The argument is belied by the plain text of Dr. Hieftje's report. Dr. Hieftje does not limit himself to simply agreeing with Dr. Kelly, but instead provides his own analysis. For example:

> 178.   IONpath's proposed structure also would not cover a GDMS system lacking a sheath flow injection system and such a system appears to be expressly contemplated by the specification of the '698 Patent as sheath flow injection systems are not commonly used with GDMS. A POSIA reading the patent would not understand that such a glow discharge system was not contemplated, when the patent specifically references the use of glow discharge devices. This further supports my opinion that IONpath's proposed structure includes additional improper structures beyond those disclosed as necessary in the '698 Patent.

***Second***, Fluidigm argues that in a second subset of paragraphs (Paragraphs 67, 122, 123, 134, 135, 187, 190, and 191) Dr. Hieftje "attempts to understand, interpret, and apply IONpath's proposed claim constructions." Opp. at 10. Again, this argument is not consistent with Dr. Hieftje's actual report. For example, Dr. Hieftje opines as follows in paragraph 134:

> 134.   I note that IONpath's proposed construction does not appear to have a temporal or ordinal element that I would expect given my (and a POSIA's) understanding of the word "sequentially." IONpath appears to be propounding a construction such that discerning information on a cell-by-cell basis satisfies the limitation "sequentially." To the extent that IONpath is asserting that the term requires that the two individual signals be detected simultaneously, it is my opinion that such a construction is counter to the patent and the words of the claim as they would be understood by a POSIA.

Again, Dr. Hieftje is not simply trying to "understand, interpret, and apply" IONpath's proposed claim constructions, but is opining as to the correctness of the constructions themselves.

***Third***, Fluidigm argues that in a third subset of paragraphs (Paragraphs 102 and 104), Dr. Hieftje "references IONpath's construction but does not provide an opinion as to its

---

submitted a timely declaration. His non-infringement report does not restate his opinions on the parties' claim construction disputes; instead he expressly applies Fluidigm's construction, IONpath's construction, or both, to the accused instrumentality. It is no surprise that, aside from the passing attempt to equate the two reports, Fluidigm has not challenged Dr. Winograd's report.

appropriateness." Opp. at 11. Apparently Fluidigm would have this Court find that Dr. Hieftje's opinion commenting on the *motivation* for IONpath's claim construction positions and references to its "*other flaws*" are not directed to claim construction:

> 102. IONpath's proposed construction (particularly its "heating" requirement) appears to be motivated by a desire to exclude the SIMS device utilized by the MIBIscope from coverage under this limitation, as SIMS utilizes a kinetic "sputtering" process similar to the one used in glow discharge, rather than a primarily thermal "heating" process.

> 104. IONpath's proposed construction describes the function of the device "vaporizing, atomizing, and ionizing" as "convert[ing] the elemental tag [in or on a sample] … into [charged] atomic constituents." While it possesses other flaws (previously discussed), this functional statement is quite similar to Fluidigm's proposal's described function: "generating ionized atomic components from … a sample."

***Finally***, Fluidigm's contention that there is not prejudice ignores the facts of this case. Opp. at 12. For one, Dr. Hieftje's opinions came just three days before IONpath's own claim construction brief and expert declaration were due. Worse still, IONpath's own report regarding invalidity was due the *same* day that it received Dr. Hieftje's report. Dr. Hieftje's new opinions on claim construction—including his opinions on what the claims should cover and not cover—are of course directly relevant to the scope of the claims for invalidity. Fluidigm does not dispute this. Instead, Fluidigm argues that there is no prejudice because there are not "any *constructions* referred to in Dr. Hieftje's report that were not already disclosed in Dr. Kelly's expert report." Opp. at 12 (original emphasis). That may be true. But it is also irrelevant. IONpath did not have fair notice of Dr. Hieftje's claim construction *analysis*. For the same reason, Fluidigm's suggestion that there is no prejudice because Dr. Hieftje's opinions "are clearly duplicative of opinions already disclosed" must be rejected. If the opinions were "clearly duplicative," there would have been no reason to offer them and no reason not to withdraw them.[8]

---

[8] Fluidigm's assertion that striking the paragraphs may cause some unspecified "prejudice," Opp. at 12, cannot outweigh the harm from Fluidigm's late disclosure. Fluidigm never explains how it can be prejudiced by an order striking these paragraphs when it argues that they "clearly duplicative" of unchallenged opinions from Dr. Kelly.

Dated: August 14, 2020

WILMER CUTLER PICKERING,
  HALE AND DORR LLP

By: /s/Sonal N. Mehta
    SONAL N. MEHTA
    OMAR A. KHAN
    JOSEPH TAYLOR GOOCH
    JOSHUA D. FURMAN

*Attorneys for Defendant IONpath, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2020, a true and correct copy of the above and foregoing Document has been served by electronic mail upon all counsel of record.

Dated: August 14, 2020           By:    /s/Sonal N. Mehta
                                        Sonal N. Mehta