UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FLUIDIGM CORPORATION, et al.,

    Plaintiffs,

    v.

IONPATH, INC.,

    Defendant.

No. C 19-05639 WHA

**ORDER DENYING LEAVE TO FILE THIRD AMENDED COMPLAINT**

## INTRODUCTION

In this patent and business interference suit, patent owner seeks leave to amend its complaint for the third time to add a claim under the Lanham Act. This order does not reach the merits of the proposed pleading, however, as patent owner failed to diligently investigate the facts that it says gave rise to this new claim. The motion is **DENIED**.

## STATEMENT

Prior orders detail the facts here (Dkt. Nos. 46, 58). In brief, patent owner, Fluidigm Corporation and Fluidigm Canada Inc., markets mass cytometry methods and systems for cell structure and biomarker analysis. The methods involve labelling a sample, usually a cell or tissue suspension, with metal tags attached to antibodies in a process called "staining." Different antibodies bind to different cell targets, and different metal tags attach to different antibodies. Following staining and washing, to remove unbound antibodies, only antibody-metal tags bound to present targets remain (Dkt. No. 59 at ¶¶ 23–24).

To analyze the samples, the metal tags are released and ionized. A mass spectrometer measures the mass-to-charge ratio of the ions and, using the different weights of different metals,

identifies the various metal tags released from the sample. And, because the various metal tags bound to antibodies which in-turn bound to varying targets, identifying the metal tags identifies the targets present in the sample (Dkt. No. 59 at ¶¶ 25–27).

Patent owner markets these mass cytometry methods and devices. And, it markets its own line of "Maxpar" antibody-metal tag reagents. Patent owner also, unsurprisingly, holds and asserts here several patents covering those processes and products. The patents, however, do not play in this present matter.

Defendant IONpath, Inc., markets its own mass cytometry system, the "MIBIscope," its own line of antibody-metal tag reagents, "MIBItags," and is apparently after patent owner's customers. Though patent owner's sales terms prohibit the use of the Maxpar reagents with any system but patent owner's proprietary system, defendant has (allegedly) encouraged its customers to use patent owner's Maxpar reagents with defendants' MIBIscope. So, patent owner sued for this alleged intentional interference with contractual relations (Dkt. No. 59 at ¶¶ 27, 71–78, 96–99, 121–31).

Following patent owner's September and October 2019 complaint and first amended complaint, discovery opened at the January 23 case management conference. A January 24 order dismissed the interference claim, but a March 24 order granted leave to reassert the claim with strengthened allegations in patent owner's second amended complaint. An April 16 case management scheduling order directed patent owner to finalize its pleadings by May 28.

Patent owner now moves for leave to file a third amended complaint. During an August 28 deposition, patent owner learned that defendant (allegedly) used Maxpar reagents with defendants' own MIBIscope in 2017 and recently published the resulting research without revealing the source of the material used. According to patent owner, the paper repeatedly and falsely claimed that defendant used *only* its own material in the course of the research, amounting to a false and deceptive commercial advertisement under the Lanham Act. Though patent owner initially sought leave to add both breach of contract (based on illicit use of patent owner's Maxpar reagents with other systems) and Lanham Act claims, patent owner

subsequently retracted the contract claim (Dkt. Nos. 133-4, 139).  This order follows full briefing and is appropriate for disposition on the papers.

**ANALYSIS**

Federal Rule of Civil Procedure 15(a) dictates that leave to amend shall be freely given "when justice so requires." Absent (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; or (5) futility, leave should be granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  But the May 28 deadline for amended pleadings has long passed (Dkt. No. 72).  Where the Court has imposed a deadline, Rule 16(b)(4) permits modification "only for good cause."  "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *DRK Photo v. McGraw-Hill Glob. Ed. Holds.,* 870 F.3d 978, 989 (9th Cir. 2017).  New facts may certainly constitute good cause to amend a complaint, but only where the moving party has diligently pursued discovery of those facts.  *See, e.g.*, *Bot M8 v. Sony*, No. C 19-07027 WHA, 2020 WL 1643692 (N.D. Cal. April 2, 2020).

Here, new facts have arisen.  Patent owner learned during an August 28 deposition that defendant used patent owner's Maxpar reagents along with defendant's MIBIscope in 2017 and submitted a paper in December 2019 describing (incorrectly, as patent owner alleges) that research.  But even accepting patent owner's contention that it could not have known of these facts until defendant revealed them, patent owner did not diligently pursue them.

From the start, patent owner's complaints alleged that not only had defendant encouraged others to use patent owner's Maxpar reagents with defendant's MIBIscope, but that, in fact, defendant itself had *already so used the reagents*.  Patent owner's September 2019 complaint alleged that:

> 1. Defendants had contacted patent owner's "customers for the express purpose of convincing [them] to use [patent owner's] proprietary Maxpar® antibodies and related reagents with [defendant's] systems;"
>
> 2. Defendant's founders, Drs. Sean Bendall and Michael Angelo, had submitted a paper to the scientific journal *Cell* in April 2018 based on research they performed using Fluidigm materials with IONpath technology;

3

      3. Defendant had published a brochure depicting cell images generated by defendants' machines with patent owner's Maxpar reagents; and

      4. Defendant did not start marketing its MIBItags, its version of patent owner's Maxpar reagents, until at least 2019.

(Dkt. No. 1 at ¶¶ 60, 64, 73, 115). Patent owner's October 2019 first amended complaint repeated these allegations (Dkt. No. 13 at ¶¶ 68, 72, 81, 123).

      Moving for leave to file its second amended complaint in February 2020, patent owner again repeated the first three allegations and expanded on the fourth, explaining *why* defendant needed to encourage the use of patent owner's reagents with defendant's own system, the MIBIscope. Specifically, the second amended complaint alleged that the special mass cytometry reagents, used by its own system and by defendant's MIBIscope, were (and continue to be) tailor-made products and not widely available. The complaint explained that between 2017, when defendant began marketing its MIBIscope, and July 2019, when it first marketed MIBItags, patent owner's Maxpar reagents would have been the primary antibody-metal tags on the market. Then, beyond the 2018 *Cell* article by Drs. Bendall and Angelo, the second amended complaint newly alleged that another of defendant's founders, Dr. Gary Nolan, purchased patent owner's Maxpar reagents for use with his MIBIscope in his lab at Stanford University. And even further, the second amended complaint alleged that Drs. Angelo and Bendall had written a new article, published in January 2020, *again* describing the use of patent owner's Maxpar reagents with defendant's MIBIscope (Dkt. No. 59 at ¶¶ 71, 73, 76, 80–84, 95, 99).

      Simply put, patent owner has premised much of this case for the past year on its allegations that *defendant* itself used, and encouraged others to use, patent owner's Maxpar reagents with defendant's MIBIscope. And yet now, patent owner justifies the delayed addition of new claims in a third amended complaint, based on defendant's use of Maxpar reagents *in 2017*, with the assertion that it had no reason to suspect the newly discovered facts until an August 28 deposition. Had this case been purely about defendant *encouraging others* to use the Maxpar reagents with its MIBIscope, a preeminent inquiry still would have been whether defendant had every used patent owner's reagents with its machine. But this case *is* about more than use by others. *Every one* of patent owner's three complaints since September 2019 revealed its

4

suspicion that defendant itself had used its Maxpar reagents with defendant's MIBIscope *and even published papers* based on that illicit used. Patent owner's *first* round of discovery could have (and should have) discovered defendant's alleged 2017 use of those reagents. Diligent follow up would have revealed the resultant December 2019 article submission and March 2020 publication. Patent owner instead dithered.

Both parties wholly miss this point, and instead quibble about the discovery that was taken and when it would have discovered the relevant facts. Patent owner contends that the relevant facts fell within five of its December 2019 requests for production, thus responsibility for its failure to learn of these facts earlier rests on defendant's inadequate document production. In ordinary circumstances, perhaps so. A party is, to a reasonable extent, entitled to rely on the completeness of an opposing party's document production. So a party without reason to suspect new facts might be excused where delayed production in turn delayed revelation of the facts.

*But patent owner did suspect*. This order repeats: patent owner suspected *and repeatedly pled* from the beginning that defendant had used its Maxpar reagents with a MIBIscope and published research based on that use. And, by February, patent owner knew that defendant had *done it again*, publishing a new paper in January. That warranted at least a direct interrogatory or a request for admission into the extent of defendant's use of Maxpar reagents with its MIBIscope and subsequent use of the research. Diligent follow-up would have led to the facts now pled. Yet patent owner subordinated its duty to diligently and specifically inquire to broad document requests. Not until June 30, more than one month after the pleading amendment deadline, did patent owner serve its first set of interrogatories and requests for admission which directly asked if defendant has used Maxpar reagents with a MIBIscope. Patent owner offers no explanation for its failure to take this discovery months earlier.

Last, the parties' late summer finagling about the scope and pace of discovery outside the bounds of the patent showdown does nothing to change the fact that patent owner did not diligently pursue the relevant facts for the preceding six months. Regardless, the January 24 case management order clearly stated that the patent showdown should in no way slow or narrow both parties' discovery obligations as to the remaining claims (Dkt. No. 45 ¶¶ 3–5).

5

**CONCLUSION**

Patent owner failing to diligently pursue discovery of the claims it now seeks leave to add, the motion is **DENIED**. Because defendant has not submitted a declaration under Civil Local Rule 79-5(e)(1) in support of patent owner's motion to seal portions of its motion and proposed complaint, the motion to seal is **DENIED**. The October 15 hearing is **VACATED**.

**IT IS SO ORDERED.**

Dated: October 9, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE