K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
Nick E. Williamson (appearance *pro hac vice*)
Jason S. Meyer (appearance *pro hac vice*)
George G. Brell (SBN 281342)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO  63102
Telephone: (314) 259-2000
daroodman@bclplaw.com
nick.williamson@bclplaw.com
jason.meyer@bclplaw.com
george.brell@bclplaw.com

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA INC., a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:19-cv-05639<br><br>**PLAINTIFFS FLUIDIGM CORPORATION'S & FLUIDIGM CANADA INC.'S OPPOSITION TO DEFENDANT IONPATH'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR SANCTIONS FOR VIOLATION OF ADR RULE 7-4** |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4070

1

## <u>TABLE OF CONTENTS</u>

2

TABLE OF AUTHORITIES ........................................................................................................ ii

3

I.      Introduction. ...................................................................................................................... 1

4

II.     Fluidigm Was Permitted To Disclose the Settlement Statement to Dr. Hieftje.................. 2

5

III.    Dr. Hieftje Did Not Use the Settlement Statement for Any Improper Purpose.................. 4

6

        A.     IONpath Cannot Use the Settlement Statement as Both a "Sword" and a "Shield".4

7

        B.     IONpath Has Omitted Significant Information from its "Timeline." ..................... 6

8

        C.     Nothing in Dr. Hieftje's Report Was Taken from or Relies on the Settlement
               Statement.......................................................................................................... 9

9

IV.     IONpath's Motion is Untimely and Unfairly Prejudicial.................................................. 12

10

V.      Conclusion. ...................................................................................................................... 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR
SANCTIONS FOR VIOLATION OF ADR RULE 7-4

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3

*In re Student Fin. Corp.*, No. CIV.A04-1551JJF, 2007 WL 4643881 (D. Del. May 25, 2007) .. 3, 4

4

*Irwin Seating Co. v. Int'l Bus. Machines Corp.*, No. 1:04CV568, 2006 WL 3446584 (W.D. Mich.
    Nov. 29, 2006), *aff'd*, No. 1:04-CV-568, 2007 WL 518866 (W.D. Mich. Feb. 15, 2007) .... 4, 11

5

6

*Jones v. Metro. Life Ins. Co.*, No. C-08-03971-JW DMR, 2010 WL 4055928 (N.D. Cal. Oct. 15,
    2010) ................................................................................................................................. 4

7

*McLean v. Air Methods Corp.*, No. 1:12-CV-241-JGM, 2014 WL 280343 (D. Vt. Jan. 24, 2014)
    ................................................................................................................................. 10

8

9

*Simonelli v. Univ. of California-Berkeley*, No. C 02-1107 JL, 2008 WL 11428249 (N.D. Cal. Feb.
    14, 2008), *aff'd sub nom. Simonelli v. The Univ. of Cal. at Berkeley*, 338 F. App'x 673 (9th Cir.
    2009) ................................................................................................................................. 4

10

11

*Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 4680177 (N.D. Cal. Sept. 28,
    2018) (Alsup, J.) ................................................................................................................ 6

12

13

*Tokerud v. Pac. Gas & Elec. Co.*, 25 F. App'x 584 (9th Cir. 2001) ................................................. 4

14

*TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341 (S.D.N.Y. 2003) ..................... 6

15

**Rules**

16

ADR Local Rule 7-4 ............................................................................................................. 2, 5

17

Civil L.R. 7-3 .......................................................................................................................... 5

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR
SANCTIONS FOR VIOLATION OF ADR RULE 7-4

1    **I.        Introduction.**

2          IONpath, having abandoned its principal infringement defense (*i.e.*, that its accused

3    MIBIscope System does not infringe the asserted patents by "vaporizing" a sample during

4    analysis), now instead appears to be pursuing a litigation strategy of procedural gamesmanship,

5    including, as it has done here, fabricating issues where none exist.  IONpath's Motion to Preclude

6    and/or Strike and for Sanctions for Violation of ADR Local Rule 7-4 (the "Motion to Preclude")

7    fails to show any violation of the Local Rules, any improper information relied upon by

8    Fluidigm's expert, Dr. Hieftje, and any actual prejudice to IONpath resulting from its baseless

9    allegations.  In fact, quite tellingly, in asserting that Dr. Hieftje improperly relied on information

10   learned from IONpath's Exchanged Settlement Statement ("Settlement Statement"), IONpath fails

11   to attach the Settlement Statement or so much as broadly describe any information supposedly

12   misused such that the Court could even begin to assess such a claim.  This is perhaps unsurprising,

13   as there is no information in the Settlement Statement that was not readily available to Fluidigm—

14   and to Dr. Hieftje—from other sources.  Dr. Hieftje never quotes from, discloses, or otherwise

15   uses or indicates any use of the Settlement Statement in his report aside from noting that he

16   reviewed and considered the statement before submitting his report.  In short, there has been no

17   use or disclosure of the Settlement Statement in the litigation.

18         The Motion is also IONpath's attempt at the proverbial second bite at the apple.  Having

19   already tried—and failed—to preclude the testimony of Dr. Hieftje in its earlier motion to strike,

20   IONpath is now attempting to do so again (indeed, the paragraphs it seeks to strike from Dr.

21   Hieftje's report are *exactly the same ones* the Court already refused to strike in IONpath's earlier

22   motion).  Moreover, attempting to inflict undue harm on Fluidigm, IONpath waited until the

23   eleventh hour to raise this issue with the Court despite the fact that Dr. Hieftje first indicated over

24   four months ago, in his July 27, 2020 expert report, that he had considered the Settlement

25   Statement (and there is nothing in the deposition testimony of Dr. Hieftje that adds any

26   information not available to IONpath months before).  In the intervening four months, IONpath

27   never met and conferred with Fluidigm regarding the relief sought in its Motion to Preclude.

28   Indeed, IONpath never raised this issue with Fluidigm *at all*, including after service of either

version of Dr. Hieftje's Report, during discussion or briefing of IONpath's previous Motion to Strike Dr. Hieftje's Report, or at any point during or after Dr. Hieftje's deposition.  IONpath never requested that Fluidigm withdraw Dr. Hieftje's Reports or refrain from relying on them.  Instead, IONpath waited until the Parties had submitted their respective Opening Summary Judgment briefs, knowing full well Fluidigm would be relying on Dr. Hieftje to support the same, and only then filed its Motion to Preclude on the night before Thanksgiving.  This is only further evidence that IONpath's primary purpose here is not to seek to rectify a perceived wrong, but rather constitutes a bald attempt to ambush Fluidigm to the greatest extent possible on the eve of the patent "Showdown."

For these reasons, and those stated further below, IONpath's Motion to Preclude should be denied.

## II.      **Fluidigm Was Permitted To Disclose the Settlement Statement to Dr. Hieftje.**

Fluidigm has not violated the ADR Local Rules, the Parties' Rule 408+ and Confidentiality Agreement (the "408+ Agreement"), or any other rule or order by its disclosure of the Settlement Statement to Dr. Hieftje.  ADR Local Rule 7-4 defines written settlement conference statements as "Confidential Information," and provides that such information "shall not be: (1) Disclosed to anyone **not involved in the litigation**; (2) Disclosed to the assigned Judge; or (3) Used for any purpose, including impeachment, in any pending or future proceeding in this Court."  ADR Local Rule 7-4(a) (emphasis added).  Of course Dr. Hieftje is someone "involved in the litigation," and thus such disclosure is contemplated under this Rule.

Importantly, **disclosure to party experts is expressly permitted** under the 408+ Agreement entered into between the Parties.  Declaration of K. Lee Marshall ("Marshall Decl."), Ex. 1, 408+ Agreement.  That agreement covers "Portfolio Discussions," defined broadly as "discussions regarding the [Fluidigm] patent portfolio."  *Id.* at 1.  The agreement further provides that:

> Confidential Information shall be used solely for the purpose of the
> Portfolio Discussions and for no other purpose whatsoever, and **shall be
> disclosed only to the receiving Party's** representatives, consultants,
> **experts** or counsel having a need for access to the information in support

of the Portfolio Discussions, and who are under a duty of confidentiality and non-use at least as protective of the Confidential Information as the provisions of this Agreement.

*Id.* at ¶ 1 (emphasis added).  The 408+ Agreement allows either party to "request of the other that access to its Confidential Information be limited to certain individuals or groups within the receiving party."  *Id.* at ¶ 4.  IONpath made no such request to limit disclosures beyond the written scope of the agreement, with respect to experts or otherwise.  Marshall Decl., ¶ 14.  The 408+ Agreement also requires that "Each party shall **promptly** notify the other of any . . . suspected unauthorized use or disclosure of Confidential Information."  Marshall Decl., Ex. 1, 408+ Agreement at ¶ 1 (emphasis added).  IONpath was on notice of Dr. Hieftje's receipt and consideration of the Settlement Statement at least as early July 27, 2020, but never raised this issue at all until the November 25, 2020, filing of the present motion.  Marshall Decl., ¶ 17.

Fluidigm sought Dr. Hieftje's consulting services in connection with the litigation. Marshall Decl., ¶ 11.  Fluidigm provided the IONpath Settlement Statement to Dr. Hieftje in connection with his provision of these services.  *Id.* at ¶ 12.  Fluidigm and its counsel considered Dr. Hieftje's views in its ongoing evaluation of the strength of its case and its position regarding settlement.  *Id.* at ¶ 13.  Again, the disclosure is permitted under both ADR Local Rule 7-4 and the 408+ Agreement between the Parties.  To hold that technical experts may not view Settlement Statements in highly technical cases such as this one would run counter to the very purpose of obtaining a clear-eyed view of the strengths and weaknesses of a party's case in order to evaluate settlement potential, particularly where disclosure to experts is expressly contemplated by the parties own 408+ Agreement.

The facts here are plainly distinguishable from the cases relied on by IONpath.  For example, IONpath cites *In re Student Finance Corporation* as an example of a case where expert reports were struck because the experts received confidential mediation statements.  DE 165, Motion to Preclude at 3 (citing *In re Student Fin. Corp.*, No. CIV.A04-1551JJF, 2007 WL 4643881 (D. Del. May 25, 2007)).  But in so holding, the Delaware court noted that "With respect to the Mediation Agreement . . . the language is clear on its face that statements made during the

1  course of mediation were not to be disclosed to third parties, **including experts**."  2007 WL

2  4643881, at *1 (emphasis added).  The 408+ Agreement here provides exactly the opposite.

3        The agreements in the other cases cited by IONpath neither explicitly permit nor forbid

4  disclosure to experts.  *See Irwin Seating Co. v. Int'l Bus. Machines Corp.*, No. 1:04CV568, 2006

5  WL 3446584, at *1 (W.D. Mich. Nov. 29, 2006), *aff'd*, No. 1:04-CV-568, 2007 WL 518866 (W.D.

6  Mich. Feb. 15, 2007) (noting that mediation order provided that information exchanged "must not

7  be disclosed to any other party nor to this court"); *Tokerud v. Pac. Gas & Elec. Co.*, 25 F. App'x

8  584, 586 (9th Cir. 2001) (addressing this issue in one line, noting only that "the district court

9  abused its discretion by failing to address the issue of monetary sanctions based on defendants'

10  alleged disclosure of mediation documents to their experts in violation of a confidentiality

11  agreement," but never discussing the terms of that confidentiality agreement).  The cases IONpath

12  cites regarding the ADR Local Rules do not involve disclosures to expert witnesses, but rather the

13  inclusion of confidential settlement materials in public filings and/or for use at trial.  *See Jones v.

14  Metro. Life Ins. Co.*, No. C-08-03971-JW DMR, 2010 WL 4055928, at *1 (N.D. Cal. Oct. 15,

15  2010) (granting in part a motion to "strike the disclosures of . . . confidential communications from

16  various public filings before the Court."); *Simonelli v. Univ. of California-Berkeley*, No. C 02-

17  1107 JL, 2008 WL 11428249, at *9 (N.D. Cal. Feb. 14, 2008), *aff'd sub nom. Simonelli v. The

18  Univ. of Cal. at Berkeley*, 338 F. App'x 673 (9th Cir. 2009) (concluding that the Court properly

19  excluded evidence of partial settlements from introduction at trial).

20        Accordingly, IONpath's assertion that the mere disclosure of the Settlement Statement to

21  Dr. Hieftje constituted a violation of any rule or agreement is belied by the language of ADR Local

22  Rule 7-4, the 408+ Agreement, and the distinction is made more evident by the very cases on

23  which IONpath attempts to rely.

24  **III.**     **Dr. Hieftje Did Not Use the Settlement Statement for Any Improper Purpose.**

25        **A.**     **IONpath Cannot Use the Settlement Statement as Both a "Sword" and a**

26             **"Shield".**

27        Significantly, IONpath failed to attach the Settlement Statement to its Motion to Preclude,

28  or even to include any description of what alleged information was uniquely disclosed in that

4

statement and therefore otherwise unavailable to Dr. Hieftje.  IONpath made this glaring omission

despite the fact that ADR Local Rule 7-4 expressly permits disclosures of confidential information

for reasons including, among others, "Disclosures as necessary to preserve the Court's capacity to

enforce lawful orders or to discipline contumacious conduct."[1]  ADR Local Rule 7-4(b)(6).

IONpath also chose to exclude this information from its motion despite the existence of a

Stipulated Protective Order [DE 78] in this case and the fact that the Settlement Statement has

already been disclosed to Fluidigm and its counsel.  In making this omission, IONpath explains:

> Pursuant to ADR Local Rule 7-4, IONpath does not attach its Statement to
> this submission, nor will it describe the content of the statement.  IONpath
> has not agreed, and does not agree, to waive the protections guaranteed
> under Rule 7-4.

DE 165, Motion to Preclude at 5 n.3.

Of course IONpath is free to have made this strategic decision.  But as a result, IONpath

has failed to connect any information in Dr. Hieftje's Expert Report to anything allegedly obtained

from the Settlement Statement.[2]  Instead, IONpath relies on arm-waving and inferences to argue

that because certain opinions of Dr. Hieftje's did not appear in Fluidigm's earlier papers, they

must have derived from the Settlement Statement.  Equally as importantly, IONpath has tied

Fluidigm's hands in responding to this motion.  Without IONpath's agreeing that the contents of

the Settlement Statement may be discussed in connection with the Motion to Preclude, Fluidigm is

unable to specifically rebut IONpath's claims that any information was improperly derived from

the statement, or to specifically show why information in the Settlement Statement was not

confidential and/or was equally available from other sources.

---

[1] Fluidigm disputes and denies that there has been any violation of an order and/or any
"contumacious conduct," but this is, presumably, the basis of IONpath's motion.

[2] To the extent IONpath attempts, in its Reply Brief, to attach the Settlement Statement, provide
excerpts or summaries of the statement, and/or otherwise elaborate on what information contained
therein IONpath alleges to have been improperly utilized in Dr. Hieftje's Expert Report, Fluidigm
expressly objects to any such inclusion as improper and untimely.  *See* Civil L.R. 7-3(d)(1)
(permitting objections to new evidence first submitted in a reply brief).  IONpath had every
opportunity to include any such details in its opening Memorandum, and chose not to do so.

Given IONpath's failure to identify what information it purports to have been improperly used from the Settlement Statement—despite such misuse being the very basis for this motion, and the existence of specific mechanisms which permit disclosure in this exact circumstance[3]—Fluidigm respectfully submits that this omission is fatal to IONpath's Motion to Preclude. *See, e.g., TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (denying plaintiff TVT's motion in limine to exclude defendant's expert report where expert had previously served in confidential relationship with plaintiff, and noting that while plaintiff "does assert that confidential information about TVT's business affairs was implicated by [expert's] followup report . . . TVT does not adequately explain what portions of this report may reflect improper reliance on confidential information from TVT, how the confidential information supplied by TVT may have been implicated, or even what information, precisely, was disclosed to [expert].").

**B.     IONpath Has Omitted Significant Information from its "Timeline."**

IONpath's Motion to Preclude places great emphasis on the alleged timeline preceding Dr. Hieftje's July 27, 2020, expert report.  Indeed, in the absence of any actual evidence regarding misuse (*i.e.*, connecting Dr. Hieftje's Expert Report to anything in the Settlement Statement), IONpath's Motion is almost entirely reliant on this timeline to support its theory that Dr. Hieftje must have relied on the Settlement Statement to form his opinions.  This is simply untrue.

Below are the dates identified by IONpath in its Motion to Preclude, with additional dates added now by Fluidigm (noted by ***bold/italics***) and which IONpath omitted from its Motion:

- February 6, 2020:  Fluidigm serves its Initial Infringement Contentions

- February 11, 2020:  IONpath notifies Fluidigm of alleged deficiencies in its Initial Infringement Contentions

- February 24, 2020:  Fluidigm serves its Supplemental Infringement Contentions

---

[3] *See, e.g.*, *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 4680177, at *3 n.1 (N.D. Cal. Sept. 28, 2018) (Alsup, J.) (noting the parties agreed to disclose confidential settlement material for the purposes of the motion, which relied in part on the same, notwithstanding Federal Rule of Evidence 408 and ADR Local Rule 7-4).

- ***April 15, 2020:  Parties exchange list of proposed terms for claim construction***

- ***May 6, 2020:  Parties exchange proposed construction of disputed terms and identification of extrinsic evidence supporting same***

- May 19, 2020:  Parties exchange settlement statements

- May 26, 2020:  Parties participate in remote settlement conference

- ***June 1, 2020:  Parties file Joint Claim Construction and Prehearing Statement***

- ***June 24, 2020:  IONpath produces Laboratory Investigations Article to Fluidigm***

- June 30, 2020:  Fluidigm serves interrogatories regarding infringement

- July 27, 2020:  Fluidigm serves the opening expert report of Dr. Hieftje

- July 30, 2020:  IONpath serves its claim construction brief

Again, the inference IONpath is trying to draw from this timeline is that nothing happened between Fluidigm's service of its Supplemental Infringement Contentions and July 27 service of Dr. Hieftje's Report other than IONpath's disclosure of the Settlement Statement that could have influenced Dr. Hieftje's Report and/or led to Fluidigm's further development of its infringement theories.

This is simply not the case.  As reflected above, at least two significant additional developments occurred during that exact time frame and which are directly relevant to Fluidigm's infringement case.  First, the Parties exchanged their respective lists of proposed claim terms requiring construction on April 15, 2020, and on May 6, 2020, disclosed their proposed constructions and evidence in support.  Marshall Decl., ¶¶ 3-4; *id.* at Ex. 2, IONpath's Proposed Terms for Claim Construction; *id.* at Ex. 3, IONpath's Preliminary Claim Constructions; DE 86, Joint Claim Construction and Prehearing Statement.  IONpath argues that "Fluidigm had no factual testimony from IONpath that would shed light on likely infringement disputes."  DE 165, Motion to Preclude at 6.  But this completely ignores that IONpath's identified terms and proposed constructions pinpointed exactly that—*i.e.*, what issues IONpath considered to be not only important, but case dispositive, and how IONpath would attempt to distinguish the accused

1   products from the asserted patents.  *See, e.g.*, DE 86, Joint Claim Construction and Prehearing

2   Statement.

3           Indeed, in IONpath's first motion to strike Dr. Hieftje's report, IONpath repeatedly

4   asserted that Dr. Hieftje's opinions exceeded the bounds of Fluidigm's original Infringement

5   Contentions in response to IONpath's claim construction positions.  For example, in the

6   introduction to its earlier motion, IONpath stated:

7

8               Fluidigm has known since at least IONpath's original April 1, 2020
               invalidity contentions and IONpath's April 15, 2020 Patent Local Rule 4-1

9               Disclosures that IONpath contends that two limitations from the '698
               patent are governed by Section 112(6). And Fluidigm has known since at

10              least IONpath's May 6, 2020 Patent Local Rule 4-2 Disclosures what
               corresponding structure IONpath is proposing for those limitations.

11

12  DE 114, Motion to Strike at 3.  In other words, when IONpath filed its Motion to Strike in August,

13  it understood full well the intervening disclosures that contributed to Fluidigm and Dr. Hieftje's

14  developing infringement theories.  After the Court rejected IONpath's attempt to exclude these

15  opinions, IONpath changed its tune and is now asserting that IONpath's claim construction

16  disclosures apparently had nothing to do with Dr. Hieftje's opinions.

17          Second, IONpath made several productions totaling nearly 30,000 documents between

18  April 2, 2020 and July 22, 2020 (*i.e.*, between Fluidigm's Supplemental Infringement Contentions

19  and Dr. Hieftje's Expert Report).  Marshall Decl., ¶ 15.  Among these was an article that had been

20  published on March 23, 2020 in the journal *Laboratory Investigation*, co-authored by several

21  IONpath employees and which describes IONpath's use of the infringing MIBI system and

22  method to perform certain tissue sample analyses (the "LI Article").  Marshall Decl., Ex. 4, LI

23  Article.  The LI Article was first produced on June 24, 2020, and contains a detailed description of

24  the way in which IONpath's MIBI system functions.  *See generally id.*; Marshall Decl., ¶ 15.

25  IONpath's documents generally, and the LI Article in particular, provided further support for

26  Fluidigm and Dr. Hieftje's development of their infringement theories and opinions.  And Dr.

27  Hieftje quotes from and opines repeatedly on the LI Article in his infringement report.

28

1    Not to be overlooked as another important intervening event is the retention of Dr. Hieftje

2 itself.  IONpath feigns bewilderment that Fluidigm could have developed its infringement

3 positions between the time of its February contentions and service of Dr. Hieftje's Report on July

4 27, 2020.  But even if no other information was exchanged between the Parties, one would

5 reasonably expect that the retention of and consulting with an expert witness would, on its own,

6 lead to new, additional, and/or refined theories of the case.  And of course more information *was*

7 also exchanged between the Parties during this time period, as noted above.

8    IONpath has attempted to paint a picture wherein the only plausible explanation for the

9 opinions in Dr. Hieftje's Report (or at least the identified portions thereof) is reliance on the

10 IONpath Settlement Statement.  That is only the case if you ignore all of the contradictory

11 evidence, which is exactly what IONpath has done in its Motion to Preclude.

12    **C.    Nothing in Dr. Hieftje's Report Was Taken from or Relies on the Settlement
13          Statement.**

14    IONpath argues that Dr. Hieftje improperly used the Settlement Statement to form his

15 opinions, specifically with respect to the doctrine of equivalents and Section 112(6).  DE 165,

16 Motion to Preclude at 6.  IONpath is wrong.[4]

17    First, less than a page of IONpath's Settlement Statement is even devoted to any non-

18 infringement argument.[5]  Again, however, because of IONpath's strategic decision not to permit

19 any discussion of the Settlement Statement in connection with this Motion, Fluidigm is unable to

20 discuss in any greater detail what is—or perhaps more importantly, what is *not*—contained in the

21 statement, in order to rebut IONpath's claims of improper use.  In this regard, IONpath's decision

22 to withhold the Settlement Statement is perhaps unsurprising, as permitting the Court to see what

23

24 [4] And, again, the entire basis of IONpath's prior motion to strike is that Dr. Hieftje's report went
   beyond Fluidigm's infringement contentions in response to IONpath's claim construction
25 positions.  DE 114, Motion to Strike at 3.

26 [5] Lest IONpath attempt to argue that even this vague observation regarding the Settlement
   Statement is somehow improper, Fluidigm notes that IONpath itself has asserted that its
27 Settlement Statement was a "source of IONpath's non-infringement contentions," and Fluidigm
   should be permitted to respond at least in these equally generic terms.  *See* DE 165, Motion to
28 Preclude at 6.

1    is in the statement would certainly reveal the farce of IONpath's claims that anything therein could

2    have supported or led to the opinions of Dr. Hieftje that IONpath again seeks to exclude.

3          Additionally, the Parties' 408+ Agreement provides that Confidential Information under

4    that agreement does *not* include any of the following:

> (a) information that is independently developed or discovered by the
> receiving party without use of or reference to Confidential Information of
> the disclosing party; (b) information that is known to the receiving party
> prior to receipt from the disclosing Party, free of obligations of
> confidentiality and non-use; or (c) information that is or becomes
> generally available to the public that is not the result of any act or
> omission of the receiving party.

10   Marshall Decl., Ex. 1, 408+ Agreement at ¶ 3.  In other words, if information in the Settlement

11   Statement was or became available to Fluidigm (and/or Dr. Hieftje) from other sources, that

12   information could in fact be used for other purposes in the litigation.

13         While Dr. Hieftje lists the Settlement Statement among the materials he reviewed before

14   preparing his report, he never cites to the Settlement Statement at any point in his report.  *See, e.g.,*

15   *McLean v. Air Methods Corp.*, No. 1:12-CV-241-JGM, 2014 WL 280343 (D. Vt. Jan. 24, 2014).

16   In *McLean*, two of the defendants' experts reviewed the opposing side's confidential mediation

17   statement before submitting their reports.  *Id.* at *7.  Like Dr. Hieftje, both of the experts listed the

18   mediation statement as materials reviewed before forming their respective opinions.  *See* Marshall

19   Decl., Ex. 5, Report of Jonathan Muraskas, MD at 2, *McLean v. Air Methods Corp.*, No. 1:12-CV-

20   241-JGM (D. Vt. Oct. 29, 2013), ECF No. 75-12 (stating that "In arriving at my opinions, I have

21   reviewed the following documents . . . Plaintiffs' Mediation Statement and Supplemental

22   Mediation Statement"); Ex. 6, Report of Douglas E. Stimpson at 18-19, No. 1:12-CV-241-JGM

23   (D. Vt. Oct. 29, 2013), ECF No. 75-9) (listing the Plaintiffs' Early Neutral Evaluation Summary"

24   among "Materials Reviewed").

25         In distinguishing *Irwin Seating Co.* (also relied on heavily by IONpath), the court noted

26   that "neither Stimpson nor Dr. Muraskas cited the confidential materials in the body of their

27   reports."  *McLean*, 2014 WL 280343, at *7.  Indeed, in stark contrast to both *McLean* and the

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR
SANCTIONS FOR VIOLATION OF ADR RULE 7-4

1    present case, the experts in *Irwin Seating Co.* were provided not only the confidential mediation

2    statements, but also exhibits exchanged as part of the mediation process, and highlighting

3    provided by opposing counsel to indicate "those portions of the exhibits the defendants believed to

4    be most important." *Irwin Seating Co.*, 2006 WL 3446584, at *1.  At least one of the experts in

5    *Irwin Seating Co.* then "cite[d] to the mediation materials throughout the text of her opinion." *Id.*

6           Again, Dr. Hieftje never cites to the Settlement Statement in his expert report.  What Dr.

7    Hieftje does cite to, extensively (and particularly in those specific sections of the report IONpath

8    now again seeks to strike) are the very documents made available to Fluidigm and Dr. Hieftje

9    between Fluidigm's service of its February 2020 infringement contentions and the July 29 service

10   of Dr. Hieftje's report.  *See generally*, Marshall Decl., Ex. 8, Am. Hieftje Report.  Conducting an

11   electronic search of Dr. Hieftje's August 31, 2020 Amended Expert Report yields, in a 70-page

12   report:  81 hits for "LI Paper" and 82 hits for "IONPATH_" (*i.e.*, Bates-numbered documents

13   produced by IONpath in the litigation). Marshall Decl., ¶ 16; *id.* at Ex. 8, Am. Hieftje Report.

14   This count does not include "*id.*" citations, and thus actually grossly underestimates the extent to

15   which Dr. Hieftje relied on and cited to these materials that IONpath provided in discovery before

16   Dr. Hieftje submitted his report.  Dr. Hieftje also copied IONpath's proposed claim constructions

17   directly into his report, as identified by IONpath in the Parties' Joint Claim Construction and

18   Prehearing Statement.  Marshall Decl., Ex. 8, Am. Hieftje Report at ¶ 15.

19          Again, these materials contain far greater detail regarding both the way in which

20   IONpath's accused products function, and the non-infringement positions IONpath is asserting in

21   the lawsuit, than the minimal information contained in the Settlement Statement.  A few examples

22   of the paragraphs IONpath seeks to strike are instructive.  Paragraph 69 of Dr. Hieftje's report

23   provides:

24

25             If the Court were to find that the IONpath MIBI System does not literally
               meet this limitation, it is my opinion that it would be covered under the

26             doctrine of equivalents as it performs substantially the same function
               (sequentially analyzing cells), in substantially the same way (by

27             generating ionized atomic components and analyzing said components via
               mass spectrometry), and to substantially the same result (in order to detect

28

11

1

2

> metal tags affixed to antibodies indicating the presence of analytes of
> interest) as described in the '386 Patent.

3

4

Marshall Decl., Ex. 8, Am. Hieftje Report at ¶ 69.  Every piece of information relied on in this

5

paragraph is available from a source other than the Settlement Statement. *See, e.g.*, Marshall Decl.,

6

Ex. 4, LI Paper ("MIBI is performed by staining tissue with a panel of metal-labeled antibodies

7

and then imaging the tissue using time-of-flight secondary ion mass spectrometry.  The masses of

8

detected species are then assigned to target biomolecules given the unique metal isotope label of

9

each antibody, creating multiplex images"; "The MIBIscope rasters a primary ion beam across the

10

tissue liberating secondary ions that are mass filtered to preferentially enrich for the isotopes

introduced by the staining of the tissue with the metal-conjugated antibodies.").

11

Indeed, the various sections of Dr. Hieftje's report surrounding the paragraphs IONpath

12

seeks to strike detail exactly where from the publicly-available LI Paper, and other IONpath-

13

produced documents, Dr. Hieftje was able to identify the way in which the accused products

14

functioned.  *See, e,g.,* Marshall Decl., Ex. 8, Am. Hieftje Report at ¶¶ 81-83; 121-126; 132-138;

15

150-179; 184-204.  Dr. Hieftje also repeatedly discusses IONpath's proposed claim constructions

16

and how they inform his opinion.  *See generally id.*  The remainder of Dr. Hieftje's report,

17

including specifically those other paragraphs IONpath seeks to strike, contain similar citations and

18

analysis.  And again, these materials provide far greater detail in both breadth and depth than

19

anything contained in the Settlement Statement.

20

**IV.    IONpath's Motion is Untimely and Unfairly Prejudicial.**

21

Fluidigm served the expert report of Dr. Hieftje on IONpath on July 27, 2020 (the "Hieftje

22

Report").  Marshall Decl., ¶ 8; *id.* at Ex. 7, Hieftje Report.  In paragraph 3 of the July 27th Report,

23

Dr. Hieftje states that "In formulating my opinions, I have reviewed and considered the documents

24

and materials identified in this Report."  Marshall Decl., Ex. 7, Hieftje Report at ¶ 3.  Under a

25

heading of "Information Considered," Dr. Hieftje further stated that "my opinions in this

26

Independent Expert Report are based on my review of, at least . . . Defendant IONpath, Inc.'s

27

Exchanged Settlement Statement, dated May 19, 2020 . . . ."  *Id.* at ¶ 12.  This information forms

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR
SANCTIONS FOR VIOLATION OF ADR RULE 7-4

1  the entire basis of IONpath's Motion to Preclude, and it was fully available to IONpath *four*

2  *months* before it filed this Motion.

3        The week after receiving the Hieftje Report, IONpath filed a 21-page motion seeking to

4  strike (among other things) several portions of the report containing Dr. Hieftje's opinions on

5  several infringement theories ("Motion to Strike").  DE 114, Motion to Strike.  Nowhere in the

6  Motion to Strike does IONpath ever raise or otherwise address any concern or issue with Dr.

7  Hieftje's mention of the Settlement Statement.  *See generally id.*  With respect to the infringement

8  opinions of Dr. Hieftje, the Court denied IONpath's Motion to Strike and permitted Fluidigm to

9  serve amended infringement contentions including the infringement theories reflected in Dr.

10  Hieftje's Report, and an amended report for Dr. Hieftje addressing the other issues identified in

11  IONpath's motion.  DE 128, Order Re Timely Amendment of Patent Contentions.  Again, at no

12  point during this process did IONpath ever raise or mention the Settlement Statement.  Marshall

13  Decl., ¶ 17.  This is true despite the fact that the specific paragraphs IONpath now seeks to strike

14  from Dr. Hieftje's report are *the exact same paragraphs* IONpath sought to strike in the portion of

15  its Motion to Strike denied by the Court.  *Compare* ECF 114, Motion to Strike at 1, *with* ECF 165,

16  Motion to Preclude at 3 n.2 (each identifying in part or in full, Paragraphs 69-70, 82, 125-126,

17  137-138, 149, 153, 158-179, 194-202, and 204 of Dr. Hieftje's respective reports).

18        Pursuant to the Court's Order, Fluidigm served an amended report from Dr. Hieftje on

19  August 31, 2020 (the "Amended Hieftje Report").  Marshall Decl., ¶ 9; *id.* at Ex. 8, Am. Hieftje

20  Report.  In his amended Report, Dr. Hieftje included the same language Paragraphs 3 and 12

21  quoted, noting that the Settlement Statement was above the materials he had received and

22  reviewed prior to preparing and submitting his report.  Marshall Decl., Ex. 8, Hieftje Report at ¶¶

23  3, 12.  Again, IONpath said nothing on this issue for nearly three more months after receiving the

24  August 31st Hieftje Report.

25        IONpath cites the November 11-12, 2020 deposition of Dr. Hieftje as providing the

26  necessary information it required to bring this Motion to Preclude.  *See* DE 165, Motion to

27  Preclude at 1, 8.  This is disingenuous, at best.  With regard to the Settlement Statement, there is

28  nothing asked or testified to during Dr. Hieftje's deposition that contains any additional

1    information beyond what was in his expert reports.  The entire discussion regarding the Settlement

2    Statement consists of the following exchange:

3              Q.      . . . "Defendant IONpath's Exchanged Settlement Statement, dated
4              May 19, 2020."  Is that something that you reviewed and relied upon in
               forming your opinions in this case?
5
               A.      Yes, it is.
6

7    Marshall Decl., Ex. 9, Excerpts from Deposition of Gary Hieftje at 35:2-7.  The only other

8    discussion that even arguably touches on the Settlement Statement is a general question by

9    IONpath as to whether Dr. Hieftje "carefully considered" and "reviewed in detail" all of the

10   documents identified in his reports.  *Id.* at 30:3-31:4.  Dr. Hieftje testified that he did review most

11   of the documents in detail, qualifying that he did not "study them word for word."  *Id.*  IONpath

12   elected not to ask a single follow-up question beyond "did you review and rely upon this

13   document?".

14        IONpath's failure to ask any additional questions regarding the Settlement Statement is

15   significant for at least two reasons.  First, again, it shows that IONpath did not learn anything new

16   during the deposition regarding Dr. Hieftje's review of the Settlement Statement—nor does it

17   appear that IONpath expected or intended to learn anything new—and could have filed this

18   Motion to Preclude (or otherwise raised its concerns with Fluidigm) as early as July.  Second, just

19   as with IONpath's failure to attach or describe the Settlement Statement in this Motion, IONpath's

20   failure to develop any record of Dr. Hieftje's review of that document further evidences IONpath's

21   true goal here—not to develop a record of alleged prejudice or rectify a perceived wrong, but to

22   cause the most harm to Fluidigm's ability to litigate this case.

23        The timing of IONpath's filing of this Motion to Preclude is no accident.  Again, IONpath

24   did not file its motion after service of the Hieftje Report on July 27.  It did not seek the requested

25   relief in its August 3 Motion to Strike.  It did not file its motion after service of the Amended

26   Hieftje Report on August 31.  And it did not file its motion after the November 11-12 deposition

27   of Dr. Hieftje (presumably, if all IONpath was waiting for was a one-question confirmation of the

28   statements already made in Dr. Hieftje's reports, it could have had these papers ready to file

14

1   immediately after the deposition).  **Again, until the filing of this Motion to Preclude, IONpath**

2   **never raised this issue with Fluidigm, never asked for clarification regarding Dr. Hieftje's**

3   **review of the Settlement Statement, never requested that Fluidigm withdraw Dr. Hieftje's**

4   **report either in part or in full as a result of any alleged reliance thereon, or never raised this**

5   **issue in any other form in an attempt to resolve any alleged issue IONpath now raises in its**

6   **Motion.**  Marshall Decl., ¶ 17.  Instead, IONpath waited until 7:08 p.m. on Wednesday, November

7   25, 2020, the night before Thanksgiving and mere hours after Fluidigm filed its opening Motion

8   for Summary Judgment of Infringement—a motion IONpath knew would cite to the expert

9   opinion of Dr. Hieftje.

10          IONpath's delay in raising this issue also violates the terms of the Parties' 408+

11   Agreement, which requires that "Each party shall promptly notify the other of any . . . suspected

12   unauthorized use or disclosure of Confidential Information."  Marshall Decl., Ex. 1, 408+

13   Agreement at ¶ 1.  IONpath never notified Fluidigm of this suspected unauthorized use or

14   disclosure at all, let alone doing so "promptly."

15          Of course, in a way, IONpath has already prevailed.  Either it prevails on its Motion to

16   Preclude and succeeds in keeping out Fluidigm's expert opinion at a time when it is too late for

17   Fluidigm to substitute or replace such opinion, or IONpath loses on its Motion to Preclude but has

18   nonetheless succeeded in encumbering Fluidigm's time and effort during the exact period of time

19   when the Parties are engaged in response and reply filings on their respective summary judgment

20   papers (and hung an additional shroud over those very filings by its belated request to preclude Dr.

21   Hieftje's opinions supporting the same).  That ship has sailed, so to speak, but IONpath's

22   gamesmanship should not be further rewarded, and its Motion to Preclude should be denied.

23   **V.        Conclusion.**

24          IONpath is seeking drastic remedies, including the striking of Fluidigm's sole expert

25   supporting infringement and validity, either in whole or in part, and for additional monetary and

26   other unspecified sanctions.  In seeking this relief, IONpath has failed to show a violation of the

27   ADR Local Rules or the Parties' 408+ Agreement, failed to identify or even allow the Court to

28   consider what information IONpath alleges to have been improperly used by Dr. Hieftje in his

15

1   expert report, and ignored the myriad evidence that Dr. Hieftje indeed received, reviewed, and

2   relied on other, more thorough and revealing information than anything contained in the

3   Settlement Statement.  IONpath also sat on this motion for *four months* after first being on notice

4   of Dr. Hieftje's receipt of the Settlement Statement, in violation of the 408+ Agreement to

5   promptly raise any such concerns, and filed this Motion to Preclude at the exact time intended to

6   ambush and inflict the most harm on Fluidigm.  For all of the reasons stated herein, IONpath's

7   Motion to Preclude should be denied in its entirety.

Dated: December 14, 2020

By:    */s/ Jason S. Meyer*

K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
Nick E. Williamson (appearance *pro hac vice*)
Jason S. Meyer (appearance *pro hac vice*)
George G. Brell (SBN 281342)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO 63102
Telephone: (314) 259-2000
daroodman@bclplaw.com
nick.williamson@bclplaw.com
jason.meyer@bclplaw.com
george.brell@bclplaw.com

*Attorneys for Plaintiffs*
*Fluidigm Corporation and Fluidigm Canada Inc.*

16

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on December 14, 2020, I electronically filed the above document with

3

the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4

registered counsel.

5

Dated:   December 14, 2020                    By:   */s/ Jason S. Meyer*                                

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE AND/OR STRIKE AND FOR
SANCTIONS FOR VIOLATION OF ADR RULE 7-4