REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

K. Lee Marshall (SBN 277092)
Abigail Cotton (SBN 306121)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4078
Telephone: (415) 675-3444
klmarshall@bclplaw.com
abby.cotton@bclplaw.com

David A. Roodman (appearance *pro hac vice*)
Nick E. Williamson (appearance *pro hac vice*)
Jason S. Meyer (appearance *pro hac vice*)
George G. Brell (SBN 281342)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 36th Floor
St. Louis, MO  63102
Telephone: (314) 259-2000
daroodman@bclplaw.com
nick.williamson@bclplaw.com
jason.meyer@bclplaw.com
george.brell@bclplaw.com

Attorneys for Plaintiffs
*Fluidigm Corporation and Fluidigm Canada Inc*.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, a Delaware corporation; and FLUIDIGM CANADA INC., a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:19-cv-05639<br><br>**PLAINTIFFS FLUIDIGM CORPORATION'S & FLUIDIGM CANADA INC.'S OPPOSITION TO DEFENDANT IONPATH'S MOTION TO LIMIT EXPERT TESTIMONY TO ACCUSED PRODUCTS** |

## **TABLE OF CONTENTS**

I. The Infringing MIBIscope System and Method. ....................................................................1

II. Fluidigm Has Consistently Accused the MIBIscope of Infringement. ...................................2

    A. Fluidigm's Complaints. ................................................................................................ 2

    B. Fluidigm's Infringement Contentions Are Appropriate, Consistent & Sufficient. ........ 4

    C. IONpath's Reliance Upon Fluidigm's Discovery Is Wholly Misplaced. ...................... 8

III. Fluidigm's Expert Disclosures Do Not Exceed Fluidigm's Infringement Contentions. .........9

IV. There Is No Prejudice to IONpath, Much Less Any Undue Prejudice. .................................10

V. There Is No Justification For an Award of Fees to Ionpath. ..................................................12

# TABLE OF AUTHORITIES

**Cases**

*ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) .................................................................................................. 7

*Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013 (N.D. Cal. 2020) ................................... 8

*Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016) .......................................................................................................................................... 6, 7

IONpath's Motion relies upon inaccurate and incomplete statements in an effort to reduce the scope of its infringement.  As established below, while IONpath erroneously contends that Fluidigm's allegations are somehow limited to a single embodiment of its infringing MIBI method and product that existed after November 5, 2019, the facts overwhelmingly belie the argument.  Indeed, most tellingly, Fluidigm's Complaint -- *filed two months earlier, on September 6, 2019* -- expressly states that IONpath "adopted and is using Fluidigm's patented methods and systems", "is selling its infringing products and systems in the marketplace," and "seeks redress for IONpath's past infringement … ." ECF 1, ¶¶ 7-8.  IONpath has had full knowledge of the scope of its infringing accused method and systems since the outset of this case.  And the Complaints, contentions, expert reports, documents, discovery, and other evidence, establish not only that Fluidigm did not limit the scope of its allegations, but also that IONpath fully understood the scope of Fluidigm's allegations.  IONpath's Motion reeks of gamesmanship seeking to engineer alleged surprise and prejudice where there is none.  IONpath's Motion should be denied.

## I. THE INFRINGING MIBISCOPE SYSTEM AND METHOD.

To be clear, for purposes of this lawsuit, there has been and is only one MIBIscope system and method.  While IONpath has tweaked and modified certain aspects of its infringing MIBIscope system and method (for example, using different ion beam sources), none of those modifications are germane to the claim elements, limitations, and infringement allegations.  That IONpath identifies and now relies upon "alpha," "beta," and so-called "commercial" versions of the infringing MIBIscope system and method is of no event, as the nomenclature does not refer to different methods, systems, or product lines, rather, they simply refer to iterations of the same infringing system and method.

Notably, there are no model numbers or trademarks to distinguish any purported variations of the accused MIBIscope.  Indeed, like Fluidigm's infringement contentions, IONpath's own materials use IONpath's only identifier for its product -- MIBIscope -- to refer to *all of its instruments* (regardless of whether it is or was an alpha, beta, or part of its so-called commercial launch). *See, e.g.,* Ex. 1 (IONPATH_0039014) at -17 ("The MIBIscope is a dynamic secondary ion mass spectrometer (SIMS) instrument"), -24 ("One limitation of the current project performed

with an earlier version of the MIBIscope … The current MIBIscope"); Ex. 2 (IONPATH_0000037) at -37 ("The MIBI Technology platform, with its flagship MIBIscope™ system …"); Ex. 3 (IONPATH_0000532) at -33 ("IONpath Announces Commercial Launch of MIBIscope™"), -36 ("The [2018 *Cell* paper] leveraged IONpath's MIBIscope™ instrument …"); Ex. 4 (Research Services Brochure) at p.4 ("All imaging is done with the proprietary MIBIscope™ system"); Ex. 5 (Research Services website) ("By leveraging our proprietary MIBIscope™ multiplexed imaging platform …").  Fluidigm properly used and referred to the trademark product name by which IONpath refers to all of its MIBIscopes.

## II. FLUIDIGM HAS CONSISTENTLY ACCUSED THE MIBISCOPE OF INFRINGEMENT.

Fluidigm has consistently accused each and every MIBIscope of infringement regardless of when it was made.  There is no ambiguity to Fluidigm's allegations or contentions, and IONpath cannot in good faith feign surprise.

### A. Fluidigm's Complaints.

From the outset, each of Fluidigm's initial and amended Complaints clearly allege that every IONpath MIBIscope infringes the asserted patents.  Fluidigm's September 6, 2019 original Complaint expressly states that IONpath, through the use and sale of its MIBIscope, was and had for some time been infringing the asserted patents.  Indeed, Fluidigm's Complaint specifically identifies a 2018 IONpath Press Release celebrating a *Cell* article which describes the operation of the infringing MIBIscope product and services. ECF 1, ¶¶ 68, 92-97; *see also* Ex. 4 at -36.  Fluidigm's Complaint expressly alleges that, "[o]n information and belief, by August 2019 [*three months before IONpath's November 2019 so-called and self-described commercial launch*], IONpath has sold at least six, and possibly more, of its infringing MIBIscopes (and potentially reagents) to various institutions." ECF 1, ¶ 80.  These six identified sales directly correspond to the beta MIBIscopes IONpath commercially sold to its initial development partners (ECF 190 at 3), and which sales and/or uses infringe upon the asserted claims.  The Complaint contains numerous and repeated allegations that IONpath's use and sales of the MIBIscope, including before the so-called November, 2019, commercial launch, were infringing.  *See* ECF 1, ¶¶ 66-76,

80, 92-97, 103-106, 111-113.

Fully consistent, IONpath's First Amended Complaint (filed October 11, 2019 – *again prior to November, 2019*) makes the same, as well as additional, infringement allegations covering IONpath's pre-November, 2019 uses and sales. *See* ECF 13, ¶¶ 74-84, 88, 100-105, 111-114, 119-121, 156-161, 167-170, 175-177.

Fluidigm's Second Amended Complaint also leaves no doubt. Filed March 30, 2020 (approximately one month *after* Fluidigm filed its initial and amended infringement contentions), Fluidigm's Second Amended Complaint maintains the same broad scope of allegations that were in Fluidigm's initial and First Amended Complaints. It also adds new, consistent, material making clear that all of IONpath's MIBIscope products are accused of infringement. *See, e.g.*, ECF 59[1], ¶¶ 75 ("On information and belief, in 2017, IONpath first offered for sale and sold *the MIBIscope product* to researchers who were previously associated with Dr. Nolan's lab at Stanford University. Dr. Nolan's lab at Stanford University also acquired from IONpath and used a *MIBIscope product* prior the IONpath's official commercial launch."), ¶ 76 ("At the time IONpath *first began offering the infringing MIBIscope product* and system for sale, prior to its full commercial launch in November 2019 …"), ¶ 90 ("The 2018 Press Release also asserted that IONpath was piloting its '*MIBIscope*' with "research institutes and biopharmas . . ."), ¶ 105 ("In February 2019, Fluidigm learned that IONpath had contacted at least one of Fluidigm's customers, on information and belief, in an effort to demonstrate *IONpath's MIBIscope* and reagents, and teaching them how to infringe upon the '386 and '104 Patents, and to sell the infringing technology, which would be the system infringing on the '698 Patent."), ¶ 106 ("On information and belief, *by August 2019, IONpath had sold at least six, and possibly more, of its infringing MIBIscopes* (and potentially reagents) to various entities."), ¶ 110 ("Several other research institutions attended and presented research at the 2019 SITC Meeting that was conducted *using IONpath's infringing MIBIscope*, including the Dana-Farber Cancer Institute, Stanford University, and the University of Colorado, Denver."). Fluidigm's Second Amended Complaint maintains the same broad allegations against each and every MIBIscope found in the previous

---

[1]   All emphasis added unless otherwise noted.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO LIMIT EXPERT TESTIMONY

complaints. *See id.* ¶¶ 74-76, 82-87, 88-98, 101-104, 105-120, 135-141, 147-157, 162-165, 207-213, 219-229, 234-237.

There is no ambiguity: IONpath has always known that Fluidigm has consistently accused each and every MIBIscope of infringing its patents.

**B. Fluidigm's Infringement Contentions Are Appropriate, Consistent & Sufficient.**

Fluidigm's infringement contentions encompass all of the infringing MIBIscope products, including those made, used, offered for sale, and sold prior to November 5, 2019.[2] While IONpath mischaracterizes two paragraphs of Fluidigm's infringement contentions to attempt to redefine the scope of its identified infringement, it also elects to ignore large swathes of the same document. *See generally* Ex. 6 (Fluidigm's Second Amended Infringement Contentions).

First, contrary to IONpath's argument, Fluidigm's contentions do not "specifically define" the term MIBIscope to be limited to those manufactured, used, offered for sale, and sold on or after IONpath's November 5, 2019 so-called commercial launch. As reflected above, IONpath began "commercially" using and selling its infringing MIBIscope long prior to November 5, 2019. The language IONpath relies upon simply provides that the "Accused Products *include* the MIBIscope instrument as commercially launched on IONpath's website *at least as early as* November 5, 2019." Ex. 6 at 2. The statement does not "*exclude*" MIBIscope instruments made, used, offered for sale, and sold prior to that date. And, importantly, as IONpath's expert witness concedes, the MIBIscope made, used, offered for sale, and sold by IONpath on November 5, 2019, had no material differences -- *for purposes of infringement* -- than those made, used, offered for sale, and sold on January 15, 2019 (the issue date of the '386 Patent). *See* Ex. 7 (Winograd Depo.) at 42:5-18 ("[Q.] And is there anything about your opinions on noninfringement that changes depending on the particular version of the MIBIscope at issue? … A. Not that I can recall. … [Q.] are there any additional reasons why you think one version may not infringe that are different than the reasons why you think another version does not infringe? … A. No."). While IONpath seeks to contort Fluidigm's disclosure to omit earlier commercially-sold and -used MIBIscopes, the

---

[2] The accused system covered by the claims of the '698 Patent is the MIBIscope, and the infringing method employed using the MIBIscope is covered by the '386 Patent.

4
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO LIMIT EXPERT TESTIMONY

identification and balance of the disclosure does no such thing.

Second, IONpath's attempt to redefine the Accused Products to exclude any MIBIscopes made, used, offered for sale, or sold prior to November 5, 2019, is also wholly inconsistent with the balance of Fluidigm's Infringement Contentions. For example, Fluidigm's contentions expressly contend that third-parties to whom IONpath sold and/or provided MIBIscopes – including prior to November 2019 – had infringed and were infringing the patents by "using and/or operating a MIBIscope and/or MIBI System … : Stanford University, Dana-Farber Cancer Institute; University of Colorado, Denver; University of Minnesota; Mount Sinai Health System; University of Texas MD Anderson Cancer Center; University of California, San Francisco; Bluebird Bio; NIH – National Institute of Allergy & Infectious Diseases; and, Memorial Sloan Kettering Cancer Center." Ex. 6 at 8. ███████████████████████████████████████

| Party | MIBIscope(s) |
|---|---|
| Stanford University | ███████ |
| University of Colorado, Denver | ███████ |
| Dana-Farber Cancer Institute | ███ |
| Memorial Sloan Kettering Cancer Center | ███ |
| Mount Sinai Health System | ███ |
| University of California, San Francisco | ███████ |
| University of Minnesota | ███████ |
| University of Texas MD Anderson Cancer Center | ███████ |

███████████████████████████████

To be certain, the contentions explain that "[c]ertain MIBI Users identified to date, namely Stanford University, Dana-Farber Cancer Institute, and University of Colorado, Denver … presented [MIBIscope results] at the Society for Immunotherapy of Cancer Annual Meeting (SITC) held November 6, 2019 through November 10, 2019" – indisputably contending that the infringing products and conduct (using the claimed method of the '386 Patent) occurred prior to

5
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO LIMIT EXPERT TESTIMONY

the so-called November, 2019, launch. Ex. 6 at 8. If Fluidigm had, *arguendo*, defined MIBIscope to be limited to the products sold after November 5, 2019 (which it did not), the above-cited contentions would be incoherent.

Third, Fluidigm's infringement contentions also present significant evidence of indirect infringement, the majority accusing IONpath's pre-November, 2019 MIBIscopes and services of infringement. *See id.* at 9-13 (identifying MIBI webinars, the 2018 *Cell* paper, other 2019 and 2020 articles based on earlier-collected data). The claim charts attached to Fluidigm's infringement contentions also appropriately identify pre-November, 2019, publications and conduct evidencing infringement. *See, e.g.*, Ex. 6, App'x A at 20, 32 (citing Ex. 10 (2014 *Nature Med.* article)), 8, 26, 38 (citing Ex. 11 (2018 *Cell* article)), 46, 51, 53-54 (citing Ex. 12 (2019 *Science Med.* article).[3]

Lastly, and unmentioned by IONpath, Fluidigm accuses not only the manufacture, offer for sale, and sale of all of the infringing MIBIscopes, but also IONpath's use of the claimed method of the '386 Patent to provide research services to partner organizations "in which IONpath provides custom research using the MIBIscope." Ex. 6 at 6. Even if, *arguendo*, the Court were to find that Fluidigm has not accused the sale of each and every MIBIscope, Fluidigm has plainly accused IONpath's Research Services regardless of any purported variation. Fluidigm's allegations and contentions make clear that all such services are accused.

As for the cases IONpath relies upon, both are off the mark. *Finjan* turns on two factual circumstances that are entirely absent here. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016). First, *Finjan* involved a situation wherein the plaintiff identified specific products as infringing only some (but not all) patents asserted in the litigation and later attempted to argue that identifying those products for a subset of patents was sufficient to allege infringement as to all patents. *Id.* at *2 ("Plaintiff's identification of TAP, Enterprise Protection, and Essential for other patents (and not these) supports a reasonable

---

[3] IONpath suggests that Fluidigm should have amended its infringement contentions when it filed amended contentions on August 31, 2020. But as IONpath recognizes, Fluidigm's contentions already plainly encompassed all MIBIscope products. Further, the August amendment was the result of a Court ruling that specified a narrow revision. ECF 190 at 4.

inference that Plaintiff intended to limit its accusation for the '086, '154, and '918 Patents to HackAlert and SafeImpression."). Plainly, no such facts exist here. Second, the *Finjan* decision appears to rely on a determination that "incorporat[ing]" additional technology "into an existing [accused] product … has created a new, separate product," and that accusing new products was impermissible. *Id.* But Fluidigm is not accusing any new products, incorporating new technology, into accused products. Rather, Fluidigm is simply accusing the same MIBIscope product of infringement, regardless of whether IONpath may have made, used, offered for sale, or sold the same product (MIBIscope) having slightly, irrelevant, differences as unmarked alpha, beta, or so-called commercial versions.

The *ASUS* case IONpath relies upon is similarly distinguishable. *See ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014). The Court in that case rejected three arguments as to why the disputed products were allegedly covered. *Id.* at *6. First, the court rejected an identification of products that include a specific feature or practice an industry standard. *Id*. Here, however, Fluidigm has accused a specific product: the MIBIscope, the trademarked product name by which IONpath itself indiscriminately refers to each of the so-called "generations" at issue. Second, the Court rejected an identification of differently-named products that are "substantially similar." *Id.* Again, no such facts exist here. Fluidigm accuses a singularly-named product. Lastly, the Court rejected the identification of a "line or series of products." Id. at *7. Here, the accused MIBIscope is not a "line or series of products." The ASUS case also assumes that such information is known or available to the plaintiff (allowing the assumption that accusing a specific model-numbered product (*e.g.,* model number "N61DA") implies not accusing another known specific model-numbered product (*e.g.*, model number "N61V"). But IONpath has made no argument and presented no evidence that Fluidigm had knowledge or the ability to identify by name or product number any different models of the MIBIscope, as there are no different models. The fact that IONpath itself refers to all such products indiscriminately as "MIBIscopes" alone evidence that Fluidigm properly identified the products in the same manner IONpath uses.

Fluidigm correctly and appropriately provided infringement contentions identifying

1  IONpath's singular infringing product, the MIBIscope. In support of that allegation, it provided
2  evidence which describes the operation of all MIBIscopes, whether alpha, beta, or so-called
3  commercial MIBIscopes. IONpath is attempting to latch onto a singular word in the contentions
4  to concoct an alternate reality where, despite Fluidigm providing a variety of evidence of
5  infringement prior to November 5, 2019, IONpath seeks to obviate such allegations. Granting
6  IONpath's eleventh hour motion would only encourage further gamesmanship.

### C. **IONpath's Reliance Upon Fluidigm's Discovery Is Wholly Misplaced.**

8  IONpath's reliance upon the fact that Fluidigm used the word "commercially available" in
9  certain discovery requests is completely off-the-mark. ECF 190 at 5.

10  First, of course, Fluidigm's discovery requests do not define the scope of its infringement
11  allegations and Fluidigm is entitled to seek any information relevant to its claims. Interestingly,
12  IONpath's own Motion argues that the clear disclosures of Fluidigm's Complaints should be
13  disregarded because: "In this district, the Patent Local Rule 3-1 infringement and invalidity
14  contentions set the metes and bounds of the suit." *Id.* at 10 n. 7 (quoting *Bot M8 LLC v. Sony*
15  *Corp. of Am.*, 465 F. Supp. 3d 1013, 1028 (N.D. Cal. 2020)). Yet, IONpath seeks to seize upon
16  discovery requests to somehow limit Fluidigm's contentions. IONpath cannot have it both ways.
17  And, as detailed above, Fluidigm's infringement contentions include allegations encompassing
18  alpha, beta, and so-called commercial MIBIscopes, setting the metes and bounds of the suit
19  regardless of the scope of later-served discovery.

20  Second, the fact that Fluidigm sought discovery regarding MIBIscopes that were
21  commercially available, offered for sale, or sold, does not support IONpath's argument that
22  "commercially available" is limited to MIBIscopes offered after November 5, 2019. The term
23  "commercially available" was not defined by Fluidigm and is/was used in its ordinary manner –
24  meaning, any MIBIscopes that were commercially available or offered for sale. IONpath's
25  strained attempt to impute a defined meaning to "commercially available" is absurd. Had
26  Fluidigm sought to define the words commercially available to be limited to post-November 5,
27  2019 sales, it would have so stated. Indeed, the fact that Fluidigm defined the Accused Products
28  by reference to its infringement contentions (which accuse each and every MIBIscope) made clear

1  that it was not limiting its allegations to only MIBIscopes sold after November 5, 2019. And
2  IONpath's own responses to Fluidigm's discovery show that it understood this broad scope;
3  ████████████████████████████████████████
4  ████████████████████████████████████████
5  ████████████████████████████████████████

6  Third, IONpath's argument that it conspicuously limited its discovery responses to a
7  definition of "commercially available" that only encompasses MIBIscopes available after
8  November 5, 2019, is belied by its responses. Nowhere does IONpath's responses clearly or
9  conspicuously reflect that it interpreted or redefined the words "commercial" or "commercially
10 available." *See* ECF 190 at 5 (providing exemplary responses). If that was indeed IONpath's
11 intent, it should have unambiguously so stated – so Fluidigm could have addressed and objected to
12 IONpath's failure to disclose relevant evidence. Fluidigm never understood IONpath's responses
13 to be so limited. Every MIBIscope IONpath offered for sale, sold, and commercially used was
14 both "commercial" and an accused instrumentality. IONpath's statement in its discovery
15 responses that, for example, it "has sold one or more commercial MIBIscope instruments" – did
16 not in any way limit the response, or put Fluidigm on notice that IONpath intended to limit its
17 response, to sales made after November 5, 2019. *See* ECF 190 at 5. IONpath's gamesmanship and
18 attempt to perform wordsmithing now to support its Motion and apparent failure to provide
19 appropriate, responsive, discovery responses should not be condoned. If IONpath genuinely
20 intended to limit its discovery responses to MIBIscopes that were commercially offered for sale
21 and sold after November 5, 2019, it did a masterful job of disguising it.

## III. FLUIDIGM'S EXPERT DISCLOSURES DO NOT EXCEED FLUIDIGM'S INFRINGEMENT CONTENTIONS.

As discussed above, Fluidigm's infringement contentions accuse each and every MIBIscope. Under that aegis, Fluidigm's proposed disclosure of expert testimony as to:

> The applicable structure, nature, use, methods, and operation, of the accused MIBI, MIBI system(s), and/or MIBI method(s) (e.g., "Alpha" version of the MIBIscope instrument (such as "Agnes"), "Beta" or "Early Access" version of the MIBIscope instrument (such as "Helen"), current and/or "Commercial" version of the MIBIscope instrument, MIBItag reagents and conjugation kits, and IONpath Research Services) (individually and collectively, "Accused Instrumentalities").

is entirely appropriate.  ECF 190-6 at 2.  All of the identified instruments comprise the accused MIBIscope and any differences between alpha, beta, or so-called "commercial" versions are insubstantial or irrelevant to infringement (as already opined by both parties' experts, *see supra & infra*).

**IV. THERE IS NO PREJUDICE TO IONPATH, MUCH LESS ANY UNDUE PREJUDICE.**

IONpath has not suffered any alleged prejudice.  Fluidigm has from the outset clearly and plainly accused IONpath's MIBIscope system and services of infringement (via both the system claims of the '698 Patent and the method claims of the '386 Patent).  There has never been any ambiguity.  Rather, as reflected by IONpath's disingenuous argument regarding its apparent carefully couched and disguised discovery responses, it is seeking to inappropriately limit its infringement exposure by feigning surprise.  Just as there has never been any ambiguity that every MIBIscope sold and used after January 15, 2019 is accused of infringement, IONpath is not surprised or prejudiced in any manner.  To the contrary, IONpath's eleventh-hour attack on the scope of Fluidigm's proposed expert witness testimony is the legitimate surprise.  It is only Fluidigm that will be prejudiced should the Court entertain granting IONpath's ill-founded Motion.

The untimely and prejudicial nature of IONpath's supposed surprise is also made clear by the fact that Dr. Hieftje, Fluidigm's expert, tendered his opinions as to the MIBIscope's infringement (with no limitation as to date or commercial availability) on July 27, 2020.  *See* Ex. 15 (Hieftje Report).  In his Report, Dr. Hieftje relies on multiple documents that discuss the operation of "the MIBIscope" (no further identification), (*see, e.g.*, Ex. 16 (Amended Hieftje Report[4]), ¶ 35 (citing Ex. 1 (IONPATH_0039014)), ¶¶ 48-49 ( ▮▮▮▮▮ ▮▮▮▮▮ )), ¶ 42 (citing Ex. 18 (IONpath Poster)), but which IONpath now erroneously argues refer specifically and only to alpha and beta MIBIscopes.  *See* ECF 178 at 4-5.  IONpath cannot, with a straight face, simultaneously argue that it was unaware of the scope of Fluidigm's infringement allegations while also arguing that evidence relied upon by Fluidigm and

---

[4] Dr. Hieftje amended his report on August 31, 2020.  None of the opinions/evidence referenced herein changed between his initial and amended Reports.

1 its expert should be disregarded because it refers to alpha and beta MIBIscopes. IONpath's
2 alleged "surprise" is also undercut by the fact that at Dr. Hieftje's deposition on November 11-12,
3 2020, IONpath specifically questioned him regarding his infringement opinions as to the alpha and
4 beta MIBIscopes and were present for re-direct where Dr. Hieftje specifically commented that his
5 infringement opinion was the same as to each MIBIscope. *See* Ex. 19 (11/11/20 Hieftje Depo.) at
6 54:1-63:11; Ex. 20 (11/12/20 Hieftje Depo.) at 296:13-302:20, 381:21-395:9; *see also* ECF 190 at
7 7 n.6 (admitting that IONpath deposed Dr. Hieftje on differences between the MIBIscopes). There
8 is no surprise.

9 IONpath's own papers also admit that it was aware of the scope of Fluidigm's
10 infringement allegations. For example, IONpath's Motion admits that Fluidigm pursued
11 information regarding the different versions as early as August 2020. *See id.* at 3 n.3. ▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And, when deposed, Dr.
14 Winograd unquestionably admitted that there are no material differences between IONpath's
15 various MIBIscopes for purposes of his infringement analysis. *See* Ex. 7 (Winograd Depo.) at
16 42:5-18 ("[Q.] And is there anything about your opinions on noninfringement that changes
17 depending on the particular version of the MIBIscope at issue? … A. Not that I can recall. … [Q.]
18 are there any additional reasons why you think one version may not infringe that are different than
19 the reasons why you think another version does not infringe? … A. No."); *see also* ECF 183 at 1-2
20 & n.3. Dr. Winograd's testimony fully undercuts IONpath's argument that it "will be forced to go
21 back and revisit its analysis through this new lens" as both experts have already opined on the
22 exact subject it contends is newly raised. ECF 190 at 11.

23 IONpath's belated attempt to distinguish its infringing MIBIscopes is wholly unavailing.
24 ECF 190 at 9. Fluidigm's infringement contentions identify the same steps and elements present
25 and performed in all of the infringing MIBIscopes. *See, e.g.*, Ex. 6, App'x A. With respect to the
26 three differences IONpath alleges, none are relevant to or impact its infringement (and IONpath
27 has not even attempted to articulate a non-infringement position reliant on such differences).
28 Every MIBIscope employs an ion gun and even IONpath's own expert, Dr. Winograd, concedes

11
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO LIMIT EXPERT TESTIMONY

that any differences between the ion sources used in the MIBIscopes does not impact the infringement analysis. Ex. 7 at 41:8-42:1 ("Q. And is – is there anything about the ion beams that are in these three different instruments that give you any additional reason why one version has an additional reason why it does not infringe in your opinion? … A. No, if I understand you correctly. I mean the – the ion beam is simply being optimized. It doesn't change the concept of the machine." … [Q.] So there's nothing about your opinions or your infringement or noninfringement analysis that changes based on the type of ion beam that is used; is that correct?) A. That's correct."). The other two variations IONpath alleges, data acquisition methods and control systems, are also inapplicable to the infringement analysis. *See id.* at 42:5-18.

To the extent IONpath and its experts have failed to address all accused products, that represents only a tactical decision. That IONpath allegedly now realizes it has failed to adequately defend itself against Fluidigm's allegations is not undue prejudice, it is merely the predictable consequence of IONpath's actions.

**V.   THERE IS NO JUSTIFICATION FOR AN AWARD OF FEES TO IONPATH.**

IONpath's request for fees relies entirely on its allegation that Fluidigm "first expanded its list of accused instruments as part of its showdown motion." ECF 190 at 11-12. But, as discussed above, Fluidigm has consistently and repeatedly accused each and every MIBIscope of infringement and IONpath has long been aware of Fluidigm's allegations. Contrary to IONpath's arguments, this is not a late attempt to expand the scope of the case. IONpath was fully aware that earlier MIBIscopes were accused of infringement since at least the filing of Fluidigm's initial Complaint. IONpath's decision to file this motion on short notice, while the parties are working feverishly to finish discovery, on an issue it has been aware of from the outset, weighs in favor of granting Fluidigm its fees and costs, not IONpath.

|   |   |
|---|---|
| 1 | Dated: January 19, 2021 |
| 2 | By:   */s/* K. Lee Marshall |
| 3 | K. Lee Marshall (SBN 277092)<br>Abigail Cotton (SBN 306121)<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111-4078<br>Telephone: (415) 675-3444<br>klmarshall@bclplaw.com<br>abby.cotton@bclplaw.com |
| | David A. Roodman (appearance *pro hac vice*)<br>Nick E. Williamson (appearance *pro hac vice*)<br>Jason S. Meyer (appearance *pro hac vice*)<br>George G. Brell (SBN 281342)<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>One Metropolitan Square, 36th Floor<br>St. Louis, MO 63102<br>Telephone: (314) 259-2000<br>daroodman@bclplaw.com<br>nick.williamson@bclplaw.com<br>jason.meyer@bclplaw.com<br>george.brell@bclplaw.com |
| | *Attorneys for Plaintiffs*<br>*Fluidigm Corporation and Fluidigm Canada Inc.* |

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated:   January 19, 2021                                     By:   */s/ George G. Brell*