WILMER CUTLER PICKERING
  HALE AND DORR LLP
SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Telephone:    (650) 858-6000
Facsimile:    (650) 858-6100

OMAR A. KHAN (*pro hac vice*)
Omar.Khan@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone:    (212) 230-8800
Facsimile:    (212) 230 8888

JOSEPH TAYLOR GOOCH (SBN 294282)
Taylor.Gooch@wilmerhale.com
JOSHUA D. FURMAN (SBN 312641)
Josh.Furman@wilmerhale.com
One Front Street, Suite 3500
San Francisco, California 94111
Telephone:    (628) 235-1000
Facsimile:    (628) 235-1001

*Attorneys for Defendant*
IONpath, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLUIDIGM CORPORATION, A DELAWARE CORPORATION; AND FLUIDIGM CANADA INC., A FOREIGN CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IONPATH, INC., A DELAWARE CORPORATION,<br><br>Defendant. | Case No. 3:19-cv-05639-WHA<br><br>**REPLY IN SUPPORT OF DEFENDANT IONPATH, INC.'S MOTION TO LIMIT EXPERT TESTIMONY TO ACCUSED PRODUCTS**<br><br>Date:    February 11, 2021<br>Time:    8:00 a.m.<br>Ctrm.:   12<br>Judge:   Hon. William Alsup |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FLUIDIGM'S OPPOSITION CONFIRMS THAT THE COMMERCIAL
        MIBISCOPE IS THE ONLY ACCUSED INSTRUMENT .................................... 2

        A.      There Are Three IONpath Instruments ................................................... 2

        B.      Fluidigm Accused Only One Of Three IONpath Instruments ..................... 5

        C.      Fluidigm's *Pleadings* Do Not Change The Scope Of Its *Contentions* ......... 6

        D.      Fluidigm Cites No Case Law That Affirmatively Supports Its Position ..... 7

        E.      IONpath's Discovery Responses Cannot Change Fluidigm's Infringement
                Contentions .......................................................................................... 9

        F.      Fluidigm Has Not Rebutted IONpath's Prejudice Showing ...................... 10

        G.      IONpath's Request For Fees Is Warranted ............................................. 11

III.    CONCLUSION .................................................................................................... 11

REPLY ISO DEFENDANT'S MOTION TO LIMIT
                                                                                EXPERT TESTIMONY TO ACCUSED PRODUCTS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ASUS Comput. Int'l v. Round Rock Research LLC*,
    No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)................2, 8

*Avago Techs., Inc. v. IPtronics Inc.*,
    No. 5:10-cv-02863-EJD, 2015 WL 4647923 (N.D. Cal. Aug. 5, 2015)...........................10

*Bot M8 LLC v. Sony Corp. of Am.*,
    465 F. Supp. 3d 1013 (N.D. Cal. 2020) ........................................................................1, 7

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)..............................6

*Fluidigm Corp. v. IONpath, Inc.*,
    No. C 19-05639 WHA, 2020 WL 5073938 (N.D. Cal. Aug. 25, 2020)............................6

*Geovector Corp. v. Samsung Elecs. Co. Ltd.*,
    No. 16-cv-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017)..................................6

*Netflix, Inc. v. Rovi Corp.*,
    No. 11-cv-06591-PJH (DMR), 2015 WL 5752432 (N.D. Cal. Apr. 6, 2015) ....................1

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)............................1

*San Disk Corp. v. Round Rock Research LLC*,
    No. C 11-5243 RS, 2014 WL 2700853 (N.D. Cal. June 13, 2014) ..................................10

*Uniloc USA, Inc. v. Apple Inc.*,
    No. C 18-00360 WHA, 2018 WL 3219486 (N.D. Cal. July 2, 2018) ................................6

**RULES**

Patent L.R. 3-1 .................................................................................................................................1

Patent L.R. 3-1(b).......................................................................................................................1, 5, 6

Patent L.R. 3-1(d)...........................................................................................................................5

Patent L.R. 3-4 .................................................................................................................................3

    REPLY ISO DEFENDANT'S MOTION TO LIMIT
EXPERT TESTIMONY TO ACCUSED PRODUCTS

# I.      INTRODUCTION

The operative infringement contentions are the beginning and end of the scope of accused products in this case.  *See Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1028 (N.D. Cal. 2020) ("In this district, the Patent Local Rule 3-1 infringement and invalidity contentions set the metes and bounds of the suit.").   IONpath's opening brief established that each and every version of Fluidigm's infringement contentions expressly and specifically identifies the commercial MIBIscope—and only the commercial MIBIscope—as an accused instrument:

> **Specifically, the Accused Products include the MIBIscope instrument as commercially launched on IONpath's website at least as early as November 5, 2019.  *See* http://www.ionpath.com/news/.**

Mot. 3–5; Dkt. 190-3 at 3, Dkt. 190-4 at 3, Dkt. 190-5 at 2.[1,2]

Fluidigm's opposition seeks to avoid the requirements of the local rules by highlighting the terms "include" and "at least" in its definition of the accused product.  Opp. 4.  But the only thing these catch-all words highlight is the fundamental problem with Fluidigm's argument.  For example, Fluidigm argues that the term "includes" shows that the commercial MIBIscope is a representative example that "does not '*exclude*' MIBIscope instruments made, used, offered for sale, and sold prior to that date."  *Id*.  If that's true, what else does the statement "not exclude"?  How was IONpath to know?  Eliminating this sort of guessing game is precisely why the Patent Local Rules require that the accused product identification "shall be ***as specific as possible***."  Patent L.R. 3-1(b).  The rules do "not tolerate broad categorical identifications . . . nor d[o] they permit the use of mere representative examples."  *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011); *see also Netflix, Inc. v. Rovi Corp.*, No. 11-cv-06591-PJH (DMR), 2015 WL 5752432, at *2 (N.D. Cal. Apr. 6, 2015).  There is no unenumerated penumbra of accused products around the products actually accused.

---

[1] To avoid confusion between exhibit sets, exhibits previously attached to the Motion and Opposition will be cited herein by ECF Docket Number.  Reply exhibits are to the Decl. of Joshua Furman filed concurrently herewith.

[2] Emphasis supplied and internal citations, brackets, and quotations marks omitted throughout unless otherwise noted.

## II.   FLUIDIGM'S OPPOSITION CONFIRMS THAT THE COMMERCIAL MIBISCOPE IS THE ONLY ACCUSED INSTRUMENT

### A.   There Are Three IONpath Instruments

Fluidigm's opposition tries to blur the lines between the alpha, beta, and commercial instruments, alleging—simultaneously—that there is "only one MIBIScope system," or instead, that Fluidigm's contentions "include allegations encompassing alpha, beta, and so-called commercial MIBIscopes."  Opp. 1, 8.  Even aside from the internal inconsistency in Fluidigm's arguments, neither position is true.  Rather, the record conclusively establishes that (1) there are *three different IONpath instruments*, as shown by (among other things) Fluidigm's own exhibits in this motion, Fluidigm's showdown summary judgment briefing, Fluidigm's written discovery requests, and Fluidigm's deposition questioning; and (2) Fluidigm was on notice of these different instruments from the early days of this case but never sought to accuse anything other than the commercial instrument.  Notably, in responding to IONpath's initial meet and confer letter on this issue, Fluidigm repeatedly referred to the "*various versions*" of the IONpath instrument, and pointed to documents that address instruments that "predated *the November 2019 Version*." Dkt. 190-8.  Yet, just as in *ASUS Computer Int'l v. Round Rock Research*, Fluidigm has "provide[d] no explanation for *why* it did not specifically identify these three products."  *ASUS Comput. Int'l v. Round Rock Research LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *6 (N.D. Cal. Apr. 11, 2014).

*First*, the exhibits Fluidigm has attached to its own opposition plainly demonstrate that there are three instruments, not "only one" as Fluidigm now contends.  For example, Fluidigm's Exhibit 11 (Dkt. 200-13) is an IONpath document detailing and categorizing IONpath instruments, identifying two categories of instruments "Precommercial" and "Commercial" and each instrument placed by its "Type"—"Alpha," "Beta," or "Prod" (i.e., commercial):

Dkt. 200-13 (excerpted and annotated). The "alpha" units' names start with the letter "A" (outlined in red, with the exception of the initial "GN" prototype); "beta" units are named alphabetically starting with the letter "B" (outlined in green); and the production or commercial units' names begin with the letter "P" (outlined in blue). The document also shows that the "source," a major component of the instruments, is different among the versions.

**Second**, Fluidigm has been on notice of these different instruments since the very early days of this litigation.  For example, in IONpath's very first Patent L.R. 3-4 document production on April 1, 2020, IONpath produced a document related to a potential customer which stated: " ███████ ████████████████████████████████████████████████████████████████████████████ ███████████████ " Ex. 20 (IONPATH_0000019).  And IONpath's May 4, 2020 production included a detailed chart showing each of the "Alpha Generation," "Beta Generation" and "Commercial Generation."   Ex. 21 (IONPATH_0014951).   This chart, reproduced here, also identifies technical component distinctions among the different instruments:

REPLY ISO DEFENDANT'S MOTION TO LIMIT
EXPERT TESTIMONY TO ACCUSED PRODUCTS

Ex. 21 (IONPATH_0014951, excerpted and annotated).

**Third**, Fluidigm itself acknowledged in its opening showdown summary judgment motion that there is not just one MIBIscope instrument: "IONpath has used and sold **three different MIBI versions** (alpha, beta, & commercial)." Dkt. 162 at 1 n.1. While Fluidigm argues that there are "no differences material to the question of infringement," that assertion is not material to the question before the Court:  Did Fluidigm accuse the three different instruments? It did not.

**Fourth**, as discussed at length in IONpath's opening brief, Fluidigm's written discovery requests have, at different points, specifically requested discovery on IONpath's commercially available MIBIscope, or alternatively, the alpha, beta, and commercial instruments. Mot. 5.  As discussed further below in Section II.E, and among other examples provided in IONpath's opening brief (Mot. 5–7), Fluidigm's First Set of Interrogatories provided the express definition that "IONpath's 'MIBIscope' refers to the instrument commercially available from IONpath that is described at https://www.ionpath.com/mibiscope/." Dkt. 190-11.  In contrast, Fluidigm's Second Set of Requests for Production asks for representative documents related to the "alpha," "beta," and "commercial" instruments.  Dkt. 190-19.

**Fifth**, **Fluidigm's** own deposition questioning of IONpath's witnesses also confirms the distinctions between the three instruments—and that Fluidigm has known about them.  For example, Fluidigm asked Dr. Ptacek during his deposition "Q. And **which version** of the MIBI instrument

4

1   have you operated." *See* Mot. 3 n.3, quoting Dkt. 190-10 (8/28/20 Ptacek Dep.) at 31:8-16.

2   Fluidigm also asked IONpath's expert Dr. Winograd about the "***three different instruments***" and

3   "***[t]he three different versions of the MIBIscope***." Dkt. 200-9 (11/13/20 Winograd Dep.) at 41:2-

4   6, 9-14; *see also* Mot. 3 n.3.

5       **B.      Fluidigm Accused Only One Of Three IONpath Instruments**

6           Despite the clear demarcation between the different instruments, Fluidigm's contentions

7   accused only the commercial instrument.  Fluidigm provided a specific identification of a single

8   accused product, and IONpath relied on that identification to set the metes and bounds of this

9   litigation.  Mot. 3–5.  Because it cannot re-write the contentions now, Fluidigm argues (1) its

10  contentions are non-exclusive (Opp. 3) and thus categorically cover all three versions, and (2)

11  portions of Fluidigm's infringement contentions other than the specific identification of accused

12  products under Rule 3-1(b) create a broader scope of accused products.  Opp. 4–8.  Both arguments

13  fail.

14          ***First***, Fluidigm ignores that broad contentions that seek to accuse categories of products are

15  not permitted by the Patent Local Rules.  Full stop.  In any case, Fluidigm's contentions were not

16  broad or categorical. Fluidigm identified a specific product, identified the specific date on which it

17  was launched, and specifically cited the press release announcing its launch on that date. Fluidigm's

18  own Exhibit 3 reproduces this announcement.  Dkt. 200-5 at 3–4.  There is thus no ambiguity in the

19  contentions.

20          ***Second***, Fluidigm attempts to rely on its allegations under Patent Local Rule 3-1(d)

21  regarding alleged indirect infringement to somehow try to shoehorn in a broader set of accused

22  products.  There, Fluidigm provided a list of supposed direct infringers, and now argues that because

23  some of these entities have alpha- or beta-instruments, IONpath ***should have known*** that the alpha

24  and beta versions were each separately accused under 3-1(c).  Tortured logic aside, Fluidigm is

25  improperly shifting the burden of identifying accused products onto IONpath.  True, Fluidigm's 3-

26  1(d) disclosure lists—as Fluidigm admits—institutions with different instruments.  But what

27  Fluidigm omits from its briefing is that its 3-1(d) disclosures also listed "Bluebird Bio" and "NIH–

28  National Institute of Allergy & Infection Diseases," entities that have never purchased ***any***

instrument from IONpath.  In other words, Fluidigm's 3-1(d) disclosure made clear that Fluidigm's list of supposed direct infringers was, at best, a guess as to which institutions might have the accused commercial MIBIscope.  Fluidigm's suggestion now that IONpath should have somehow inferred that Fluidigm was accusing other instruments makes no sense.  What should IONpath have inferred about the scope of the accused products from the inclusion of Bluebird Bio and the NIH–National Institute of Allergy & Infection Diseases?[3]

### C.   Fluidigm's *Pleadings* Do Not Change The Scope Of Its *Contentions*

Apparently now recognizing that it has missed its chance to amend its infringement contentions to specifically and properly accuse the alpha, beta, and commercial instruments, Fluidigm instead attempts to rescue its position by arguing that it actually accused them all, citing "Complaints, contentions, expert reports, documents, discovery, and other evidence." Opp. 1.  But this District's rulings have made clear over and over again that infringement contentions under Patent L.R. 3-1(b) are not merely a suggestion of types or categories of products that may be at issue or a preliminary disclosure, but rather a precise and binding definition of the scope of the case that can be amended only by motion and showing of good cause—not by way of expert reports.  *See Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 5073938, at *3 (N.D. Cal. Aug. 25, 2020) (Dkt. 128) ("Our district abandoned [the preliminary] framework in 2008").

Fluidigm relies on its pleadings as evidence of the expanded scope of accused products.  Opp. 2–4.  This is a non-starter: "What [defendant] allegedly knows from the ***complaints are irrelevant*** to the question of the sufficiency of [plaintiff's] infringement contentions." *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00360 WHA, 2018 WL 3219486, at *4 (N.D. Cal. July 2, 2018).  Likewise, "pleadings cannot remedy insufficient infringement contentions."  *Geovector Corp. v. Samsung Elecs. Co. Ltd.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017).

---

[3] Fluidigm also points to IONpath's "Research Services" in an attempt to demonstrate that such services are accused "regardless of any purported variation."  Opp. 6.  But the accusation of an ***additional*** service does nothing to show that Fluidigm's infringement contentions were sufficient to accuse IONpath's alpha and beta instruments of infringement.  Just as the court in *Finjan v. Proofpoint* rejected contentions that insufficiently identified "products and services that utilize" certain accused products, the lack of specificity with respect to IONpath's Research Services cannot be used to backdoor in additional accused products.  *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *5 (N.D. Cal. Apr. 2, 2015).

6

1    Thus, Fluidigm's statements in its pleadings have no bearing on the specific identifications made in

2    its contentions.  If anything, Fluidigm's allegation of infringement "by August 2019" calls even

3    further into question how anything other than the specifically identified November 5, 2019

4    commercial MIBIscope could be included in the scope of properly accused products.  That is,

5    Fluidigm demonstrated that it was able to identify other date ranges or particular MIBIscope sales

6    in its pleadings, but then when it drafted its infringement contentions either affirmatively chose to

7    only accuse the commercial MIBIscope or failed to do otherwise (a question that was not for

8    IONpath to determine).  It is precisely to avoid this sort of guessing game—or, in this case, *post hoc*

9    attempt to shift contentions—that the Patent Local Rules require contentions that set the metes and

10   bounds of the litigation. And it is those contentions that IONpath reasonably relied upon in building

11   its defense.

12       **D.    Fluidigm Cites No Case Law That Affirmatively Supports Its Position**

13       Tellingly, Fluidigm's opposition fails to affirmatively cite a single case in support of its

14   position.   In total, Fluidigm's opposition motion cites to precisely three cases—all cited in

15   IONpath's opening brief—and only actually attempts to distinguish *Finjan, Inc. v. Proofpoint* and

16   *ASUS Computer Int'l v. Round Rock Research, LLC*.[4]  For both, Fluidigm points to immaterial

17   differences in the factual position of each case, and in so doing, misses the forest for the trees.

18       Fluidigm first attempts to distinguish *Finjan v. Proofpoint*, on the basis that the plaintiff

19   there had specifically identified certain products for a subset of the asserted patents, and later

20   attempted to expand those specifically identified products to the full set of patents.  Opp. 6–7.  But

21   this actually weighs against Fluidigm's position.   In *Finjan*, the contentions that specifically

22   identified certain products were still found insufficient where they did not specifically map those

23   products to the patents in question.   Here, Fluidigm comes up short of even where Finjan's

24   unsuccessful attempt landed—Fluidigm failed to specifically identify the alpha and beta instruments

25   ***anywhere*** in its contentions.

26

27

---

28   [4] Fluidigm also cites to *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1028 (N.D. Cal. 2020) (Opp. 8) but appears to agree with its holdings.

Next, Fluidigm attempts to dispose of the holding in *ASUS v. Round Rock Research* that "identifying a product that has a different name, but which [patent owner] claims is substantially similar to a named product, is not sufficient identification under the Local Rules" by making the unsupported statement that "Fluidigm accuses a singularly-named product."  Opp. 7; *ASUS*, 2014 WL 1463609, at *6.  Not so.  IONpath has made and sold three different instruments, and so even assuming that the differences between them are not substantial as Fluidigm claims, *ASUS* instructs that Fluidigm's repeated attempts to paint the distinctions between the "alpha, beta, or so-called commercial" versions as "slight[]" and "irrelevant" are misplaced.  Opp. 7.  Fluidigm ***cannot*** under the rules identify a "line or series of products"—however similar or different it contends they may be.  *ASUS*, 2014 WL 1463609, at *7.

In distinguishing *ASUS*, Fluidigm also alleges that IONpath never provided Fluidigm with evidence that would have enabled it to identify the different instruments.  But as discussed above in Section II.A, IONpath has produced numerous documents identifying both the categorization and technical differences between the three instruments since its first document productions in this case, and Fluidigm made clear it was aware of these versions at least by the very first deposition it took in this case on September 28, 2020.  And in any event, the *ASUS* Court held that where a plaintiff was not able to be specific because of lack of information when contentions were served, that plaintiff "***should have amended*** its contentions to add this information once [defendant] provided discovery for these products and the specific model became known." *ASUS*, 2014 WL 1463609, at *7. Here, while Fluidigm has ***twice*** amended its contentions, including long after it had documents that identified the different instruments, it never changed its identification of the accused product. Dkt. 190-3, Dkt. 190-4, Dkt. 190-5.

Ultimately, Fluidigm's attempt to distinguish these cases proves IONpath's point. Both cases (not to mention the plain language of the Local Rules, and the other cases cited by IONpath which Fluidigm leaves unrebutted) make clear that accused products must be identified as specifically as possible in the contentions.

REPLY ISO DEFENDANT'S MOTION TO LIMIT
EXPERT TESTIMONY TO ACCUSED PRODUCTS

### E.     IONpath's Discovery Responses Cannot Change Fluidigm's Infringement Contentions

As stated in IONpath's opening brief, nearly all of Fluidigm's discovery requests have been expressly limited to the commercial version of the MIBIscope (Mot. 5–7).  For example, the term "MIBIscope" was defined *by Fluidigm* as "the instrument commercially available from IONpath that is described at http://www.ionpath.com/mibiscope" in:

- Fluidigm's June 30, 2020 Interrogatories (Dkt. 190-11 at 3);

- Fluidigm's June 30, 2020 Requests for Admission (Dkt. 190-14);

- Fluidigm's October 23, 2020 Second Set of Requests for Admission (Dkt. 190-15); and

- Fluidigm's November 2, 2020 Third Set of Requests for Admission (Dkt. 190-16).

Likewise, IONpath's responses have been explicit that IONpath is providing information regarding the accused commercial version of the MIBIscope.  There was no "gamesmanship" or "wordsmithing" by IONpath, as Fluidigm now insinuates.  Opp. 1, 8, 9.  IONpath's responses referred to, for example, the "***commercial version*** of the IONpath MIBIScope [sic] instrument, ***which IONpath understands to be the accused instrumentality***."  Dkt. 190-12 at 12; *see also* Dkt. 190-17 at 38; Dkt. 190-11 at 20-21.  What clearer statements could have been made?

Unable to deny that it was on notice that IONpath was providing discovery responses on the accused commercial instrument and not other instruments, Fluidigm points to IONpath's production of certain documents that reference or relate to alpha and beta instruments to suggest that IONpath's subjective understanding of the infringement contentions included all three products.  To date, IONpath has produced over 40,000 documents in this litigation, including extensive ESI productions.  Fluidigm's critique appears to be that IONpath didn't sort through those documents to affirmatively withhold documents related to the unaccused instruments.  Doing so would have been unduly burdensome, would have risked inadvertently withholding relevant documents from Fluidigm, and with respect to the ESI production, would have been a violation of the parties' agreement to produce all non-privileged documents that matched certain agreed-to search terms.  Simply put, Fluidigm should not be permitted to twist IONpath's good-faith participation in

9

discovery into some sort of *post hoc* concession that Fluidigm had accused products it never actually accused.

### F.    Fluidigm Has Not Rebutted IONpath's Prejudice Showing

As a threshold matter, Fluidigm **completely ignores** that prejudice is not required to strike an expert report's disclosure of undisclosed theories.  Fluidigm does not respond to the cited case law on this point at all.  Mot. 11 (citing cases).  For this reason alone, Fluidigm's arguments on prejudice should be rejected.

In any case, Fluidigm attempts to paint IONpath's motion as an "eleventh-hour attack" on Fluidigm.  Opp. 10.  But at the end of the day, Fluidigm is the plaintiff here, and the sufficiency and specificity of its infringement contentions is its burden.  It is not IONpath's task to parse out ambiguities in Fluidigm's supposedly "broad allegations."  Opp. 3.  *See Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-cv-02863-EJD, 2015 WL 4647923, at *1 n.1 (N.D. Cal. Aug. 5, 2015) ("The burden of satisfying the court is on the party asserting the infringement contention.").

Notably, while Fluidigm repeats its arguments that the accused and unaccused products are similar, it fails to take on IONpath's identification of prejudice with respect to both technical and economic expert analysis.  Mot. 11.  Instead, Fluidigm points to its own expert's failure to identify the distinctions between the three different versions of the instrument.  Opp. 10–11.  But as described herein, there can be no reasonable dispute that IONpath has sold three different instruments, nor that Fluidigm was well aware of the differences.  Fluidigm's attempt to backfill the shortcomings in its infringement contentions by pointing out shortcomings in its prior expert testimony does nothing to rebut IONpath's showing of prejudice.

For the same reasons, Fluidigm's allegations that this motion is somehow "untimely" are misplaced.  First, motions to strike expert testimony are typically filed **after** the service of expert reports.  In many other instances, this dispute would have arisen **later**, not earlier.  *See, e.g.*, *San Disk Corp. v. Round Rock Research LLC*, No. C 11-5243 RS, 2014 WL 2700853, at *3 (N.D. Cal. June 13, 2014) (granting motion to strike expert report with regards to products not specifically identified infringement contentions **after** service of that report).  It is only because of this Court's order to exchange lists of topics for expert testimony 28 days **ahead of service** that the parties are

1   able to resolve this dispute now.  Dkt. 72, ¶ 6.  If anything, IONpath is ahead of the game.  Moreover,

2   insofar as Fluidigm points to IONpath's opposition to Fluidigm's showdown motion for summary

3   judgment as somehow evidencing a lack of prejudice, Fluidigm's argument misses the point.  Opp.

4   10 (citing Dkt. 178 at 4–5).  IONpath separately and timely responded to Fluidigm's attempt to

5   improperly expand the scope of accused products in opposing Fluidigm's motion for summary

6   judgment.  Dkt. 162 at 1 n.1; Dkt. 178 at 3.  Now that Fluidigm has made clear it intends to expand

7   the scope of its expert testimony for the non-showdown claims, IONpath brings this motion to limit

8   Fluidigm's non-showdown expert reports.

9        **G.     IONpath's Request For Fees Is Warranted**

10       Fluidigm also argues that IONpath's request for fees should be denied because (1) IONpath

11  is wrong on the merits of the decision, and (2) because "parties are working feverishly to finish

12  discovery."  Opp. 12.  The first requires no response—IONpath's request for fees is of course

13  premised on the Court granting IONpath's motion.  As to the second point, the fact that both parties

14  are "working feverishly" towards the close of discovery is *precisely why* fees are proper.  Based on

15  the showdown summary judgment process, Fluidigm should have known that its attempt to expand

16  the case to unaccused products was improper.  Yet Fluidigm persisted in seeking to accuse non-

17  accused products in its expert disclosure.  After receiving that disclosure, IONpath raised these

18  issues with Fluidigm prior to filing this motion and specifically outlined why, based on the factual

19  record and the case law in this District, Fluidigm could not legitimately seek to expand the scope of

20  accused products at this juncture.  Fluidigm refused to properly limit its expert disclosures and

21  forced IONpath to file this motion.  Dkt. 190-7, Dkt. 190-8.  It is IONpath's team that has been

22  prejudicially distracted from completing fact discovery on IONpath's defense, preparing for

23  depositions, and preparing opening expert reports (due January 29) to file this motion.

24  **III.   CONCLUSION**

25       IONpath respectfully requests that the court limit (or strike) Fluidigm's expert disclosures

26  to the extent they opine on the unaccused alpha and beta instruments.  The very foundation of the

27  local rules requires it.

28

11

REPLY ISO DEFENDANT'S MOTION TO LIMIT
                                           EXPERT TESTIMONY TO ACCUSED PRODUCTS

1

Dated:  January 26, 2021                    WILMER CUTLER PICKERING, HALE
                                            AND DORR LLP

2

3                                           By:   /s/ Joshua D. Furman
                                                  SONAL N. MEHTA

4                                                 OMAR A. KHAN
                                                  JOSEPH TAYLOR GOOCH

5                                                 JOSHUA D. FURMAN

6                                           Attorneys for Defendant IONpath, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2021, a true and correct copy of the above and foregoing Document has been served by electronic mail upon all counsel of record.

Dated:  January 26, 2021                          By:    */s/ Joshua D. Furman*
                                                            Joshua D. Furman